**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for He Zhou Dao*

*- additional counsel on signature page -*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>TUSIMPLE HOLDINGS, INC.; CHENG LU; PATRICK DILLON; XIAODI HOU; MO CHEN; JAMES MULLEN; MORGAN STANLEY & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; J.P. MORGAN SECURITIES LLC; BOFA SECURITIES, INC.; CREDIT SUISSE SECURITIES (USA) LLC; COWEN AND COMPANY, LLC; NOMURA SECURITIES INTERNATIONAL, INC.; RBC CAPITAL MARKETS, LLC; NEEDHAM & COMPANY, LLC; OPPENHEIMER & CO. INC.; PIPER SANDLER & CO.; ROBERT W. BAIRD & CO. INCORPORATED; and VALUABLE CAPTIAL LIMITED,<br><br>Defendants. | No.  3:22-cv-01300-LL-MSB<br><br>**[PROPOSED] SUR-REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF HE ZHOU DAO FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION**<br><br>DATE:     December 5, 2022<br>JUDGE:   Linda Lopez<br>CTRM:    5D (5th Floor –  Schwartz) |

MEMORANDUM OF POINTS AND AUTHORITIES

Movant Dao[1] respectfully submits this Sur-Reply Memorandum of Points and Authorities in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 32).

## I.    ARGUMENT

### A.    THE TUSIMPLE INVESTOR GROUP IS INELIGIBLE FOR APPOINTMENT AS LEAD PLAINTIFF

On November 28, 2022, the TuSimple Investor Group filed a "Reply in Further Support" of the group's non-opposition to the competing motions.  Dkt. No. 50.  The TuSimple Investor Group's Reply stated, in relevant part, that Miller and Poirier "claim the 'largest financial interest'" among the competing movants before the Court, and that the TuSimple Investor Group "remains willing and able to serve as Lead Plaintiff should the Court decide not to appoint" Miller and Poirier.  *Id.* at 1.

Dao respectfully submits that the TuSimple Investor Group is ***not*** "able to serve as Lead Plaintiff" because, as set forth below, it is a transparently attorney-driven investor group that submitted error-laden papers.  As such, it is plainly inadequate under Rule 23, and its motion must be denied.

### 1. The TuSimple Investor Group is an improper attorney-driven group

The TuSimple Investor Group is inadequate under Rule 23 because—like Miller and Poirier—it is an improper group that was clearly assembled by counsel to meet the PSLRA's "largest financial interest" criterion.  As discussed extensively in Dao's briefing in opposition to Miller and Poirier's appointment (Dkt. Nos. 46, 49), courts in the Ninth Circuit and this Judicial District "have uniformly refused to appoint as lead plaintiff groups

---

[1] All capitalized terms herein are defined in Dao's moving, opposition or reply briefs, unless otherwise indicated. *See* Dkt. Nos. 32-1, 46, 49.

MEMORANDUM OF POINTS AND AUTHORITIES

of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 20-cv-0966-AJB-DEB, 2021 U.S. Dist. LEXIS 27438, at *15 (S.D. Cal. Feb. 12, 2021) (quoting *In re Gemstar-Tv Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (collecting cases)). *See also In re Silicon Storage Tech., Inc.*, No. C 05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *33 (N.D. Cal. May 3, 2005) (finding plaintiff groups could not be "the most adequate plaintiffs" where the members were "unrelated to each other" until introduced by their lawyers). Further, when groups are represented by multiple law firms, it raises concerns about attorney-driven litigation and underscores the artificial nature of the group. *See Schriver v. Impac Mortg. Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607, at *26-28 (C.D. Cal. May 1, 2006); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1075 (W.D. Wash. 2011).

The TuSimple Investor Group is an even more egregious example of attorney-driven grouping than Miller and Poirier. It is composed of *five* investors located in five different states, *none* of whom have attested to any pre-litigation relationship with one another. As such, the only reasonable inference is that the group's five members were introduced by counsel, solely for the purpose of aggregating their losses to manufacture the "largest financial interest" in this Action. *See, e.g.*, *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1023, 1025 (N.D. Cal. 1999) ("'allow[ing] lawyers to designate unrelated plaintiffs as a "group" . . . encourage[s] lawyers to direct the litigation'" and contravenes Congress's intention to appoint "a single, strong lead plaintiff"); *Bodri v. GoPro, Inc.*, 16-cv-00232-JST, 2016 U.S. Dist. LEXIS 57559, at *14 (N.D. Cal. Apr. 28,

MEMORANDUM OF POINTS AND AUTHORITIES

2

2016) ("[C]ourts have generally found that 'appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation.'"). Moreover, the TuSimple Investor Group is represented by ***three*** separate law firms, a fact that emphasizes its attorney-driven nature. *See Schriver*, 2006 U.S. Dist. LEXIS 40607, at *26-*28 (disqualifying group because, *inter alia*, it was represented by multiple law firms); *Frias*, 835 F. Supp. 2d at 1074-75 (same).

Dao respectfully submits that such a transparently attorney-orchestrated group plainly cannot satisfy the adequacy requirement of Rule 23 and is ineligible to serve as Lead Plaintiff.

### 2. The TuSimple Investor Group's papers contain significant errors

The TuSimple Investor Group is further inadequate because of significant errors in the loss calculations and/or transaction histories submitted on behalf of group members Thomas and Pollock, including attestations to trades that could not have occurred on the open market on the dates and/or at the prices in question and erroneous loss calculations. Courts routinely disqualify lead plaintiff movants on the basis of such errors, as they raise questions regarding the movant's fitness to supervise a complex securities class action. *See, e.g.*, *Camp v. Qualcomm Inc.*, 18-CV-1208-AJB-BLM, 2019 U.S. Dist. LEXIS 10269, at *8-10 (S.D. Cal. Jan. 22, 2019) (significant errors in transactions records and loss calculations prohibit a movant from satisfying the adequacy and typicality requirements of Rule 23); *Lako v. Loandepot, Inc.*, 8:21-cv-01449-JLS-JDE, 2022 U.S. Dist. LEXIS 79063, at *12-13 (C.D. Cal. May 2, 2022) (expressing "serious concerns about the typicality of [a group]'s members and its ability to protect the interests of absent class members fairly and adequately" because it "failed to select and apply a rational and consistently applied methodology for calculating its losses"); *Rodriguez v. Draftkings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 U.S. Dist. LEXIS 219489, at *15-16, *24-25 (S.D.N.Y.

Nov. 12, 2021) (finding "[t]he slovenliness of [movant]'s submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative" and disqualifying said movant because, "[h]ad [movant] been serious about his responsibilities as a budding class representative, he should not have had to have been alerted to these basic errors in the first place"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (disqualifying movant with the largest loss when errors in sworn certification demonstrated a "substantial degree of carelessness and raise[d] doubt as to whether he will fairly and adequately represent the best interests of the class"); *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Here, the TuSimple Investor Group failed to properly calculate the losses incurred by one of its members, Pollock.  Significantly, the TuSimple Investor Group failed to account for ***$160,326*** in ***gains*** that Pollock made on sales of TuSimple stock during the Class Period, the inclusion of which reduces his total Securities Act losses by a corresponding amount.  *See* Decl. of Jennifer Pafiti in Further Support of Motion and in Opposition to Competing Motions ("Pafiti Decl."), Exhibit ("Ex.") A at *2 n.2.  Similarly, Pollock's loss calculations also failed to reflect gains on his options investments, which further artificially inflated his Securities Act and Exchange Act losses by ***$16,306***.  *See id.*

Pollock also failed to use the proper statutory loss calculation methodology mandated by the Exchange Act for Pollock's October 14, 2022 sales from his taxable

MEMORANDUM OF POINTS AND AUTHORITIES

4

account (*see* Dkt. No. 31-5 at *8). Specifically, under the PSLRA, an investor's stock sales price must be valued at the ***higher*** of (i) the actual sale price and (ii) the average sale price from the start of the 90-day look-back period (August 1, 2022) to the date the post-Class Period sale took place (October 14, 2022). *See* 15 U.S.C. § 78u-4(e). Applying the proper methodology under the PSLRA for calculating Exchange Act losses, the TuSimple Investor Group should have used the 90-day average sale price of $7.91, rather than the actual sale price of $6.02. *See* Pafiti Decl., Ex. A at *2 n.1. However, because the TuSimple Investor Group improperly used the actual sale price of $6.02, Pollock's Exchange Act losses were artificially inflated by an additional $1,894. *See id.*

Another member of the TuSimple Investor Group, Thomas, inconsistently listed a transaction that occurred on June 30, 2022 as a ***sale*** on his loss chart (*see* Dkt. No. 31-5 at *14-*16 (designating a June 30, 2022 transaction in 100 shares of TuSimple stock as "Sell")), while listing the same June 30, 2022 transaction as a ***purchase*** in his sworn shareholder Certification that he attested to under penalty of perjury (*see* Dkt. No. 31-3 at *8 (designating the June 30, 2022 transaction in 100 shares of TuSimple stock as "Buy")). If this transaction was indeed a sale (*i.e.*, if the loss chart is correct, and Thomas's sworn Certification is inaccurate), then Thomas, like Pollock, failed to properly deduct his gains on this sale from his total loss, thereby artificially inflating his Securities Act losses by $731. *See* Pafiti Decl., Ex. A at *2 n.5. The inclusion of an inaccurate transaction on Thomas's Certification would also mean that Thomas made at least one false attestation under penalty of perjury. Conversely, if this transaction was in fact a buy (*i.e.*, if the loss chart is wrong, and Thomas's sworn shareholder Certification is accurate), then, when properly accounted for, Thomas's claimed Securities Act loss decreases by $707 and his claimed Exchange Act loss decreases by $83. Further, Thomas's sworn shareholder Certification and the TuSimple Investor Group's loss chart both state that Thomas made a purchase of 100 shares of TuSimple stock on April 21, 2022 at $16.41 per share. *See* Dkt.

MEMORANDUM OF POINTS AND AUTHORITIES

5

Nos. 31-3 at *8, 31-5 at *14-16.  This is clearly incorrect because TuSimple's stock price traded at a high of $11.38 per share on April 21, 2022 (*see* Pafiti Decl., Ex. B)—$5.03, or 30.65%, *lower* per those 100 shares than reported by Thomas and the TuSimple Investor Group.  Under a conservative analysis assuming that Thomas purchased those 100 shares at the April 21, 2022 high of $11.38 per share—rather than the $16.41 per share that Thomas attests to in his sworn Certification (which must be wrong)—Thomas's Securities Act and Exchange Act losses are further reduced by an additional $502.  *See id.*, Ex. A at *2 nn.4-5.

As a result of the foregoing errors in calculating Pollock's and Thomas's transactions, the TuSimple Investor Group massively overstated its claimed Securities Act losses by as much as $177,865, or *132.28%*, and overstated its claimed Exchange Act losses by as much as $18,702, or *13.82%*.  *See id.* at *2.

The foregoing glaring, material errors contained in the TuSimple Investor Group's submissions plainly render the group inadequate under Rule 23 and thus ineligible for appointment as Lead Plaintiff.

### B.   MILLER AND POIRIER'S OPPOSITION BRIEF CONTAINS DEMONSTRABLY FALSE ASSERTIONS

In Miller and Poirier's reply brief, the movant duo states that Dao "omitted any mention" of his representation, in addition to Pomerantz, by the Hao Law Firm "in [his] legal memoranda."  Dkt. No. 51 at 1-2.  Miller and Poirier are wrong.  Dao's moving brief clearly states that "[i]n addition to Pomerantz, Dao is also represented by the Chinese law firm the Hao Law Firm in this litigation."  Dkt. No. 32-1 at 12.  The Hao Law Firm has assisted and will continue to assist Pomerantz in its representation of Dao by, *inter alia*, providing translation services and otherwise facilitating communication with Dao.  Dao respectfully submits that Miller and Poirier's false assertion about the contents of Dao's legal memoranda, raises legitimate questions about their preparedness to thoroughly

MEMORANDUM OF POINTS AND AUTHORITIES

review the pleadings in this matter, as they would be required to do if appointed as Lead Plaintiffs.

Further, Dao would have expected Miller and Poirier's counsel, to be more attentive to the accuracy of its submissions to a Court in a brief filed in support of its PSLRA lead plaintiff motion. *See In re Grupo Televisa Secs. Litig.*, 18 Civ. 1979 (LLS), 2021 US. Dist. LEXIS 94906, at *7-8 (S.D.N.Y. May 19, 2021).

## II.      CONCLUSION

For the foregoing reasons, and for the reasons set forth in his moving, opposition and reply briefs (Dkt. Nos. 32-1, 46, 49) Dao respectfully requests that the Court issue an Order: (1) appointing Dao as Lead Plaintiff for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  November 30, 2022                    Respectfully submitted,

                                             **POMERANTZ LLP**

                                             */s/ Jennifer Pafiti*
                                             Jennifer Pafiti (SBN 282790)
                                             1100 Glendon Avenue, 15th Floor
                                             Los Angeles, California 90024
                                             Telephone: (310) 405-7190
                                             jpafiti@pomlaw.com

                                             **POMERANTZ LLP**
                                             Jeremy A. Lieberman
                                             (*pro hac vice* application forthcoming)
                                             J. Alexander Hood II
                                             (*pro hac vice* application forthcoming)
                                             600 Third Avenue, 20th Floor
                                             New York, New York 10016
                                             Telephone: (212) 661-1100
                                             Facsimile: (917) 463-1044
                                             jalieberman@pomlaw.com
                                             ahood@pomlaw.com

MEMORANDUM OF POINTS AND AUTHORITIES

7

*Counsel for He Zhou Dao and Proposed Lead Counsel for the Class*

MEMORANDUM OF POINTS AND AUTHORITIES

CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jennifer Pafiti
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES

9