William Paine, *pro hac vice*
   william.paine@wilmerhale.com
Robert Kingsley Smith, *pro hac vice*
   robert.smith@wilmerhale.com
Sonia Sujanani, *pro hac vice*
   sonia.sujanani@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street, Boston, MA 02109
Tel: (617) 526-6759

Elaine F. Harwell (California SBN 242551)
   elaine.harwell@procopio.com
PROCOPIO CORY HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200, San Diego, CA 92101
Tel: (619) 238-1900 / Fax: (619) 235-0398

*Counsel for Defendant TuSimple Holdings, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED,<br><br>        Defendants. | Case No. 3:22-cv-01300-BEN-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br><br>Date: March 18, 2024<br>Time: 10:30 am |

REPLY MEM. ISO MOT. TO DISMISS          Case No. 3:22-cv-01300-BEN-MSB

# TABLE OF CONTENTS

Page

I.    THE SECURITIES ACT CLAIMS MUST BE DISMISSED ........................1

    A.    Claims Regarding Hydron.................................................................1

    B.    Claims Regarding Safety..................................................................2

    C.    TuSimple Is Not a Section 12 Statutory Seller ...................................3

II.    PLAINTIFFS' EXCHANGE ACT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.......................................................3

    A.    Plaintiffs Have Not Pleaded That The Information Transfer To Hydron Was Material ......................................................................3

    B.    Claims Regarding Safety..................................................................7

III.    THE EXCHANGE ACT CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE FACTS ESTABLISHING A STRONG INFERENCE OF SCIENTER .....................8

IV.    PLAINTIFFS DO NOT ALLEGE "SCHEME" LIABILITY.......................10

CONCLUSION ..........................................................................................10

**DEFINED TERMS**

| Defined Term | Meaning |
| --- | --- |
| CAC or Amended Complaint | Plaintiffs' Consolidated Class Action Complaint for Violations of the Federal Securities Laws (ECF 103) |
| CFIUS | Committee on Foreign Investment in the United States |
| Defs' Ex. __ | Defendants' Exhibits attached to the Declaration of William Paine in Support of TuSimple's Motion to Dismiss Consolidated Amended Class Action Complaint (ECF 138-3) |
| Lu Reply | Cheng Lu's Reply in Support of Motion to Dismiss Consolidated Amended Class Action Complaint |
| MTD | TuSimple's Memorandum of Points and Authorities in Support of Motion to Dismiss Consolidated Amended Class Action Complaint (ECF 138-1) |
| Opp. or Opposition | Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss |
| Underwriters' Reply | Underwriter Defendants' Reply in Support of Motion to Dismiss Consolidated Class Action Complaint for Violations of the Federal Securities Laws |
| WSJ | Wall Street Journal |

TuSimple Holdings, Inc. ("TuSimple" or the "Company") respectfully submits this Reply in support of its Motion to Dismiss.  ECF No. 138.  The Reply focuses principally on (1) Plaintiffs' failure in their Opposition brief to show that the non-disclosure of any interactions with Hydron, Inc. ("Hydron") was materially misleading or was done with scienter; (2) the inadequacy of several sources on which Plaintiffs rely; and (3) the defects of the "scheme" claim.  The Opposition is long on inapposite cases and rhetoric, but short on persuasive argument.  Due to page limits, some points raised in the Opposition (principally, safety-related claims) are addressed more fully by other Defendants, as indicated.

## I.    THE SECURITIES ACT CLAIMS MUST BE DISMISSED[1]

### A.    Claims Regarding Hydron

In an effort to show (despite the record) that work for Hydron predated the April 15, 2021 Prospectus, Plaintiffs mischaracterize TuSimple's argument to be that Plaintiffs must establish the exact date on which work for Hydron occurred.  *See* Opp. at 28.  That was not TuSimple's argument.  Rather, TuSimple showed that an allegation that work was performed "during 2021" does not support a plausible inference that the work *must have* occurred before April 15, 2021.  MTD at 11–12. Merely alleging something *could have* happened by, or *might have* been true at the time of, the challenged statements is insufficient.[2]  *Cf. City of Roseville Emps.' Retirement Sys. v. Sterling Fin. Corp.*, 691 F. App'x 393, 395 (9th Cir. 2017) (allegations that banking practices were unsound a month before challenged statements did not establish contemporaneous falsity).  *See In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, at *15 (S.D.N.Y. March 31, 2015)

---

[1] Plaintiffs seek to add via their Opposition new allegations to their Amended Complaint concerning TuSimple's efforts to wind down its U.S. business.  *See* Opp. at 11.  But Plaintiffs cannot amend their complaint with their Opposition.  *See Hogg-Johnson v. Merz N. Am.*, 2020 WL 6826420, at *3 (S.D. Cal. Nov. 19, 2020).

[2] Defendants' arguments support dismissing the Section 11 claims regardless of whether Rule 8(a) or 9(b) applies, but, in any event, Plaintiffs do not contest that Rule 9(b) applies to the claims against TuSimple.  *See* Opp. at 12–16.

(allegations about timing of purchases from related party did not establish disclosure duty where sole witness left company two months after vendor was incorporated).[3]

In an effort to confuse the record regarding when work with Hydron began, Plaintiffs also point to (a) Hydron's incorporation weeks before the IPO; and (b) CFIUS's investigation of TuSimple before the IPO. *See* Opp. at 28. The date Hydron was incorporated, a mere legal formality, does not say anything about its operations, much less the timing of the work by TuSimple.[4] And before the IPO, CFIUS was investigating Sun Dream, Inc.'s investment in TuSimple, *not* TuSimple's interactions with *Hydron*. *See* Defs.' Ex. D (April 16, 2021 Form 424B4) at 63. That investigation says nothing about when TuSimple first worked with Hydron. Finally, Plaintiffs cannot plausibly allege any transfer of information to Hydron occurred before the IPO in 2021, when the only fact alleged is that it occurred "during 2022." *See* Defs.' Ex. N (Oct. 31, 2022 Form 8-K). In any event, as explained *infra* § II.A, that transfer gave rise to no disclosure duty.[5]

## B.    Claims Regarding Safety

Plaintiffs expressly excluded from their Securities Act claims: (i) the March 10, 2021 Lindland employment lawsuit; (ii) the August 1, 2022 WSJ article offering opinions of a purported expert about the April 2022 crash; and (iii) the July 25, 2022 YouTube Video. *See* CAC ¶ 314; MTD at 13 n.11. What remains is insufficient

---

[3] In *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107 (N.D. Cal. 2017), the defendants disclosed material weaknesses in internal controls eighteen months after an IPO, but the complaint cited evidence that the same weaknesses also existed at the time of the IPO. *Id.* at 1116–17. Here, by contrast, Plaintiffs have not alleged "specific facts warranting the inference that the same circumstances existed" at the time of the challenged statements. *Id.* at 1117.

[4] Plaintiffs cite no support for their assertion that Regulation S-K requires disclosure of "pending" related-party transactions, Opp. at 18, and in any case, they fail to plead the work for Hydron was "pending" at the time of the IPO.

[5] *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096 (C.D. Cal. 2012), Opp. at 16, does not speak to whether a related party transaction was required to be disclosed. There, rather, the issue was whether a ***disclosed*** transaction should have been characterized as involving a related party. *Id.* at 1117–1120.

hindsight based on the post-IPO April 2022 accident and a later letter from a government agency regarding the accident. *See In re Cloudera, Inc.*, 2021 WL 2115303, at *22 (N.D. Cal. May 25, 2021) (Section 11 claims cannot be based on hindsight). *See* Underwriters Defs.' Reply at 6–8; Lu Reply at 3–4. In any event, even if these sources are part of the Section 11 claim, they are unreliable and do not adequately allege contemporaneous facts showing any IPO statement was false or misleading. *See, e.g.*, MTD at 12–14, 29–31; *infra* § II.B.

### C. TuSimple Is Not a Section 12 Statutory Seller

Plaintiffs do not seriously contend TuSimple was a statutory seller. Opp. at 26 (alleging only conclusion that "the Underwriter Defendants are 'sellers' within the meaning of §12(a)(2)"). To the extent Plaintiffs do so contend, their argument that the question is premature at this stage is simply wrong. *See Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *5 (C.D. Cal. Dec. 17, 2019) (deciding issue on motion to dismiss). In any event, the conclusory assertion—devoid of factual support—that "the Complaint clearly alleges that defendants sold or solicited the securities at issue," Opp. at 28, is obviously insufficient. MTD at 15–16.[6]

## II. PLAINTIFFS' EXCHANGE ACT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT

### A. Plaintiffs Have Not Pleaded That The Information Transfer To Hydron Was Material

Contrary to Plaintiffs' claim that "materiality is an inherently fact-based inquiry," Opp. at 29, courts in this circuit and others regularly decide motions to dismiss securities fraud actions on materiality grounds. *See, e.g.*, *Markette v. XOMA Corp.*, 2017 WL 4310759, at *8–10 (N.D. Cal. Sept. 28, 2017); *Glenbook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1142 (N.D. Cal. 2007); *see also Unite Here v.*

---

[6] Plaintiffs' lack of standing under Section 12 of the Securities Act, MTD at 15, is addressed separately. *See* Underwriter Defs.' Reply at 8–9.

REPLY MEM. ISO MOT. TO DISMISS        -3-        Case No. 3:22-cv-01300-BEN-MSB

*Cintas Corp.*, 2006 WL 2859279, at *9 (S.D.N.Y. Oct. 6, 2006) (related party transaction immaterial as a matter of law).

Plaintiffs inaccurately characterize as "irrelevant" TuSimple's argument that the less than $300,000 worth of work that TuSimple employees performed for Hydron was "paltry" compared to the Company's overall financial position during the Class Period. Opp. at 30; *see* Defs.' Ex. K (TuSimple February 24, 2022 Form 10-K) (showing $1.3 billion in assets and $69 million in liabilities). This ignores that related party transactions need not be disclosed where they are immaterial in the overall financial context of the company. *See, e.g.*, *In re China Valves Tech. Sec. Litig.*, 2012 WL 4039852, at *7 & n.80 (S.D.N.Y. Sept. 12, 2012) ($320,000 related party transaction not material in context of $134 million in assets and $29 million in liabilities); *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204, 207 n.8 (2d Cir. 2009) ($2 billion in mislabeled related party transactions out of $715 billion total assets was not material).[7] These cases also undermine the contention, Opp. at 19, that the Regulation S-K threshold somehow establishes per se materiality in the context of a Rule 10b-5 claim.

Plaintiffs' claim that interactions with Hydron were material, because it involved TuSimple "handing over its *most valuable asset* – its intellectual property – to a *competitor* controlled *by the Chinese government* in *violation of federal law*," relies on the four unsupported conclusions set forth in *italics*. Opp. at 29; *see id.* at 19 (contending dollar value of work irrelevant because management transferred

---

[7] The cases Plaintiffs cite in their Opposition explicitly compare the challenged transactions to the company's financial context in finding them material. *Cf. Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *8 (C.D. Cal. Nov. 1, 2012) (considering "the magnitude of the[] transactions, both in dollar terms and in proportion to the company's operations as a whole" in finding transactions material); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 940–41 (C.D. Cal. 2012) (related party transactions with company's two biggest customers and one of its largest suppliers were material); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1224–25 (N.D. Cal. 2015) (finding material related party transactions where revenue growth was "attributable entirely" to transactions).

critical technology).  And Plaintiffs ignore the Company's disclosure—incorporated into their Amended Complaint by reference—that the transferred information was "not related to the intangible assets or patents reflected on the Company's balance sheet" and was in the context of evaluating Hydron as an OEM partner.  Defs.' Ex. N.[8]  Their only sources are the October 30, 2022 and February 1, 2023 WSJ articles, in which "people familiar with the matter" claimed that IP was transferred to Hydron and that Hydron was a competitor.  *See, e.g.*, CAC ¶ 251 (citing Feb. 1, 2023 WSJ article), ¶ 286 (citing Oct. 30, 2022 WSJ article).[9]  But "people familiar with the matter" does not satisfy Ninth Circuit reliability standards.  *See Zucco Partners LLC v. Digimarc*, 552 F.3d 981, 995–96 (9th Cir. 2009); *In re Sunrun, Inc. Sec. Litig.*, 2018 WL 10323335, at *1 (N.D. Cal. July 19, 2018).[10]  That Dr. Hou was terminated the same day the October 30, 2022 WSJ article was published, *see* Opp. at 2, 46; that the WSJ reported about government investigations, Opp. at 32; and that the WSJ articles were not refuted by their subject or retracted by their authors, *id.*, do not make "people familiar with the matter" a reliable source.  *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000), does not rescue Plaintiffs. *McKesson* made clear than an article is reliable only "[t]o the extent [it] ***corroborates plaintiff's own investigation***." *Id.* at 1272 (emphasis added).  But Plaintiffs identify no facts uncovered by their "own investigation" that any article could corroborate.

---

[8] In *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *2 (N.D. Cal. Nov. 17, 2005), the CEO made a sham transaction.  Here, the purpose of transferring confidential information was to evaluate a potential OEM.

[9] Because Plaintiffs have not adequately alleged what information TuSimple shared with Hydron, Plaintiffs also have not alleged that risk factors concerning TuSimple's intellectual property and increased government scrutiny had already materialized by the time the disclosures were made.  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 809 (N.D. Cal. 2019).

[10] That these cases deal with confidential witnesses, Opp. at 32, is a distinction without a difference: unnamed "people familiar with the matter" in a news article are *less reliable* than confidential witnesses who have spoken to counsel and typically are identified with at least some details.

*Id.* In Plaintiffs' other cases, articles established only tangential points not subject to reasonable dispute. *See, e.g.*, *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (market did not react to WSJ article); *In re UnitedHealth Grp. PSLRA Litig.*, 2007 WL 1621456, at *1 (D. Minn. June 4, 2007) (finding that WSJ article "led to the filing of numerous securities class actions").

Further, Plaintiffs point to the government's "keen focus" on TuSimple as evidence that TuSimple's post-IPO interactions with Hydron were material. Opp. at 29. But the mere existence of a government investigation does not mean that the subject of the investigation is material, particularly when there are no allegations that the purported wrongdoing impacted the Company's bottom line. Mistaken press reports can—and often do—prompt investigations. *See generally Cheng v. Activision Blizzard, Inc.*, 2023 WL 2136787, at *6–7 (C.D. Cal. Jan. 22, 2023), *aff'd*, 2024 WL 208142 (9th Cir. Jan. 19, 2024) (no liability for non-disclosure of investigation into workplace practices); *see also In re Open Joint Stock Co. Vimpel-Commc'ns*, 2006 WL 647981, at *5–6 (S.D.N.Y. Mar. 14, 2006) (existence of government inspection, unaccompanied by clear indication of adverse business consequence, not material). Companies "are not required to engage in 'self-flagellation' by disclosing unproven allegations," even if an investigation is ongoing. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 837 (N.D. Cal. 2019).[11]

Plaintiffs argue that the disclosure of some related party transactions in the challenged 2021 Form 10-Qs "gave the misleading impression that the Company was not engaged in any other related-party transactions." Opp. at 30. But Plaintiffs

---

[11] *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021), is different. It involved the non-disclosure of certain cybersecurity vulnerabilities in the company's software, which was obviously material due to the "scale of the data-privacy and security-vulnerability problems," "significant consequences of the problems discovered," and "importance of user trust and public perceptions of security and privacy practices for the products and services central to [the] business." *Id.* at 703.

have not adequately alleged that TuSimple's interactions with Hydron occurred before the Company made these statements. MTD at 20. Moreover, a company need not disclose *every* related party transaction, Opp. at 30–31, only material transactions that investors would expect to be disclosed together. *See e.g., Africa v. Jianpu Tech. Inc.*, 2022 WL 4537973, at *8 (S.D.N.Y. Sept. 28, 2022) (disclosure of related party transactions in loan segment did not trigger duty to disclose related party transactions in credit card segment); *In re Francesca's Holdings Corp. Sec. Litig.*, 2015 WL 1600464, at *15 (rejecting argument that "because [defendant] disclosed the relatedness of large-scale vendors … it had a *duty*, in order to avoid rendering these other statements false, to disclose its relationship with [undisclosed related party] *regardless of how small* a relationship it was"); *In re PharmaCielo Ltd. Sec. Litig.*, 2021 WL 6496751, at *6 (C.D. Cal. Dec. 7, 2021) (disclosure of Canadian related party transactions did not trigger duty to disclose U.S. transaction).[12]

## B. Claims Regarding Safety

The Lindland complaint is unreliable because it alleges events that occurred long before the Prospectus or any other challenged statement, MTD at 13, 29–30, and Plaintiffs' cases are distinguishable. *Cf. E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918, 939 (9th Cir. 2023) (crediting statements from pre-class period witness because they "maintained contact with former senior colleagues after his departure" (quotation omitted)); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (taken collectively with other confidential witness statements, lone pre-class period witness's knowledge of management's data access was relevant to class period); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (information immediately preceding class period relevant to company outlook

---

[12] Plaintiffs still do not identify with particularity any violation of an NSA provision, "federal law," or "the Foreign Investment Risk and Review Modernization Act and the Export Controls Act." MTD at 22–23.

at outset of class period).  That some Lindland claims survived summary judgment is irrelevant to the fundamental problem that Plaintiffs did not independently investigate Lindland's complaint.  MTD at 29–30.  *Cf. In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *4 (N.D. Cal. Aug. 14, 2008) (counsel contacted witnesses quoted in complaint); *Johns v. Bayer Corp.*, 2010 WL 2573493, at *2 (S.D. Cal. June 24, 2010) (counsel contacted attorney for plaintiffs in parallel case).

Plaintiffs' only defense of the October 30, 2022 WSJ article and Mutha Trucka video—with no supporting authority—is that they allegedly corroborate each other.  Opp. at 32.  But unreliable sources do not become reliable merely because they might corroborate each other.  *See Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1039–1040 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014).  Plaintiffs further suggest that these sources are reliable because Defendants "do not contest the accuracy, authenticity, or validity of the information [they] convey."  Opp. at 35.  But Defendants have no such burden at this stage, and, indeed, any such argument would be beyond the scope of the pleadings.[13]

## III.  THE EXCHANGE ACT CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT DOES NOT ALLEGE FACTS ESTABLISHING A STRONG INFERENCE OF SCIENTER

Plaintiffs make no effort to defend their status allegations.  MTD at 36.  Their argument that Mr. Chao and Dr. Hou were so involved with Hydron that it would be "absurd" to suggest they were not knowledgeable is supported only by conclusory allegations that Mr. Chao was a "backer" of Hydron and that Dr. Hou and Mr. Chen "ha[d] a long-standing and deep partnership that . . . helped build [TuSimple]."  Opp. at 40 (quotations omitted).  Because Plaintiffs fail to establish the contemporaneous materiality of interactions with Hydron, they cannot show why Mr. Chen knew that non-disclosure would mislead investors.  *See, e.g.*, *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1152 (C.D. Cal. 2018) (must plead "particularized facts"

---

[13] Additional defects in Plaintiffs' Exchange Act safety-related claims are set forth in the Lu Reply at 4–6.

giving rise to strong inference that defendant intended to mislead plaintiff through its omission or knew that plaintiff would be misled); *ECA, Local 134*, 553 F.3d at 202 (must plead scienter as to materiality of transaction).[14]

Plaintiffs rely heavily on their allegations about employee departures, but their cases are distinguishable because, unlike here, the plaintiffs in those cases connected the resignations with the statements at issue. *See In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *2, 7 (N.D. Cal. June 1, 2020) (company's accounting firm explicitly "notified the company that it could no longer rely on representations of its former CEO, CFO, and general counsel"); *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *10 (W.D. Wash. Dec. 29, 2008) ("confidential witnesses provide[d] specific examples of [the departing CEO and CFO]'s direct participation in allegedly improper transactions"); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008) (testimony by seven confidential witnesses supported inference of departing executives' scienter).

Finally, Plaintiffs still fail to establish that securities transactions by Sun Dream, Inc. support an inference of Mr. Chao's scienter. In *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004), the monetary value of stock sales was one of many factors the court considered. Here, Sun Dream, Inc.'s sales were less than one third of the amount in *Oracle*, and no other factors are present. And, in *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *19 (N.D. Cal. Nov. 27, 2018), where the transactions were suspicious for multiple reasons, the court merely stated that the fact "that the share prices were not unusually high when [the

---

[14] Plaintiffs' cases purporting to impute knowledge of "core operations" to Individual Defendants do not suggest they must have known the details of a transfer to a potential OEM of information not involving patents or balance sheet assets and with no definable value. *Cf. Reese v. Malone*, 747 F.3d 557, 575–76 (9th Cir. 2014) (imputing knowledge to defendant who was "gatekeeper of information" and had access to relevant information for several years); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015) (attributing knowledge of government contracts to "inner circle" of executives who "very closely controlled" contracts).

defendant] made his sales d[id] not necessarily negate suspicion."  *Compare* MTD at 43–44, *with In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *63 (S.D. Cal. Mar. 30, 2005) (Benitez, J.) (no scienter where sales were "well below the peak stock price"), *and In re AnaptysBio, Inc. Sec. Litig.*, 2021 WL 4267413, at *9 (S.D. Cal. Sept. 20, 2021) (similar).  Finally, *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *17 (C.D. Cal. Oct. 1, 2013), acknowledged that "delay between the last sales and the disclosures is a factor that may weigh against a finding of scienter."

## IV.    PLAINTIFFS DO NOT ALLEGE "SCHEME" LIABILITY

Plaintiffs mostly repeat their allegations and declare they plead a scheme, Opp. at 52–53, but do not respond to TuSimple's arguments concerning failure to plead an *inherently* deceptive act, scienter, or reliance.  MTD at 47–49.  And Plaintiffs' cited cases are inapposite.  *In re Vaxart, Inc., Sec. Litig.*, 2023 WL 3637093, at *3 (N.D. Cal. May 25, 2023), involved a clearly misleading public relations campaign.  In *In re Aqua Metals, Inc. Sec. Litig*, 2019 WL 3817849, at *8–9 (N.D. Cal. Aug. 14, 2019), defendants did not contest that the conduct was deceptive.

Finally, the dictum in *Alphabet* that a scheme can "overlap" with misrepresentations is beside the point.  *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021).  To the extent there is overlap here, the misrepresentations in the alleged scheme fail for the same reasons as the Section 10(b) and Rule 10b-5(1)(b) claims, and the remaining allegations fail for lack of reliance, scienter, or an inherently deceptive act.[15]  MTD at 45–48.

### CONCLUSION

The Court should grant TuSimple's motion to dismiss the CAC in its entirety.

---

[15] In any event, *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100–01 (2019), focused on whether secondary actors who were not "maker[s]" of the statements could nevertheless be held liable for "disseminating" the statements.  It did not expressly abrogate the long line of authority holding that, as to primary actors, scheme liability required allegations in addition to misrepresentations.  *See SEC v. Rio Tinto*, 41 F.4th 47, 53–56 (2d Cir. 2022).  That issue is not at stake here.

Dated: February 26, 2024

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

*/s/ William Paine*
William Paine

Kevin P. Muck
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111

William Paine
  *Pro hac vice*
Robert Kingsley Smith
  *Pro hac vice*
Sonia Sujanani
  *Pro hac vice*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109

Elaine F. Harwell
PROCOPIO CORY
  HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101

*Counsel for Defendant TuSimple Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 26th day of February 2024, I electronically transmitted a copy of this document to the Clerk's office using the CM/ECF system, which will send a notice of filing to all counsel of record.

*/s/ William Paine*
William Paine