Michael R. Smith (*pro hac vice*)
mrsmith@kslaw.com
Peter M. Starr (*pro hac vice*)
pstarr@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree St. NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-4600

Blake Zollar (SBN 268913)
blake@kzllp.com
**KONING ZOLLAR LLP**
169 Saxony Road, Suite 115
Encinitas, CA 92024
Telephone:   (858) 252-3234

[Additional counsel on signature page]

*Attorneys for Defendants Brad Buss and Karen C. Francis*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>    v.<br><br>TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED,<br><br>               Defendants. | Case No.: 3:22-cv-01300-JES-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB)<br><br>**DEFENDANTS BUSS' AND FRANCIS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Special Briefing Schedule Ordered<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date: March 18, 2024<br>Time: 10:30 AM |

# I.   INTRODUCTION

Plaintiffs' Opposition (Dkt. 149, "Opp.") fails to rebut or even address the separate arguments of Outside Directors Buss and Francis[1] showing that the claims against them must be dismissed. Plaintiffs assert Section 12 claims against the Outside Directors but do not allege or argue that they were statutory sellers of TuSimple securities to Plaintiffs. Plaintiffs' only argument is that the Outside Directors signed the Registration Statement, which is insufficient to make them statutory sellers. As for their control person claims under Sections 15 and 20(a), Plaintiffs do not address the contradiction inherent in their attempt to impose control person liability on the Outside Directors for related-party transactions involving Hydron that, in Plaintiffs' own telling, the Outside Directors were actively investigating at the time they were removed from the Board by TuSimple's actual controllers. Plaintiffs' conclusory control person claims against Buss and Francis are thus contradicted by their own allegations, mandating dismissal of their claims under Sections 15 and 20(a).

The Section 10(b) claim against Buss for alleged misrepresentations relating to safety also fails. Plaintiffs concede that as an outside director, Buss did not make any of the post-IPO safety statements alleged in support of their Section 10(b) claim. Plaintiffs pivot to the safety-related statements in the Registration Statement that Buss signed, but Plaintiffs failed to include these statements in the list of false statements challenged in the Section 10(b) claim.  Nor do Plaintiffs even attempt to allege any particularized facts bearing on Buss' scienter.

Finally, as explained by Defendants TuSimple, Lu, and the Underwriters, Plaintiffs' Section 11 claims must be dismissed because they have not pled that any statements in the Registration Statement were materially false at the time they were made. *See* TuSimple Reply at § I.A-B; Lu Reply at § III.A; Underwriters' Reply at § I-II.

---

[1] Buss and Francis use the defined terms in their Opening Brief (Dkt. 136-1, "Br.").

REPLY ISO MOT. TO DISMISS                   -1-                   Case No.: 3:22-cv-01300-BEN-MSB

## II.    PLAINTIFFS' SECTION 12 CLAIM AGAINST BUSS AND FRANCIS FAILS TO PLEAD THEY WERE STATUTORY SELLERS.

Plaintiffs do not allege or argue that Buss or Francis were statutory sellers under § 12(a)(2) because they "passed title" to Plaintiffs' securities or were actively involved in soliciting Plaintiffs' purchases. *See* Opp. at 26. Instead, Plaintiffs claim that (1) solicitation of TuSimple securities is a "factual" question that is "premature at this stage" and (2) "the Complaint clearly alleges that defendants"—apparently including Buss and Francis[2]—"sold or solicited the securities at issue *via* the Registration Statement," which is all that is required to state a § 12(a)(2) claim. *Id.*

Plaintiffs are wrong on both counts. Numerous courts have dismissed § 12(a)(2) claims at the pleading stage on the basis that allegations of merely signing a registration statement are insufficient to plead solicitation. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 858, 871 (5th Cir. 2003) (rejecting argument that "signing the registration statement suffices for solicitation" and affirming dismissal of § 12(a)(2) claims against directors); *Cent. Laborers Pension Fund v. Merix Corp.*, 2005 WL 2244072, at *8 (D. Or. Sept. 15, 2005) (following "the weight of the authority finding that merely signing a prospectus does not qualify as soliciting a sale of securities"), *rev'd on other grounds*, 275 F. App'x 599 (9th Cir. 2008); *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *4, 18 (C.D. Cal. July 21, 2005) (dismissing § 12(a)(2) claims against directors who were only alleged to have "assisted in preparing and issuing [a p]rospectus"); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1101–02 (C.D. Cal. 2003) (serving on board and signing a registration statement do "not constitute active solicitation"); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1073 (N.D. Cal. 2010) (rejecting the "legal conclusion" that directors were "solicitors" and holding a plaintiff must

---

[2] The Section 12 arguments in Plaintiffs' Opposition make no reference to Buss or Francis, but instead focus on whether the Underwriters are "statutory sellers." Opp. at 25-27.

plead "the actual efforts made to … solicit a purchase").[3]

None of the cases cited by Plaintiffs, Opp. at 25–27, compel a different result. Initially, none of those cases involve independent, outside directors like Buss and Francis. Nor, in contrast to Plaintiffs' cases, is there any allegation here that the Outside Directors "solicited [the] purchase of the securities for their own financial gain[.]" *Compare In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005), *with* CAC. [4] Regardless, the weight of authority holds that "[e]ven substantial involvement in the preparation of registration and offering materials will not create section 12 liability unless there is also active involvement in the negotiations leading to the sale in question." Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 7:14 (2023). Because Plaintiffs make no such allegations, the Section 12(a)(2) claims should be dismissed as to Buss and Francis.[5]

## III.    PLAINTIFFS' CONTROL PERSON CLAIMS FAIL.

### A.    Plaintiffs Fail To Rehabilitate Their Section 15 Claims.

In their opening brief, the Outside Directors demonstrated that Plaintiffs' control person claims for the IPO-related Securities Act claims under 15 U.S.C. § 77*o* are based entirely on conclusory allegations regarding the positions they held before they were removed from TuSimple's Board after terminating the CEO. *See* Br. at 5–7. The Outside Directors also explained that these conclusory allegations of control are contradicted by the CAC's factual allegations. *Id.* With respect to the two core "frauds" underpinning Plaintiffs' theory—i.e., related-party transactions with

---

[3] *Accord Vignola v. FAT Brands, Inc.*, 2019 WL 6138473, at *9 (C.D. Cal. June 14, 2019) (dismissing § 12(a)(2) claim where the "only substantive allegation" was that defendant "signed or authorized the signing of the Offering Documents").

[4] While the CAC alleges that all "Defendants participated in the offers for sale … of TuSimple stock for financial gain by means of the Registration Statement," ¶ 348, that "formulaic recitation of the elements" of the cause of action is not entitled to acceptance. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009).

[5] Buss and Francis also incorporate the argument by the Underwriters that Plaintiffs lack statutory standing to pursue their § 12(a)(2) claims. *See* Underwriters' Reply at § III.A.

Hydron and TuSimple's safety record/prospects—the CAC alleges responsibility on defendants *other* than the Outside Directors. It alleges that "Hou, Chen," and others orchestrated "the secret transfer of the Company's … intellectual property," ¶ 122, and that "Hou was at the center of the failure to follow safety standards," ¶ 245. Likewise, the CAC alleges that other defendants controlled TuSimple—e.g., it alleges that after the Outside Directors began investigating TuSimple's Hydron interactions (through the Audit Committee), "Chen and Hou used ***their corporate control*** over TuSimple to oust the entire Audit Committee." ¶ 108 (emphasis added).

Plaintiffs' Opposition does not address these critical contradictions, and instead doubles down on them. The Opposition asserts that "Hou and Chen created related-party Hydron without the Audit Committee's . . . knowledge," Opp. at 4; that "Hou and Chen . . . us[ed] their majority voting power to remove the very committee that removed Hou [the Audit Committee]," *id.* at 8; and that the Audit Committee was "in the dark about Hydron," *id.* at 15.

Plaintiffs nevertheless argue that "general allegations concerning an individual's title and responsibilities" are "sufficient to establish control." *Id.* at 54. That is incorrect. As this Court—and numerous others—have recognized, "mere titles are not adequate indicators of control authority." *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *74 (S.D. Cal. Mar. 30, 2005). *See also Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates*, 748 F. Supp. 2d 1246, 1257–58 (W.D. Wash. 2010) (allegations that an individual was a director and signed a registration statement held insufficient to establish control person status); *Robbins v. Hometown Buffet, Inc.*, 1995 WL 908194, at *9 (S.D. Cal. Mar. 16, 1995) (dismissing § 20(a) claims against outside directors because their "status alone" does "not indicate the control necessary to state" such a claim).

The only case Plaintiffs cite in support, *In re Montage Technology Group Limited Securities Litigation*, 78 F. Supp. 3d 1215, 1228 (N.D. Cal. 2015), Opp. at 54, conflicts with the weight of authority, including the Ninth Circuit's

pronouncement that, to impose control person liability, a defendant must have "day-to-day oversight of company operations and involvement in the financial statements at issue." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). *See also Burgess v. Premier Corp.*, 727 F.2d 826, 830, 832–33 (9th Cir. 1984) (outside directors "uninvolved" in "day to day operations" were not control persons). This test is rarely met in cases involving outside directors. *See, e.g.*, *In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, 2012 WL 1983341, at *13 (C.D. Cal. May 31, 2012) ("Plaintiff has only alleged that Leckie and Limaye were independent directors . . . and that Limaye was Chair of the Board's Compensation Committee. The conclusory assertion that they are control persons . . . is thus . . . 'implausible' to say the least."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994); *Lilley v. Charren*, 936 F. Supp. 708, 716–17 (N.D. Cal. 1996). Unsurprisingly, Plaintiffs' lone authority, *In re Montage*, did not involve outside directors—particularly not directors who were allegedly ousted by *other* defendants alleged to have "demonstrated their control" in doing so. *Compare* ¶ 363.

Plaintiffs also insist—as to Buss but not as to Francis[6]—that they *have* made "specific allegations as to Chen, Dillon, and Buss regarding their day-to-day control, including . . . statements that they signed that contained the material misrepresentations and other instances where each spoke on TuSimple's behalf." Opp. at 54–55. Plaintiffs do not include Francis in this argument, thus waiving any argument that she qualifies as a control person. *See Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("[W]here a non-moving party fails to address an argument raised by the moving party in the opposition brief, the [c]ourt may consider [it] … as waived."). As to Buss, Plaintiffs cite a string of 57 paragraphs

---

[6] Indeed, Plaintiffs confirm that they "do not allege" that "Francis[] knowingly made any false statements or otherwise committed fraud." Opp. at 14. *See also id*. at 16 n.7 (confirming that Plaintiffs do not allege "Francis participated in, or knew of, the fraudulent scheme to plunder TuSimple's technology"). Francis cannot be a control person given Plaintiffs' admissions that she had no knowledge of the alleged fraud and did not control TuSimple or have active involvement in its day-to-day affairs.

in the CAC. *See* Opp. at 55 n.30. But only a handful of those allegations even pertain to Buss, and each of them concerns either (1) his **ouster** from the Board (*see* ¶¶ 114, 249), (2) the positions he held or the fact that he signed the Registration Statement and 2021 Form 10-K (¶¶ 60, 158, 382, 389), or (3) his announcement on a Nov. 1, 2022 conference call that Hou had been terminated as CEO following the Audit Committee's investigation (¶ 21). What's more, Plaintiffs do not even incorporate the bulk of those allegations into their Section 15 claim. *See* ¶ 351 (incorporating only the allegations contained in ¶¶ 314–50).

Accordingly, Plaintiffs do not allege "particularized facts of a control relationship, active involvement in [TuSimple's] day-to-day affairs, or control over the preparation and release of financial statements." *Peregrine*, 2005 WL 8158825, at *75. The Section 15 claims against Buss and Francis must be dismissed.

**B.     Plaintiffs Do Not State a Section 20(a) Control Person Claim.**

Plaintiffs' claim against Buss under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), related to their § 10(b) claim fares no better. The Ninth Circuit has recognized that "the controlling person analysis is the same" under Sections 15 and 20(a). *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990). Plaintiffs' Section 20(a) allegations against Buss are largely the same as the Section 15 allegations—and should be dismissed for the same reasons. *See Peregrine*, 2005 WL 8158825, at *78 (dismissing Section 15 and 20(a) claims for the same reasons).

**IV.    PLAINTIFFS' SECTION 10(b) CLAIM AGAINST BUSS FAILS.**

Plaintiffs assert a Section 10(b) claim against Buss (but not Francis) and only for alleged misrepresentations relating to safety. ¶¶ 196–231, 365–75.[7] As explained, this claim fails because (1) Buss is not alleged to have made any of the challenged

---

[7] Plaintiffs' Opposition asserts that "Buss" is "alleged to have made related-party misrepresentations throughout the Class Period," Opp. at 40, but Buss is not named as a Section 10(b) defendant for any such statements. The CAC alleges that "Buss [is] not named under the Exchange Act for the Related Party misrepresentations." ¶ 61. *See also* ¶ 377 (omitting Buss from Count V); CAC at page iv (listing Buss as an "Exchange Act" defendant only "for Safety Misrepresentations").

safety statements, (2) Plaintiffs do not plead the falsity of any safety statement, and (3) Plaintiffs do not plead particular facts raising a strong inference of Buss' scienter. Br. at 8–13. Plaintiffs' Opposition does nothing to undermine these arguments.

### A.    Buss Did Not Make The Allegedly Misleading Post-IPO Safety Statements.

Plaintiffs concede, as they must, that Buss is not a "maker" of the fourteen safety statements after the IPO alleged in the section of the CAC titled "Defendants' Materially False and Misleading Statements and Omissions Concerning Safety." *See* Opp. at 55; ¶¶ 196–231 (listing alleged misstatements relating to safety). They instead claim that Buss is liable under Section 10(b) because he "signed the Registration Statement" and is "thus a … 'maker' of" the allegedly misleading safety statements "therein." Opp. at 55. Accordingly, the Section 10(b) claims against Buss based on the post-IPO misstatements must be dismissed. *See In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 724 (C.D. Cal. 2021) ("A plaintiff must specifically allege why ***each statement*** meets each element of section 10(b) and Rule 10b-5.") (emphasis added).

### B.    Plaintiffs Failed to Include the Registration Statement In Their List of False and Misleading Safety Statements.

Plaintiffs do not state a Section 10(b) claim against Buss for the safety statements in the Registration Statement because Plaintiffs failed to include those statements in the list of challenged safety misstatements in their Section 10(b) claim. Neither Section V.H of the CAC—titled "Defendants' Materially False and Misleading Statements and Omissions Concerning Safety"—nor Section V.I, which lists post-April 2022 safety statements, includes any statements from the Registration Statement. Instead, those sections begin with the "May 10, 2021 Release on Form 8-K and 1Q 2021 Earnings Call," *id.* § V.H.1, and continue chronologically through the "July 26, 2022 Blog Post," *id.* § V.I.4. Indeed, Plaintiffs expressly do *not* incorporate the challenged safety statements from the Registration

REPLY ISO MOT. TO DISMISS               -7-               Case No.: 3:22-cv-01300-BEN-MSB

Statement (set forth at ¶¶ 333–35) into their Section 10(b) claim against Buss. *See* ¶ 365 (incorporating only ¶¶ 1–313).[8] Because "a party cannot amend its pleadings through briefs," Plaintiffs' belated attempt to add safety statements from the Registration Statement to the §10(b) claim against Buss should be rejected. *Est. of Mejia v. Archambeault*, 2021 WL 4428990, at *6 (S.D. Cal. Sept. 27, 2021). Even if Plaintiffs had properly pled those statements as a basis for the Section 10(b) claim against Buss, the claim still fails for lack of adequate pleading of falsity and scienter.

### C. Regardless, Plaintiffs Fail To Plead the Falsity of the Safety Statements in the Registration Statement.

Plaintiffs fail to plead the falsity of the three challenged statements in the Registration Statement related to safety. *See* ¶¶ 333–35. *First*, Plaintiffs rely on events occurring long after or long before Buss signed the allegedly misleading April 2021 Registration Statement, and thus fail to show that the statements were "false when made," as required. *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1087 (C.D. Cal. 2008). For example, Plaintiffs point to the April 2022 accident, *see* Opp. at 22, but that accident occurred a year after the Registration Statement was signed—thus, Plaintiffs cannot rely on it to show falsity. *See City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013) (pleading that lacks "evidence of contemporaneous falsity" constitutes "impermissible … fraud by hindsight"). Plaintiffs' recitation of unproven allegations made in former employee John Lindland's lawsuit, Opp. at 21–22, also fails, because Lindland last worked for TuSimple in March 2020—a year before the IPO—and never overlapped with Buss, who became a TuSimple director in January 2021, ¶ 60. *See also* TuSimple Reply at § II.B (challenging reliability of these sources).

*Second*, the specific statements that Plaintiffs challenge are clearly forward-

---

[8] Plaintiffs' omission of safety-related statements from the Registration Statement stands in stark contrast to their inclusion of statements from the Registration Statement in Section V.G of the CAC listing the challenged Hydron/related-party statements. *See* CAC § V.G.1. & ¶¶ 158–163.

looking statements of opinion and/or puffery.[9] These "challenged statements must be viewed in context." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 933 (9th Cir. 1996). And here, they come from the Prospectus, which makes clear that TuSimple's product—autonomous trucking—is a developing technology and expresses forward-looking opinions about it. *See* Dkt. 138-8 at 1 ("We believe that our technology and our AFN will make long haul trucking significantly safer"); *id.* at 5 ("We are developing a Level 4 autonomous technology solution."); *id.* at 13 ("We believe that our AFN is the most comprehensive solution to address [industry challenges like] safety."). Such opinion statements are only actionable if the speaker does not sincerely hold the belief or if the speaker omits "material facts" about the statement that conflict with it. *Omnicare, Inc. v. Laborers Dist. Council Constr. Ind. Pension Fund*, 575 U.S. 175, 189 (2015). Plaintiffs plead no such facts here as to Buss. Alternatively, these "general statements of optimism" are not actionable because Plaintiffs fail to plead that Buss had "knowledge of contradictory facts" that he "did not disclose." *In re Syntex*, 95 F.3d at 933-34. *See also* Lu Reply at § III.A; Underwriters' Reply at § II.C.

### D. Plaintiffs Fail To Plead Any Facts Supporting Buss' Scienter.

The Ninth Circuit has held that Plaintiffs must allege "particulari[zed] facts giving rise to a strong inference of scienter" as "to each of the individual defendants." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604, 607 (9th Cir. 2014). Plaintiffs come nowhere close to satisfying this standard for Buss.

Plaintiffs' first scienter argument regarding the safety statements is that "Defendants made specific statements about safety throughout the Class Period, demonstrating that [they] either knew about the then-existing facts that contradicted

---

[9] Plaintiffs challenge statements like "[s]hippers . . . gain access to reliable and safe freight capacity at a substantially lower . . . cost . . . when direct labor is removed"; TuSimple's "AFN" is "the infrastructure to enable safe and efficient autonomous freight capacity as a service"; and TuSimple's trucks are "powered by our on-board autonomous driving software . . . and emergency roadside assistance to provide safe and seamless end-to-end autonomous freight capacity." ¶¶ 333–35.

their statements, or recklessly disregarded" the falsity of such statements. Opp. at 43. This argument does not apply to Buss, who is not alleged to have made *any* of the challenged safety statements during the class period after the IPO. Indeed, Plaintiffs' Opposition points only to statements from Lu, Dillon, and Hou—and asserts that "Hou was at the center of the failure to follow safety standards." *Id*. at 43–44.

Plaintiffs' next argument relies on allegations that there were "[m]ultiple [r]esignations [and] terminations" of TuSimple officers and directors, including Buss' own removal from the board. *Id.* at 45. But Plaintiffs fail to connect any of the executive departures to alleged misconduct or the challenged statements, and fail to explain how Buss' involuntary removal from the Board bears on his scienter at all. In fact, they argue the opposite: that Buss and other independent directors were removed by Hou and Chen *because* they had just recently terminated Hou as CEO "in connection with [the Audit Committee's] ongoing investigation." *Id*. at 46. *See also* ¶ 24 ("[L]ess than two weeks after the Audit Committee terminated Hou, Hou and Chen used their corporate control . . . [to] remov[e] the entire Audit Committee [which was] investigating Hou's related party scheme with Hydron.").

Plaintiffs' third scienter argument relies on "insider stock sales." Opp. at 48. Buss is not mentioned because he had no such sales. Again, this cuts *against* his scienter. *Webb v. Solarcity Corp*., 884 F.3d 844, 856 (9th Cir. 2018) ("[A] lack of stock sales can detract from a scienter finding."). Plaintiffs make no other arguments to support the notion that Buss made any safety statements with scienter. The Section 10(b) claim against Buss must be dismissed for inadequate allegations of scienter.[10]

## CONCLUSION

The Court should dismiss the CAC's claims against Buss and Francis.

---

[10] Plaintiffs argue that scienter for the alleged related-party misrepresentations may be inferred under the "core operations" doctrine, *see* Opp. at 41-42, but Buss is not named as a defendant for that claim, ¶¶ 61, 377. Plaintiffs do not argue "core operations" as a basis for scienter as to their claim premised on alleged safety misrepresentations.

Dated: February 26, 2024

Respectfully submitted,

*/s/ Blake Zollar*
BLAKE ZOLLAR (SBN 268913)
blake@kzllp.com
**KONING ZOLLAR LLP**
169 Saxony Road, Suite 115
Encinitas, CA 92024
Telephone:     (858) 252-3234

JAMIE A. LANG (California SBN 253769)
jlang@kslaw.com
**KING & SPALDING LLP**
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone:     (213) 443-4355

MICHAEL R. SMITH, *pro hac vice*
mrsmith@kslaw.com
PETER M. STARR, *pro hac vice*
pstarr@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone:     (404) 572-4600

*Attorneys for Defendants Brad W. Buss and Karen C. Francis*