QUINN EMANUEL URQUHART & SULLIVAN, LLP
R. Brian Timmons (Bar No. 155916)
briantimmons@quinnemanuel.com
James R. Asperger (Bar No. 083188)
jimasperger@quinnemanuel.com
Joseph Sarles (Bar No. 254750)
josephsarles@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant Xiaodi Hou*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED,<br><br>Defendants. | Case No.: 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB)<br><br>**DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Judge:       Hon. Roger T. Benitez<br>Courtroom:  5A<br><br>Date:        March 18, 2024<br>Time:        10:30 am |

3:22-cv-01300-BEN-MSB

Dr. Xiaodi Hou respectfully submits this Reply in support of his Motion to Dismiss plaintiffs' Consolidated Amended Class Action Complaint ("CAC") and joins the Reply contemporaneously filed by TuSimple Holdings, Inc. (the "Company"). As set forth in his motion (Dkt. 141), the CAC: (1) fails to plead facts supporting the required strong inference of scienter as to Dr. Hou; (2) fails to allege with particularity Dr. Hou's involvement in any purported scheme; and (3) fails to adequately plead corrective disclosures and/or any rational theory of loss causation. Plaintiff's Omnibus Opposition (Dkt. 149) confirms these fundamental and fatal defects, offers no potential cure, and does not seek leave to amend. Accordingly, the CAC should be dismissed with prejudice as to Dr. Hou.

## I. PLAINTIFFS' EMPTY CONCLUSIONS REGARDING DR. HOU ARE INSUFFICIENT TO ALLEGE SCIENTER

Plaintiffs' vacuous legal conclusions masquerading as "facts" fall far short of the "stringent scienter pleading requirements of the [Private Securities Litigation Reform Act (PSLRA)]." *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008). Indeed, the PSLRA is designed to prevent the *mud against the wall* approach employed by plaintiffs here. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) ("compiling a large quantity of otherwise questionable allegations will [not] create a strong inference of scienter"). The CAC here "mistakes quantity for quality," *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *15 (S.D. Cal. May 23, 2017), and fails to raise facts sufficient to create the required *strong inference* of scienter against Dr. Hou, 15 U.S.C. § 78u-4(b)(2).

***Plaintiffs do not plead Scienter as to Hydron Issues.*** Plaintiffs' argument that the alleged transfer of information to Hydron was *material* is baseless. *See* Company Reply at § II.A. Plaintiffs' allegation that "according to the Company's SEC filings" the transfer included "technical data, blueprints and schematics that would enable Hydron to replicate TuSimple's technology" is ***false*** on its face—there is no such

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

language in any SEC filing. Dkt. 138-1 at 8, CAC ¶ 109.[1]  The *actual* SEC filings disclosed inconsequential matters: (i) an unidentified number of work hours for Hydron of an unidentified nature amounting to less than $300,000 in value and (ii) transfer of information in connection with the Company's evaluation of Hydron as a potential OEM, that did not involve the Company's intangible assets or patents or affect the Company's balance sheet, and which plaintiffs have no factual basis to conclude was different from that disclosed to other OEMs.  *See* Dkt. 138-18 at 4-5. Without establishing materiality, a securities fraud claim against Dr. Hou cannot be stated.  *United States v. Smith*, 714 F. App'x 701, 704 (9th Cir. 2017) (the "settled meaning of intent to defraud requires a showing of materiality").  Plaintiffs' attempt to impute knowledge to Dr. Hou of immaterial issues misses the point, as is the attempt to assert scienter based on Dr. Hou's termination on the *assumption* the termination was related to Hydron.  *See* Dkt. 149 at 45-46, Dkt. 138-18.[2]  Also of no moment is plaintiffs' contrived attempt to fit the Hydron issue within an unspecified "scheme"—that plaintiffs *refuse* to describe with particularity, *see infra* § II.  The *only* "fact" pleaded in support of scienter here—Dr. Hou's alleged "long-standing" relationship with other company executives, Dkt. 149 at 40, is insufficient as a matter

---

[1]   Instead, this language appears to be a quote from a February 2023 WSJ article, the source of which is an unnamed person "familiar with the matter."  But the law is clear. Plaintiffs cannot properly allege facts by quoting unnamed sources in a news article, *see infra*; *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1172 (C.D. Cal. 2007) ("Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.") (citation omitted).

[2]   Dr. Hou's October 2022 termination was without cause. Dkt. 138-18 at 2.  To the extent it related to the immaterial transfer of Hydron information, the termination itself is nonetheless irrelevant to any theory that the market was misled *on some material matter*. *See, e.g.*, *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) (no scienter because plaintiffs presented "no evidence that defendants' termination was based on fraud").  Notably, Dr. Hou immediately and publicly categorically denied any wrongdoing after his termination.

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

of law. *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1039 (S.D. Cal. 2014) (Benitez, J) (dismissing claims against CEO and CFO and rejecting argument that "the existence of a warm relationship" with the wrongdoer establishes scienter); *Fin. Acquisition Partners, LP v. Blackwell*, 2004 WL 2203253, at \*23 (N.D. Tex. Sept. 29, 2004), *aff'd*, 440 F.3d 278 (5th Cir. 2006) (a "very close working relationship" with wrongdoer "does not adequately allege scienter"). The absence of sufficient scienter allegations is not surprising, because it defies logic that Dr. Hou covertly aided Hydron, a company in which he had zero interest, to the detriment of his own company, in which he held more than *thirteen million* Class A Shares, *see* Dkt. 138-8 at 121.

***Plaintiffs do not plead Scienter as to Safety-Related Issues.*** Plaintiffs admit their safety-related allegations "regarding Hou . . . were derived from Lindland," Dkt. 149 at 44, and do not dispute that, as the record demonstrates, their allegations were in fact copied and pasted from the unadjudicated pleadings in that action. *See Conde v. Sensa*, 259 F. Supp. 3d 1064, 1070 (S.D. Cal. 2017). Plaintiffs' assertion that this does not matter because *Lindland's* allegations are "corroborated" is untrue and misleading. Dkt. 149 at 34-35. First, pointing to a WSJ article that itself merely quotes the *Lindland* complaint corroborates nothing. *See* Dkt. 141-1, fn. 1. Second, plaintiffs miss the point—to properly allege such facts and satisfy Rule 11 counsel must have "investigated independently" the *Lindland* allegations they rely on. *Lako v. Loandepot, Inc.*, 2023 WL 444151, at \*5 (C.D. Cal. Jan. 24, 2023).[3] Plaintiffs do not dispute they have not done so and thus cannot rely on ***any** Lindland* allegations.

---

[3] At a minimum, plaintiffs must have "[spoken] directly to the sources upon which the other complaints rely" . . . "or contact[ed] the attorneys whose allegations they copied to discuss the basis for the claims." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at \*20 (C.D. Cal. May 5, 2011); *c/f Lako*, 2023 WL 444151, at \*5 ("Here, Plaintiffs state in their opposition that Plaintiffs' counsel contacted attorneys in the [other] action to discuss the basis for her allegations."). Plaintiffs' counsel here apparently have not done so.

Plaintiffs also do not respond to Dr. Hou's argument that scienter also cannot be reliably derived from *Lindland* as he is a former employee with an axe to grind. Dkt. 141-1 at 7-8. Plaintiffs cannot plead scienter with respect to safety-related statements from unnamed sources in a lone WSJ article either. *See* Company Reply at § II.A. Indeed, plaintiffs ***wrongly*** argue that "Defendants' authority fails to support any notion that WSJ reporting is 'unreliable and insufficient.'" Dkt. 149 at 32, fn. 17. Plaintiffs fail to distinguish Dr. Hou's cited case, *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *23 (S.D.N.Y. Sept. 29, 2014) (*see* Dkt. 141-1 at 8), which held specifically that a ***WSJ article*** cannot be used to support scienter where the source is merely an unnamed "person familiar with the matter." The court dismissed the complaint on that basis. The Court should do likewise here. Aside from these improper sources, plaintiffs' safety-related allegations are reduced to the mere fact an accident occurred after forward-looking safety statements. This also is "insufficient because [pleading]. . . scienter in hindsight . . . is not permissible under the PSLRA." *Collins v. Winex Invs., LLC*, 2009 WL 861738, at *4 (S.D. Cal. Mar. 27, 2009).

***Plaintiffs do not Plead a "Holistic" Inference of Scienter.*** Plaintiffs argue that the Court should "assess all [scienter] allegations *holistically*." Dkt. 149 at 39 (emphasis added) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007)). But courts "cannot transform a series of inadequate allegations into a viable inference of scienter." *Zucco Partners, LLC*, 552 F.3d at 1008. Particularly here, where plaintiffs' proffered supposed *holistic* view of scienter "makes no sense." *In re Metricom Sec. Litig.*, 2004 WL 966291, at *35 (N.D. Cal. Apr. 29, 2004), *aff'd sub nom. Young v. Dreisbach*, 182 F. App'x 714 (9th Cir. 2006). Plaintiffs' attempt to explain away Dr. Hou's *complete* lack of financial incentive to participate in the fraud here falls short. Beyond dispute, Dr. Hou had no financial interest in Hydron, and he

-4-                                    3:22-cv-01300-BEN-MSB
DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

did not engage in any Company stock sales.[4]  *See* Dkt. 141-1 at 5-6; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427–28 (9th Cir. 1994) (no reasonable jury could find scienter where defendants ended up reaping the same large losses as did Plaintiffs).  Plaintiffs' response—that "the absence of personal financial gain [is] not dispositive of scienter," and "the lack of stock sales by a defendant is not dispositive [of] scienter" (Dkt. 149 at 50-51), offers nothing—with admittedly no profit motive, plaintiffs have *no* proffered motive or inference of scienter as to Dr. Hou.  Plaintiffs highlight factors they believe are not conclusive, but *absence* of a theory fails to present the "cogent and compelling" case for scienter required by *Tellabs.  See* 551 U.S. at 324.  All plaintiffs have left to explain scienter as to Dr. Hou is their xenophobic "Chinese spy-ring" theory of this case, Dkt. 149 at 2.  Yet plaintiffs fail to elucidate this "scheme" beyond improperly vague group-pleading (*see infra* § II).  Moreover, their reliance on an ongoing federal investigation is self-defeating.  Dkt. 149 at 2.  "[T]he existence of an investigation, standing alone, [is] insufficient to support scienter." *Zamir v. Bridgepoint Educ., Inc.*,  2018 WL 1258108, at *17 (S.D. Cal. Mar. 12, 2018); *In re Twitter, Inc., Securities Litigation*, 2020 WL 9073168, at *8 (N.D. Cal. Apr. 20, 2020) ("evidence relating to the existence of an SEC investigation, or lack thereof . . . by itself proves nothing").[5]

---

[4]  It is also undisputed Dr. Hou lost enormous sums and was the biggest victim in this case. Dkt. 141-1 at 1.  Adding insult to injury, plaintiffs argue Dr. Hou suffered only a "paper" loss. Dkt. 149 at 51.  That is a distinction without a difference.  Either way Dr. Hou suffered *massive losses by holding* negating any inference of scienter here. *Tripp v. Indymac Fin. Inc.*, 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) (granting motion to dismiss as "individual Defendants retained such a large percentage of their stock that an inference of scienter is functionally negated").

[5]  In a last gasp attempt to assert scienter, plaintiffs argue that Dr. Hou "resigned from the Board after an internal investigation into reports that he was poaching TuSimple talent for Hydron (¶252)."  Dkt. 149 at 51.  This is patently false.  There is no allegation *anywhere* that Dr. Hou was poaching talent *for Hydron*.  In any event, Dr. Hou has no current involvement with the Company, and has not for almost a year.

## II.   PLAINTIFFS' FAILURE TO ALLEGE DR HOU'S INDIVIDUAL INVOLVEMENT IS FATAL TO THE SCHEME LIABILITY CLAIM

Plaintiffs failed to respond to Dr. Hou's argument that in order to plead scheme liability, Rule 9(b) requires specific allegations that the CAC lacks.  Dkt. 141-1 at 9 - 10.  To satisfy Rule 9(b), plaintiffs were required to *differentiate* Dr. Hou's alleged role in the purported scheme and "may not simply clump defendants together in vague [scheme] allegations [under] Rule 9(b)."  *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190 (W.D.N.Y. 2022).  Plaintiffs' silence is a concession they have no Rule 9(b) argument (and operates as a waiver even if they did, *see Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913-914 (S.D. Cal. 2021)).  Because it is well-established that "[s]cheme liability allegations are subject to Rule 9(b)'s heightened pleading standards," *In re Nektar Therapeutics*, 2020 WL 3962004, at *13 (N.D. Cal. July 13, 2020), the scheme liability claim as to Dr. Hou must be dismissed.

## III.   PLAINTIFFS' CURSORY ARGUMENT THAT THEY HAVE PLED LOSS CAUSATION IS NOT ENOUGH

Plaintiffs advance a "corrective disclosure" theory of loss causation relying on "disclosures on March 3, August 1, October 30, December 5, and December 20, 2022" that according to plaintiffs "revealed that . . . statements were false and misleading and caused TuSimple stock to decline."  Dkt. 149 at 53 (citing CAC ¶¶ 274-299).  But Plaintiffs fail to respond to Dr. Hou's arguments that *none* of these cited disclosures are actually *corrective*, *see* Dkt. 141-1 at 10.  Waiver aside, none of plaintiffs' laundry list of corrective disclosures are sufficient to plead loss causation in the first place.

***March 3, 2022 Disclosure.***  This announcement by TuSimple that Dr. Hou

---

*See* CAC ¶ 19 (October 30, 2022 termination as CEO); *id.* ¶ 146 (March 9, 2023 resignation from Board); *see also* Dkt. 138-29 (noting November 9, 2022 irrevocable proxy from Dr. Hou over the shares he held through intermediary vehicles, and voting agreement giving up voting control).  Alleging that Dr. Hou has *anything* to do with the Company's delisting from NASDAQ or plaintiffs' speculation about a move to China, Dkt. 149 at 2, is therefore false and misleading.

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

would become CEO and President is unrelated to *any* alleged fraud and facially is not causative here. *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 771 (N.D. Cal. 2020) ("To be corrective, the disclosure must 'relate back to the misrepresentation and not to some other negative information about the company.'") (citation omitted).

***August 1, 2022 Disclosure***. This WSJ article (*see* Dkt. 141-1, fn. 1) discloses: (i) the launch of an investigation, (ii) the prior crash in April 2022, and (iii) the *Lindland* litigation. None are corrective.[6] "In general, a disclosure is not 'corrective' if it contains information 'derived entirely from public filings and other publicly available sources.'" *Grigsby v. BofI Holding*, Inc., 979 F.3d 1198, 1205 (9th Cir. 2020) (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 889 (9th Cir. 2014)). Disclosure of the crash the article identifies was made public more than a month before, and the *Lindland* litigation was public in 2021. These matters were necessarily already reflected in the Company's stock price. *See In re Blue Earth, Inc. Sec. Class Action Litig.*, 2015 WL 12001274, at *2 (C.D. Cal. Nov. 3, 2015) (discussing efficient-market-hypothesis). An "announcements of [an] investigation" also "cannot serve as the basis for loss causation." *Eng v. Edison Int'l*, 2016 WL 4793185, at *10 (S.D. Cal. Sept. 14, 2016) (Benitez, J). "[It] reveals just that—an investigation—and

---

[6]  Nor is the August 1, 2022 article corrective of the Company "blaming the entire accident on human error"—*see* Dkt. 141-1, fn. 1, Dkt. 149 at 10—because the Company never did. To the contrary, the Company's public position has always been that human ***and*** system error was to blame. *See* Dkt. 138-1 at 34-35 (citing CAC ¶ 229. Plaintiffs otherwise misleadingly suggest that on an earnings call the Company changed its prior position by stating it was "not only a human error" (CAC ¶ 246)—by omitting the very next line from the call where the Company confirmed it "*never* mentioned that it's *just* a human error." *See TuSimple Holdings, Inc. (TSP) Q3 2022 Earnings Call Transcript*, https://seekingalpha.com/article/4551451-tusimple-holdings-inc-tsp-q3-2022-earnings-call-transcript (last visited Feb. 21, 2024) (incorporated by reference, *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)).

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

nothing more." *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at \*10 (C.D. Cal. Feb. 6, 2014) (citation and quotation omitted).  This applies with equal force to a corporation's announcement of its own internal investigation.  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).  The balance of the WSJ article is primarily anonymous opinions that lack probity for loss causation purposes; *In re BofI Holding, Inc. Sec. Litig.,* 977 F.3d 781, 797 (9th Cir. 2020) (blog posts from anonymous source not plausible as corrective disclosure).  The question here is revelation of *the truth* through corrective disclosure, not mere *opinion.  See Bonanno v. Cellular Biomedicine Grp., Inc.*, 2016 WL 2937483, at \*5 (N.D. Cal. May 20, 2016; *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions.").

*October 30, 2022 Disclosure.*  This further WSJ article (*see* Dkt. 141-1, fn. 2) discloses merely that investigations had begun and is not a *corrective* disclosure.  The article otherwise recites *already public* information regarding the Company's dealings with CFIUS, *see* CAC ¶ 12.  The Company's later disclosure of *immaterial* Hydron information issues is not a *corrective* disclosure either as it did not reveal "that allegedly *material* information had been omitted" by the Company.  *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.,* 2008 WL 2324111, at \*5 (S.D.N.Y. June 4, 2008).[7]

*December 5, 2022 Disclosure.*  The announcement here of the end of one of the Company's commercial partnerships is not alleged to be related to fraud, only

---

[7]  As noted above, plaintiffs' argument that the disclosed Hydron transfer of information belied a *material* falsehood is baseless.  *See supra* § I.  To the extent plaintiffs assert the market understood it as such, that "is not a 'fact.'  It is an inference that [plaintiffs] believe[] is warranted from the facts that are alleged"—but the court "is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008) (affirming dismissal for failure to plead loss causation).

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

"governance issues" (CAC ¶ 292), and plaintiffs cite no authority for the proposition that a post-class statement is relevant to loss causation.

***December 20, 2022 Disclosure.***  The announcement of "broad restructuring" is also immaterial—general "reports of the defendant's poor financial health" do not plead loss causation either.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010).

***Losses Prior to Corrective Statements.***  A crucial point raised by Dr. Hou, and unaddressed by plaintiffs, is how any theory of loss causation can hold water when the Company's share price was on a stark downward trajectory and had ***lost 77%*** of its value ***before*** the first alleged corrective disclosure (and was down 91% on October 28, 2022 immediately before Dr. Hou was terminated).  *See* Dkt. 141-1 at 10-11, *see also* Dkt. 149-3 Ex. 3 at 32 (10/28/2022 $6.31), *id.* at 36 (03/02/2022 $16.97), *id.* at 40 (06/30/2021 $71.24).  As the WSJ described it, this was due to the Company "miss[ing] . . . 2020 and 2021 revenue targets by a wide margin" and "investors souring in recent months on companies that won't have significant revenue for years." (*see* Dkt. 141-1, fn. 1).  Because "loss causation requires that the defendant's misstatement, *rather than some other fact*, foreseeably caused the plaintiff's loss," *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955 (9th Cir. 2023), plaintiffs must show "more than 'an earnings miss' or the market's reaction to a company's 'poor financial health generally'" as the WSJ described.  *Id.*; *In re Oracle*, 627 F.3d at 393 (finding no loss causation where the "market understood Oracle's earnings miss to be a result of several deals lost in the final weeks of the quarter due to customer concern over the declining economy," not the alleged fraud); *see Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 343 (2005).  Thus plaintiffs' assertion that the TuSimple securities have dropped 98% from the Company's IPO offering price (CAC ¶¶ 7, 39, *see* Dkt. 149 at 2) obscures more than it illuminates.  As here, where there has been a significant, pre-disclosure collapse, unrelated to any allegation of fraud, this intervening event makes it, if not *impossible,* then *overly speculative*, to attribute the loss to purported

-9-    3:22-cv-01300-BEN-MSB

corrective disclosures (which here are not corrective in any event, *see supra*). *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 418-419 (S.D.N.Y. 2009) (granting dismissal as, inter alia, as of the date of the sole disclosure relied on to establish loss causation, the company's stock price had "already fallen almost 90% from the IPO price of $15.00 to $1.90 per share" "[a]s such, the brunt of the collapse had already occurred even before the market was informed"); *see In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008) (dismissing action under loss causation where "[t]he Complaint fails to account, for example, for the 'crater[ing] of the Internet market that occurred during the ten-month period [at] issue[]"); *see also Bastian v. Petren Res. Corp.*, 892 F.2d 680, 685 (7th Cir. 1990) (finding no viable loss causation in midst of oil market collapse). So too here.

## CONCLUSION

For the foregoing reasons, the Court should grant Dr. Hou's motion to dismiss.

DATED:  February 26, 2024          Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _____/s/ Joseph Sarles_____
    R. Brian Timmons
    briantimmons@quinnemanuel.com
    James R. Asperger
    jimasperger@quinnemanuel.com
    Joseph Sarles
    josephsarles@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017
    Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
    *Attorneys for Defendant Xiaodi Hou*

DEFENDANT XIAODI HOU'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT