JONATHAN A SHAPIRO (SBN 257199)
*JShapiro@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, California 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

ROBERT M. TIEFENBRUN (SBN 310975)
*RTiefenbrun@goodwinlaw.com*
NICOLE J. KIM (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

*Attorneys for Defendant Cheng Lu*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED, <br><br> Defendants. | Case No. 3:22-cv-01300-BEN-MSB (Consolidated with Case No. 3:23-cv-00282-BEN-MSB) <br><br> **CHENG LU'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** <br><br> Date:     March 18, 2024 <br> Time:    10:30 a.m. <br> Courtroom: 5-A (5th Fl.) <br> Judge:    Hon. Roger T. Benitez <br>             221 West Broadway <br>             San Diego, CA 92101 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

I.     PLAINTIFFS LACK STANDING TO SUE LU UNDER SECTION 12 ............................................................................................................. 1

II.    MR. LU CANNOT BE SUED FOR STATEMENTS MADE IN HIS ABSENCE DURING SECOND HALF OF THE CLASS PERIOD .............. 2

III.   PLAINTIFFS PLEAD NO ACTIONABLE STATEMENT .......................... 2

       A.     The Section 11 Claims Fail To Allege Actionable Safety Statements .................................................................................... 3

       B.     The Section 10(b) Claims Fail to Allege Actionable Safety Statements .................................................................................... 4

IV.    PLAINTIFFS FAIL TO PLEAD LU'S SCIENTER AT TUSIMPLE ........... 6

       A.     Plaintiffs Fail To Plead That Lu Knew Any Statement Was False ........................................................................................... 6

       B.     Mr. Lu's Non-Discretionary Stock Sales Do Not Plead Scienter ........ 8

       C.     Mr. Lu's Resignation Does Not Support An Inference Of Scienter ................................................................................... 10

CONCLUSION ..................................................................................................... 11

C. LU'S REPLY ISO MOTION TO DISMISS                              3:22-CV-01300-BEN-MSB

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018)........................................................9

*Batwin v. Occam Networks*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ........................................................9

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2020 WL 4569846 (N.D. Cal. Aug. 7, 2020).........................................................4

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v.
Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012).................................................................3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)..............................................................................8

*Golubowski v. Robinhood Mkts., Inc.*,
2023 WL 1927616 (N.D. Cal. Feb. 10, 2023).....................................................3

*In re Infonet Servs. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003).................................................................2

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014)...................................................................4

*Matrixx Initiatives Inc., v. Siracusano*,
563 U.S. 27 (2011) ...........................................................................................4

*Metzler Inv. GMBH v. Corinthian Colleges*,
540 F.3d 1049 (9th Cir. 2008)...........................................................................10

*Mulligan v. Impax Labs., Inc.*,
36 F. Supp. 3d 942 (N.D. Cal. 2014)....................................................................4

*Nursing Home Pension Fund v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)...........................................................................10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ................................................................................................3

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ...............................................................................10

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2019 WL 2491935 (N.D. Cal. June 14, 2019) ......................................................9

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003)................................................................9

*In re Silicon Graphics, Inc.*,
    183 F.3d 970 (9th Cir. 1999) ...............................................................................10

*United States v. Jenkins*,
    518 F.3d 722 (9th Cir. 2008) .................................................................................1

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................10

Cheng Lu submits this reply in further support of his motion to dismiss, also joining in the motions and arguments by TuSimple.

### INTRODUCTION

The Opposition ignores the vast majority of the arguments raised in Mr. Lu's Motion—indeed, like the Complaint, the Opposition says nothing to justify the scurrilous claims asserted against him.  First, Plaintiffs do not try to argue that Mr. Lu is a statutory seller under Section 12(a)(2), focusing instead on why they have met that test against *different* defendants.  Second, Plaintiffs now concede that Mr. Lu cannot be liable for statements made by *other people during his absence* from TuSimple, *i.e.*, the statements at the core of the Class Period.  Third, Plaintiffs fail to plead any actionable statements against Lu or anyone else regarding Hydron or "safety."  Fourth, as for scienter, the Complaint pleads no basis that Mr. Lu knew, or had reason to even suspect, that any statement made on his watch was false—and the generic smear that the CEO "must've known" is never enough.  Fifth, Plaintiffs cannot plead Mr. Lu's scienter by pointing to stock sales because nothing here is suspicious.  To the contrary, Mr. Lu increased his stock holdings during the Class Period (which is the *opposite* of scienter), and even Plaintiffs concede that his only sales were non-discretionary sales to pay taxes (which also is never scienter). Finally, Plaintiffs cannot keep Mr. Lu in this case by claiming that his *departure* from the Company smells fishy—because the Ninth Circuit doesn't scrutinize pleadings by smell, but does require that that the cogent basis for fraud be pleaded in the Complaint.[1]

### I.   PLAINTIFFS LACK STANDING TO SUE LU UNDER SECTION 12

To state a Section 12(a)(2) claim, Plaintiffs were required to plead that Mr. Lu transferred TuSimple stock to Plaintiffs, or that he *personally solicited* the purchase of securities *for his own financial gain*.  Mot. at 2.  Plaintiffs do neither.

---

[1] *See United States v. Jenkins*, 518 F.3d 722, 723 (9th Cir. 2008) (Kozinski, C.J., dissenting from denial of rehearing) ("A test based on the olfactory apparatus of each district judge, rather than on well-defined and closely cabined legal standards . . . would be wholly inconsistent with our role as impartial adjudicators[.]").

***First,*** Plaintiffs concede they do not allege Mr. Lu transferred any shares to them, because the IPO was a firm commitment underwriting.  Mot. at 2; Opp. at 26.

***Second,*** as Mr. Lu and the Company have argued, the threadbare allegation that he signed a Registration Statement is never enough to plead solicitation.  Mot. at 3; Main Brief at 16.  Plaintiffs also do not dispute this point.  *See* Opp. at 26-27.

***Finally,*** to the extent Plaintiffs say anything about Section 12, it is <u>only</u> in response to the Underwriters' motion, arguing that dismissal is "premature." Opp. at 26.  There is, however, nothing "premature" about dismissing Mr. Lu because the meaningful factual pleading that a defendant is a "statutory seller" must be in the Complaint—it is not pesky detail to kick down the road.  *In re Infonet Servs. Sec. Litig.*, 310 F. Supp. 2d 1080, 1101-02 (C.D. Cal. 2003) (dismissing for failure to plead statutory seller); *see also* TuSimple Reply at § I.C.; UW Reply at § III.B.

## II.   MR. LU CANNOT BE SUED FOR STATEMENTS MADE IN HIS ABSENCE DURING SECOND HALF OF THE CLASS PERIOD

Mr. Lu is unique because he had nothing to do with TuSimple for much of the Class Period—he left in early March 2022 and did not return until November. 2022.  Mot. at 1, 3.  Plaintiffs concede the obvious point that Lu cannot be liable for many (<u>21 of 49</u>) statements made by others in his absence.  Opp. at 55 ("Plaintiffs do not seek to hold Lu liable for statements made in his absence."). That means Lu must be dismissed from Counts IV-VI with respect to the following statements in <u>Exhibit A</u> to the Main Brief: Rows 5, 9-13, 17, 26-38; CAC ¶¶ 179, 181-83, 185, 187, 189, 194, 208, 209, 211, 214, 216, 217, 221-24, 226, 228, 229.

## III.   PLAINTIFFS PLEAD NO ACTIONABLE STATEMENT

Putting aside that Lu has not even been sued for any statement from March through November 2022, Plaintiffs fail to plead any actionable statements.  With respect to Plaintiffs' claims related to <u>Hydron</u>, Lu refers the Court to the Company's brief.  TuSimple Reply at §§ I.A, II.A.  With respect to Plaintiffs' allegations related to <u>safety</u>, the Amended Complaint fails to allege a materially

false statement or omission for various reasons explained below.

**A.     The Section 11 Claims Fail To Allege Actionable Safety Statements**

Plaintiffs argue that the challenged "safety" statements were false because multiple "sources" purportedly "revealed TuSimple's apparent dismissal of common safety practices and features before, during, and after the IPO." Opp. at 22. But Plaintiffs did <u>not</u> include these allegations in their Securities Act claim, *see* TuSimple Reply § I.B., and regardless, the alleged "sources" on which they rely are improper.[2] The other arguments are meritless.

*First*, contrary to Plaintiffs' argument, Opp. at 22, the *Omnicare* standard clearly encompasses both objective *and subjective* falsity. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 176 (2015).

*Second,* Plaintiffs contend certain statements are not opinions because they "do not display conditionality." Opp at 23. But TuSimple only contends that the statement about the "wide ranging benefits" of its technology (CAC ¶ 333) is an opinion, and that statement is conditioned by "[w]e believe." *See Golubowski v. Robinhood Mkts., Inc.*, 2023 WL 1927616, at *9 (N.D. Cal. Feb. 10, 2023) .

*Third*, Plaintiffs contend that certain challenged safety statements are not inactionable puffery by attempting to distinguish *Plumley v. Sempra Energy* (Opp. at 21, n.10) on the ground that TuSimple's statements referred to specific safety standards. 2017 WL 27122297 (S.D. Cal. June 20, 2017). But that contention fails because their allegations regarding these standards were excluded from their Section 11 claim, CAC ¶ 314, and in any event impermissibly rely on Lindland. *Compare* CAC ¶ 314 *with* Opp. at 21, n. 10 (citing CAC ¶ 125); *see* TuSimple Reply at § I.B. Plaintiffs' contention that these statements are not puffery because they are "objectively verifiable" fails (Opp. at 23-25; CAC ¶ 333-35), and their cited cases are inapposite. *See Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v.*

---

[2] For the same reasons, *see* TuSimple Reply § I.B., these sources also fail to support Plaintiffs' Section 10(b) safety argument. *See infra* at § III.B.

*Transocean Ltd.*, 866 F. Supp. 2d 223, 243 (S.D.N.Y. 2012) (challenged statements detailed "extensive training and safety programs" regarding ongoing deepwater drilling operations, which the court found to include verifiable facts); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 968 (N.D. Cal. 2014) (company had received multiple FDA warnings when it made its challenged statements about the drug's safety).[3]  Nor would a reasonable investor understand TuSimple's description of its goal of "safe and seamless end-to-end autonomous freight capacity" as a guarantee that its vehicles "would meet ***all*** the safety requirements within . . . the trucking industry."  Opp. at 24 (emphasis added).  In context, it is clear that these statements were touting the *possible* benefits from a future L4 product that was still in development—investors simply would not have viewed those statements as anything other than statements of general optimism.

***Fourth***, while statements can be misleading by omission as a general matter (Opp. at 25), Plaintiffs fail to explain how descriptions of TuSimple technology were misleading (*e.g.*, trucks "powered by our on-board autonomous driving software"), CAC ¶¶ 333-335, or implied there could never be an accident.

**B.  The Section 10(b) Claims Fail to Allege Actionable Safety Statements**

While Plaintiffs cite a handful of decisions finding that statements about safety could be actionable (Opp. at 33), those cases are inapposite.  *E.g., Matrixx Initiatives Inc., v. Siracusano*, 563 U.S. 27, 47 (2011) (defendants said "safety and efficacy" of drug "well established" despite failure to investigate serious side effect); *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 833-34 (N.D. Cal. 2014) (safety statements not puffery where they could be "objectively assessed through safety reports . . . or peer reviewed studies"); *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at *7 (N.D. Cal. Aug. 7, 2020) (falsity alleged where company compiled

---

[3] *Compare* CAC ¶ 333 (benefits from removing direct labor, include "safe freight capacity"); *id.* ¶ 334 (AFN is the "infrastructure to enable safe and efficient autonomous freight capacity"); *id.* ¶ 335 (L4 trucks enabled with certain features for "safe and seamless end-to-end autonomous freight capacity").

C. Lu's Reply ISO Motion to Dismiss                                    3:22-cv-01300-BEN-MSB

"passenger safety report" of incidents). The statements here are not actionable.

*First,* Plaintiffs argue that investors somehow understood "feature complete" to mean software could "handl[e] all the conceived 'what if' scenarios" because TuSimple defined "feature complete" to include "all the capabilities required for true Driver Out operations." Opp. at 33-34. But the April accident did not occur in a "driver out" situation. Nor would a reasonable investor understand "feature complete" as a guarantee that there would never be an accident.

*Second,* Plaintiffs' challenge to the November 2021 Form 8-K statement about safety being a primary focus rests on the same improper sources (*see* TuSimple Reply at § II.B.). Stripped of those sources, Plaintiffs have no basis to contest that employees were encouraged to identify safety concerns through TuSimple's confidential safety hotline, or that TuSimple prioritized safety. Main Brief at 29-31.

*Third*, Plaintiffs argue the April accident was caused by known safety issues and therefore revealed the falsity of prior statements, but the complaint offers no basis for the conclusion that a previously known safety issue caused the accident. Thus, this claim rests on classic, and impermissible, fraud-by-hindsight pleading.

*Fourth*, Plaintiffs argue that statements made after the April accident were misleading due to the omission of any reference to the crash and the grounding of TuSimple's fleet. Opp. at 37. But Plaintiffs assume TuSimple knew the cause of the accident, a month later, when TuSimple was still investigating. Similarly, Plaintiffs simply assert—without authority—that TuSimple should have disclosed it had grounded its fleet because it was material. But Plaintiffs plead no facts establishing how long the fleet was grounded (and if it was even grounded at the time of any 10-Q). And, despite Plaintiffs' assertion, the Company's "core operation" was developing autonomous driving software, not running its fleet. Main Brief at 38. And the timing of TuSimple's disclosure in July—four months after Lu left—does not suggest anything suspicious or improper about the investigation, or that TuSimple earlier had "its story straight." The only reasonable inference is that the Mutha

Trucka video forced TuSimple to comment before it was ready to do so.

*Finally*, while Plaintiffs' argument regarding the May 2022 statement that TuSimple's solution "eliminates human error" is far from clear, they appear to claim that the statement was false because the July 26 blog post attributed the April Accident to human error. Opp. at 38. But the May 2022 statement refers to TuSimple's fully driver-out technology and the April crash took place with a driver at the wheel. And the Company never suggested the *only* cause of the crash was human error. To the contrary, in the same statement, the Company disclosed that it installed "new automated system checks," to prevent this type of human error in the future, *i.e.*, the company acknowledged a software fix was possible. Main Brief at 9. The subsequent November 1 earnings call statement is not inconsistent. CAC ¶ 231.

## IV.   PLAINTIFFS FAIL TO PLEAD LU'S SCIENTER AT TUSIMPLE

### A.   Plaintiffs Fail To Plead That Lu Knew Any Statement Was False

As to purported safety issues, the Opposition points to no allegations that Mr. Lu was aware of any facts that Plaintiffs alleged rendered his statements false. The Opposition does not dispute the points raised in Lu's Motion, namely: (1) Plaintiffs cannot plead scienter via events that occurred after Lu left TuSimple in March 2022 (*i.e.* the April Crash and July 26, 2022 blog post); (2) the August 1, 2022 WSJ article Plaintiffs cite was published months after Lu resigned and says nothing about Lu or his knowledge of any safety problem before he resigned; and (3) Lindland's complaint has nothing to do with Lu. Lu Motion at 4-5.[4]

Plaintiffs appear to argue that scienter is demonstrated simply because Mr. Lu made statements about safety. Opp. at 43-44. This circular argument sidesteps the issue of scienter altogether. The statements Plaintiffs point to *in no way suggest* that Mr. Lu would have been aware of the discrete issues that Plaintiffs allege led to the April Crash or any other purported safety issues. Rather, they are the kinds of

---

[4] Plaintiffs themselves acknowledge that Lindland's complaint relates solely to a *different* defendant—*i.e.*, *not* Lu—who was allegedly "at the center of the failure to follow safety standards and regulations." Opp. 44.

C. LU'S REPLY ISO MOTION TO DISMISS                    3:22-CV-01300-BEN-MSB

high-level statements that every CEO makes (because safety *is* important).[5]

With respect to Hydron, Plaintiffs again do not dispute the points raised in Mr. Lu's Motion.[6]  And the arguments raised in Plaintiffs' Opposition do not move the needle.  ***First,*** Plaintiffs assert broadly that the "Exchange Act Defendants" were "directly involved in the related-party transactions with Hydron," but they only cite to allegations relating to defendants *other than* Mr. Lu.  Opp. at 40.

***Second,*** similar to their arguments relating to safety, Plaintiffs assert that Mr. Lu made some of the statements at issue, but that says nothing about scienter or knowledge of falsity.  Opp. at 40.[7]

***Third,*** Plaintiffs argue in broad terms that defendants had access to information about "TuSimple's business, operations, and practices via their positions" in TuSimple management, and had access to "internal corporate documents, conversations and contact with other corporate officers and employees, attendance at meetings, reports, and other information."  Opp. at 41.  These generic allegations can be made as to any officer, and cannot support scienter as a matter of

---

[5] *See* Opp. at 43 ("For example, defendant Lu represented to investors that 'we're going to ensure safety above all else' (¶198); '[s]afety comes before all else at TuSimple' (¶200); and 'we are feature complete' (¶205). Lu and Dillon also told investors that 'safety is our primary focus' (¶202); and '[n]ow that we have proven our Driver Out capabilities, our focus fully shifts to commercialization' (¶204).").

[6] Namely that: (1) allegations that unspecified "employees" did unspecified "work" for Hydron, on unspecified dates during 2021, fails to plead that Lu knew anything, much less when; (2) allegations of some non-specific information transfer at some unspecified time in 2022 similarly fail to plead that Lu was aware of the underlying facts, particularly given that Lu left the Company in March 2022 and is not alleged to have been involved; (3) Plaintiffs cannot plead Mr. Lu's scienter by alleging that the Audit Committee started investigating Hydron in July 2022—months after Lu left the Company in early March 2022—and that the Audit Committee itself disclosed its work on October 31, 2022—the month before Lu returned as CEO; (4) Plaintiffs do not contend that press reports relied on in the Complaint say anything about Lu; (5) the CFIUS inquiry and the NSA were disclosed at length, and say nothing about Lu's knowledge related to Hydron; and (6) SOX certifications are irrelevant to the scienter analysis.  Motion at 5-7.

[7] Specifically, Plaintiffs state that the individual defendants "are all alleged to have made related-party misrepresentations throughout the Class Period[.]"  Opp. at 40.  This fails to address the fact that Lu did not make any alleged misstatements from March 2022 through November 2022 (and the Complaint does not even allege when in 2022 the purported information sharing occurred).

C. Lu's Reply ISO Motion to Dismiss                                        3:22-cv-01300-BEN-MSB

law.  *E.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (requiring "particularized allegations" that defendants had "actual access to the disputed information").

***Fourth,*** Plaintiffs argue that the Company's oversight of its intellectual property increased as a result of the NSA with CFIUS.  Opp. at 41.  However, this argument does not apply to Mr. Lu, as Plaintiffs acknowledge that Mr. Lu resigned shortly after the adoption of the NSA, and did not return until the Audit Committee disclosed the findings of its investigation concerning Hydron.  Opp. at 55.

***Finally,*** the Complaint does not come close to presenting the rare case in which the core operations doctrine could apply.  *See* TuSimple Reply at 9, n.14.  Moreover, regardless of whether the protection of intellectual property is the "core of the Company's business," Plaintiffs offer no reason why Mr. Lu would have known about a discrete transfer of information to Hydron, particularly where the transfer was allegedly fraudulently orchestrated by defendants other than Mr. Lu.

### B.    Mr. Lu's Non-Discretionary Stock Sales Do Not Plead Scienter

Far from alleging that Mr. Lu suspiciously dumped his shares, Plaintiffs now concede that every disposition that Plaintiffs alleged in their Complaint was actually a non-discretionary (*i.e.*, forced) disposition to cover the tax burden of his always-disclosed public company compensation.  Opp. at 50.  Plaintiffs also concede that Mr. Lu's holdings of TuSimple stock actually *increased* by 23% during the Class Period.  *Id.*  These facts, conveniently omitted from the Complaint, are plain from the face of the documents that Plaintiffs relied on in drafting the Complaint, and therefore properly before the Court.  *See* ECF 138-2.  The result is clear: there is no factual basis to infer that Mr. Lu dumped shares to benefit from any supposed fraud.

The Opposition again fails to address Mr. Lu's Motion.  In particular, Plaintiffs were required to (and failed to) provide context showing that Mr. Lu's non-discretionary sales were suspicious *in comparison to his overall transaction history*.  *See* Mot. at 9.  In addition, Mr. Lu's sales have no logical, factual, or temporal

connection to Mr. Chao's sales, therefore Plaintiffs have not alleged corroborative sales as is typically required. Mot. at 9, n.6.

*First,* Plaintiffs contend that non-discretionary sales can support an inference of scienter. However, the sole case cited by Plaintiffs involved *discretionary* sales, and Rule 10b5-1 trading plans adopted "after the motive and opportunity to mislead investors [ ] arose." Opp. at 50 (citing *City of Birmingham v. Acadia Pharms.*, 2022 WL 4491093, *12-*13 (S.D. Cal. 2022)). There are no such allegations here.

*Second,* Plaintiffs argue that the Court should ignore the 23% *increase* in Mr. Lu's holdings during the Class Period because his acquisitions were due to compensation awards. Opp. at 50. The sole opinion cited by Plaintiffs concluded only that certain non-discretionary purchases were less compelling than discretionary purchases and sales.[8] But here Plaintiffs have not alleged any discretionary sales by Mr. Lu, and they cannot claim both that non-discretionary sales are relevant but non-discretionary acquisitions are not. In any event, Plaintiffs cannot dispute that Lu could have sold during the Class Period, meaning that his significant increase was entirely discretionary. Indeed, even where acquisitions are non-discretionary (as is often the case for public company executives), increases in a defendant's stock holdings *"strongly rebut"* an inference of scienter.[9] Mot. at 7.

*Third,* Plaintiffs' insistence that sales of 7% of holdings have been deemed sufficient in other circumstances (*i.e.*, where additional facts are pleaded),[10] does not change the Ninth Circuit precedent that sales of more than 37% of total Class Period

---

[8] *See* Opp. at 50 (citing *Lamartina v. VMware, Inc.*, 2023 WL 2763541, at *15 (N.D. Cal. Mar. 31, 2023)).

[9] *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 2491935, at *9 (N.D. Cal. June 14, 2019) (citing *Applestein v. Medivation, Inc.*, 2011 WL 3651149, at *8 (N.D. Cal. Aug. 18, 2011) (increase in class period holdings "strongly rebuts" scienter)).

[10] In one of Plaintiffs' two cases, defendant sold 100% of vested shares at a suspicious time, meaning he *sold every single share he could*. *Batwin v. Occam Networks,* 2008 WL 2676364, at *14 (C.D. Cal. July 1, 2008). Plaintiffs' other case *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1169 (C.D. Cal. 2003), found that sales were atypical of previous and subsequent sales, something they have never claimed here. *Azar v. Yelp, Inc.*, 2018 WL 6182756, at *19 (N.D. Cal. Nov. 27, 2018). *See supra* at 9.

holdings are typically necessary.  *Metzler Inv. GMBH v. Corinthian Colleges*, 540 F.3d 1049, 1067 (9th Cir. 2008); *see also Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (sales of 10% and 17% not suspicious); *In re Silicon Graphics, Inc.,* 183 F.3d 970, 987 (9th Cir. 1999) (sales of 7.7% and 6.9% not suspicious).[11]  7% isn't even close—and there are no "plus factor" allegations that get Plaintiffs there.

*Finally,* Plaintiffs argue that Mr. Lu's sales were suspicious because they are loosely connected to events "throughout 2021."  However, as explained elsewhere (*see* §§ IV.A, IV.C.) (i) the CFIUS inquiry and the NSA agreement are irrelevant to Plaintiffs' fraud allegations; (ii) Plaintiffs have not alleged that Mr. Lu had any knowledge of the alleged safety and security complaints that Plaintiffs reference; and (iii) Plaintiffs fail to allege that TuSimple employees were working on matters for Hydron "throughout 2021," let alone when Mr. Lu would have been aware of this.

### C.   Mr. Lu's Resignation Does Not Support An Inference Of Scienter

Plaintiffs argue that Mr. Lu's resignation is suspicious—and therefore pleads scienter as to their Hydron fraud theory—because it occurred just over a week after TuSimple announced the NSA.[12]  That conclusion fails to articulate why his resignation amounts to "suspicious circumstances."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009).  Critically, Plaintiffs nowhere allege any misconduct relating to the CFIUS inquiry or the NSA, nor that Lu's departure had anything to do with CFIUS or the NSA.  As explained in Mr. Lu's Motion, that TuSimple is one of countless cross-border companies subject to CFIUS oversight and a negotiated NSA is not, in any way, a pleading that "TuSimple was improperly sharing its technology with Hydron"—much less that Lu "knew it" on any particular date.  Mot. at 7.  Plaintiffs ignore these basic points, an implicit concession that the timing of Mr. Lu's resignation is not suspicious.

---

[11] Plaintiffs most assuredly do not plead that Lu's sales were "truly astronomical," rendering *Oracle Corp.* inapplicable.  *See Nursing Home Pension Fund v. Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) ($900M stock sales pleaded scienter).

[12] Plaintiffs do not claim that Lu's resignation is scienter for the safety allegations.

C. Lu's Reply ISO Motion to Dismiss                    3:22-cv-01300-BEN-MSB

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice and enter judgment for Cheng Lu and against Plaintiffs.

Respectfully submitted,

Dated:   February 26, 2024          By:   */s/ Jonathan A Shapiro*
JONATHAN A SHAPIRO (SBN 257199)
*JShapiro@goodwinlaw.com*
ROBERT M. TIEFENBRUN (SBN 310975)
*RTiefenbrun@goodwinlaw.com*
NICOLE J. KIM (SBN 324698)
*NicoleKim@goodwinlaw.com*
**GOODWIN PROCTER LLP**

*Attorneys for Defendant Cheng Lu*