LATHAM & WATKINS LLP
  Colleen C. Smith (Bar No. 231216)
  *colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
858.720.8900 / 858.509.3691 (Fax)

  Andrew Clubok (Pro Hac Vice)
  *andrew.clubok@lw.com*
555 Eleventh Street, NW
Washington, D.C. 20004
202.637.2200 / 202.637.2201 (Fax)

*Attorneys for Defendants Morgan Stanley &*
*Co. LLC, Citigroup Global Markets Inc., J.P.*
*Morgan Securities LLC, BofA Securities,*
*Inc., Credit Suisse Securities (USA) LLC, TD*
*Cowen, Nomura Securities International,*
*Inc., RBC Capital Markets, LLC, Needham &*
*Company, LLC, Oppenheimer & Co, Inc.,*
*Piper Sandler & Co., Robert W. Baird & Co.*
*Incorporated, and Valuable Capital Limited*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC.; CHENG LU; PATRICK DILLON; XIAODI HOU; MO CHEN; JAMES MULLEN; MORGAN STANLEY & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; J.P. MORGAN SECURITIES LLC; BOFA SECURITIES, INC.; CREDIT SUISSE SECURITIES (USA) LLC; TD COWEN; NOMURA SECURITIES INTERNATIONAL, INC.; RBC CAPITAL MARKETS, LLC; NEEDHAM & COMPANY, LLC; OPPENHEIMER & CO. INC.; PIPER SANDLER & CO.; ROBERT W. BAIRD & CO. INCORPORATED; and VALUABLE CAPITAL LIMITED<br><br>Defendants. | CASE NO. 3:22-cv-01300-BEN-MSB<br><br>**UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**Special Briefing Schedule Ordered**<br><br>Judge: Hon. Roger T. Benitez<br><br>Hearing Date:  March 18, 2024<br>Time:  10:30 am<br><br>Complaint Filed:  August 31, 2022 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

UNDERWRITER DEFS.' REPLY ISO MOT. TO
DISMISS CLASS ACTION COMPL.
Case No. 3:22-cv-01300-BEN-MSB

# TABLE OF CONTENTS

I.      THE NARROW ALLEGATIONS CITED TO SUPPORT THE SECURITIES ACT CLAIMS FAIL TO PLEAD FALSITY .........................2

II.     EVEN CONSIDERING ALLEGATIONS NOT INCORPORATED, THE SECURITIES ACT CLAIMS DO NOT SATISFY RULE 9(B) ...................................................................3

        A.      Application of Rule 9(b) Is Proper .........................................3

        B.      Statements Allegedly Omitting Related-Party Transactions ..................................................................4

        C.      Statements Related to Vehicle Safety .....................................6

III.    THE SECTION 12 CLAIM FAILS ON ADDITIONAL GROUNDS ...........................................................................8

        A.      Plaintiffs Lack Standing to Pursue Their Section 12 Claim ...........................................................................8

        B.      Plaintiffs Do Not Satisfy the Statutory-Seller Requirement ..................................................................9

IV.     CONCLUSION ...........................................................................10

# TABLE OF AUTHORITIES

## CASES

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012) ........................................................................8

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012) ......................................................................5

*DiDio v. Jones*,
2014 WL 12586732 (C.D. Cal. July 3, 2014) ..............................................................2

*El Paso Firemen & Policemen's Pension Fund v. Innovage Holding Corp.*,
2024 WL 199061 (D. Col. Jan. 18, 2024) ..................................................................4

*Elkay Int'l Ltd. v. Color Image Apparel, Inc.*,
2015 WL 13917734 (C.D. Cal. Feb. 4, 2015) ............................................................2

*Feyko v. Yuhe Int'l, Inc.*,
2013 WL 816409 (C.D. Cal. Mar. 5, 2013) ...............................................................4

*Howard v. Arconic Inc.*,
395 F. Supp. 3d 516 (W.D. Pa. 2019) .....................................................................7, 8

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .......................................................................................6

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..................................................................3, 9

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .......................................................................8

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2011) .............................................................................10

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) .........................................................9

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
2012 WL 1322884 (C.D. Cal. Apr. 16, 2012) ...........................................................9

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................2

*In re DDi Corp. Sec. Litig.*,
    2005 WL 3090882 (C.D. Cal. July 21, 2005) ........................................................10

*In re Facebook, Inc. Sec. Litig.*,
    87 F.4th 934 (9th Cir. 2023) ....................................................................................6

*In re Immune Response Secs. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) ......................................................................8

*In re LendingClub Sec. Litig.*,
    254 F. Supp. 3d 1107 (N.D. Cal. 2017) ....................................................................5

*In re Nat'l Golf Props., Inc.*,
    2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) ......................................................10

*In re Progenity, Inc. Sec. Litig.*,
    2023 WL 4498502 (S.D. Cal. July 12, 2023) ...........................................................7

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ....................................................................................3

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ....................................................................................3

*In re Stratosphere Corp. Sec. Litig.*,
    1 F. Supp. 2d 1096 (D. Nev. 1998) ..........................................................................4

*In re Talis Biomedical Corp. Sec. Litig.*,
    2022 WL 17551984 (N.D. Cal. Dec. 9, 2022) .........................................................3

*In re Wash. Mutual Inc. Sec. Derivative & ERISA Litig.*,
    259 F.R.D. 490 (W.D. Wash. 2009) ........................................................................10

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) ......................................................................9

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ............................................................9

*Mallen v. Alphatec Holdings, Inc.*,
    861 F. Supp. 2d 1111 (S.D. Cal. 2012) ....................................................................4

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

UNDERWRITER DEFS.' REPLY ISO MOT. TO
DISMISS CLASS ACTION COMPL.
Case No. 3:22-cv-01300-BEN-MSB

*Nykredit Portefolje Admin. A/S v. Propetro Holding Corp.*,
   2021 WL 9037758 (W.D. Tex. Sept. 13, 2021) ......................................................5

*Ong v. Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018) ....................................................................8

*Primo v. Pac. Biosciences of California Inc.*,
   940 F. Supp. 3d 1105 (N.D. Cal. 2013) ................................................................10

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ................................................................................6

*State Treasurer of Michigan v. Countrywide Fin. Corp.*,
   2011 WL 13220150 (C.D. Cal. Aug. 22, 2011) ....................................................10

*Vignola v. FAT Brands, Inc.*,
   2019 WL 6888051 (C.D. Cal. Dec. 17, 2019) ...................................................9, 10

**OTHER AUTHORITIES**

Rule 8 ...........................................................................................................................2, 3

Rule 9(b) ...............................................................................................................1, 2, 3, 4

**STATUTES**

17 C.F.R. § 229.404(a) ...................................................................................................6

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

iv

UNDERWRITER DEFS.' REPLY ISO MOT. TO
DISMISS CLASS ACTION COMPL.
Case No. 3:22-cv-01300-BEN-MSB

In an effort to avoid the pleading requirements of Rule 9(b), Plaintiffs purposefully incorporate very few allegations into their Securities Act claims, while reserving the rest for the Exchange Act claims.  As the Underwriter Defendants explained in their Motion, Dkt. 135-1 ("Mot."), these few allegations incorporated into the Securities Act claims do not contain supporting facts that would allow the claims to stand alone.  Rather than rebut this defect, the Opposition confirms it, as Plaintiffs' Securities Act arguments rely almost exclusively on allegations *outside* of those that are incorporated.  Dkt. 149 ("Opp.") at 16-27.  Plaintiffs cannot have it both ways—disclaiming allegations to avoid Rule 9(b) while leveraging the entirety of the Complaint to try to avoid dismissal.  Plaintiffs' Securities Act claims lack *any* factual foundation and must be dismissed.

Even considering the entire Complaint, the Opposition confirms that Plaintiffs' claims rest on improper inferences based on speculation and timing.

On Section 11, Plaintiffs contend that because Hydron was created weeks before the TuSimple IPO, Hydron must have engaged in material, undisclosed related-party transactions with TuSimple before its IPO.  But no facts support this tinfoil-hat theory.  Nor do statements from an employee who left TuSimple well *before* its IPO or a trucking accident that occurred a year *after* the IPO show that statements regarding TuSimple's safety systems were false when made.

On Section 12, Plaintiffs misleadingly claim that Plaintiff Poirier (alone) has standing simply because she purchased shares on the day of the IPO.  But black letter law and the cases Plaintiffs cite confirm that a plaintiff must purchase shares *in the offering itself* to have Section 12 standing.  And here, Plaintiffs' own allegations show that Poirier did not purchase in the offering itself, as she did not purchase at the offering price.  Plaintiffs also fail to allege facts showing that TuSimple made direct sales or took steps that would make it a "statutory seller."

Courts routinely dismiss claims on these grounds and should do so here.

## I. THE NARROW ALLEGATIONS CITED TO SUPPORT THE SECURITIES ACT CLAIMS FAIL TO PLEAD FALSITY

If the Court considers only the paragraphs actually incorporated into Plaintiffs' Securities Act claims, those claims fail under Rule 8 because the alleged theories of falsity are not supported by *any* factual allegations. *See* Compl. ¶¶ 314, 341 (noting incorporated paragraphs).

Plaintiffs argue that the "Complaint 'does the work of 'stripping' the allegations that sound in fraud'" from the Securities Act allegations, so Rule 9(b) should not apply. Opp. at 12-13 (quoting *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1162 (C.D. Cal. 2008)). And they expressly claim to incorporate only a "specific subset of non-fraud allegations into the[] Securities Act claims." *Id.* at 15. Taking Plaintiffs at their word that they intended to incorporate only those specific paragraphs, the Court must reject the falsity arguments in Plaintiffs' Opposition, which are premised on the very allegations that were supposedly "stripp[ed]" from the Securities Act claims. *Compare* Opp. at 16-25 (citing, *e.g.*, Compl. ¶¶ 11, 27, 91, 95, 99, 116, 145, 225-61) *with* Compl. ¶¶ 314, 341 (not incorporating by reference any of those listed paragraphs). Indeed, allegations "not incorporated by reference" into Plaintiffs' Securities Act claims are "not properly considered as to th[ose] claim[s]." *Elkay Int'l Ltd. v. Color Image Apparel, Inc.*, 2015 WL 13917734, at *13 n.47 (C.D. Cal. Feb. 4, 2015); *see DiDio v. Jones*, 2014 WL 12586732, at *4 (C.D. Cal. July 3, 2014) (dismissing claim where supporting allegations were not incorporated by reference as to that claim).

Looking only to those paragraphs *actually* incorporated into Plaintiffs' Securities Act claims, Compl. ¶¶ 314, 341, both falsity theories fail outright because the incorporated paragraphs alone contain essentially *no* factual content.[1]

---

[1] The incorporated paragraphs include: six summary paragraphs (Compl. ¶¶ 1, 4-8); background information about the parties (*id.* ¶¶ 40-47, 49-51, 53, 55-56, 58-

Rule 8 does not allow such barebones pleading. *See, e.g.*, *In re Talis Biomedical Corp. Sec. Litig.*, 2022 WL 17551984, at *12 (N.D. Cal. Dec. 9, 2022) (dismissing Securities Act claims). The Court's inquiry should end there, and all of Plaintiffs' claims against the Underwriter Defendants should be dismissed for failure to plead falsity at even the most basic level.

## II.   EVEN CONSIDERING ALLEGATIONS NOT INCORPORATED, THE SECURITIES ACT CLAIMS DO NOT SATISFY RULE 9(B)

### A.   Application of Rule 9(b) Is Proper

If the Court considers all allegations in the Complaint in assessing Plaintiffs' Securities Act claims (and not merely those incorporated by reference into those claims), it should apply Rule 9(b) because the "gravamen of the complaint is plainly fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996). The additional allegations Plaintiffs' Opposition cites to rebut arguments for dismissal of their Securities Act claims—including numerous paragraphs regarding scienter— are based in fraud and highlight the overlap in alleged misrepresentations and theories for Plaintiffs' Securities Act and Exchange Act claims. *See, e.g.*, Compl. ¶¶ 225-61 (cited Opp. at 19-20). Thus, if the Court considers all of these shared allegations, it should apply Rule 9(b). *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) (applying Rule 9(b) to Section 11 claim where, although it did not incorporate "all of the allegations contained in the rest of the complaint," it "relies on the same alleged misrepresentations ... that are central to [the] section 10(b) fraud claim"); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067-68 (N.D. Cal. 2010) (applying Rule 9(b) for same).

Plaintiffs' attempt to differentiate its claims against the Underwriter Defendants—claiming they require Rule 8 treatment—is also unavailing. *See* Opp.

---

60, 68-85); alleged misrepresentations and a conclusory list of reasons they are misleading (*id.* ¶¶ 158-163); and class allegations (*id.* ¶¶ 305-310).

at 13-15.  In particular, Plaintiffs highlight *Mallen v. Alphatec Holdings, Inc.*, where the Court found that the allegations against underwriters were "sufficiently bifurcated" from the overall fraudulent scheme to avoid application of Rule 9(b). 861 F. Supp. 2d 1111, 1125 (S.D. Cal. 2012).  Not so here.  Plaintiffs plead *no* separate factual basis for their supposed "negligence claims" against Underwriter Defendants (*id.* at 13).  *See supra* Section I & n.1.  Plaintiffs "cannot avoid the more stringent requirements of Rule 9(b) by merely inserting boilerplate language into their complaint stating that [their Securities Act] claims are based in negligence, not fraud," when in fact there is no support for their supposed negligence-based allegations.  *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1104 (D. Nev. 1998); *see also Mallen*, 861 F. Supp. at 1124-25 & n.7 ("nominal" efforts to disclaim fraud by incorporating only non-fraud paragraphs into the claims insufficient to avoid application of Rule 9(b)).[2]  As the background facts in the Complaint sound in fraud, if the Court considers all such allegations in evaluating the Securities Act claims, Rule 9(b) is the appropriate lens.

**B.    Statements Allegedly Omitting Related-Party Transactions**

Even considering the allegations Plaintiffs cite in Opposition—but do not incorporate into their Securities Act claim, *see supra* Section I—their contentions that supposed related-party transactions between TuSimple and Hydron made two statements in TuSimple's Registration Statement misleading (Compl. ¶¶ 329-32) depend entirely on speculation and fail to specify *any* transaction (related-party or otherwise) that should have been disclosed.

---

[2] Of the two other cases Plaintiffs cite in support of their argument, one did not even analyze whether Rule 9(b) applied to underwriters, *Feyko v. Yuhe Int'l, Inc.*, 2013 WL 816409, at *7 n.4 (C.D. Cal. Mar. 5, 2013) (cited Opp. at 14), and the other lacked analysis of any background allegations involving fraud, *El Paso Firemen & Policemen's Pension Fund v. Innovage Holding Corp.*, 2024 WL 199061, at *4 (D. Colo. Jan. 18, 2024) (cited Opp. at 15).  Plaintiffs' attempts to distinguish the cases cited by Underwriter Defendants only underscore the importance of determining which background allegations are incorporated into a claim when assessing the support for the Securities Act claim and determining whether Rule 9(b) applies.  *See* Opp. at 14 n.6, 16 n.7.

*First*, as to the statement about TuSimple's intent to "adopt a written related party transaction policy," Plaintiffs do not contend with the fact that no such policy had yet been adopted (and thus could not have been violated).  *See* Mot. at 9. Instead, they assert that the statement was misleading because Defendants had a duty to disclose TuSimple's alleged relationship with Hydron prior to the IPO. Plaintiffs argue that because Hydron was created on March 29, 2021, "just two weeks before [TuSimple's April 2021] IPO" (Compl. ¶ 8), Defendants must have "immediately beg[u]n sharing trade secrets with Hydron."  Opp. at 17.  But the only supposed facts cited in Plaintiffs' Opposition are that Chao "backed both TuSimple and Hydron" and that related-party transactions between the companies occurred sometime "during 2021."  *Id.* (citing Compl. ¶¶ 11, 50, 116).  Neither demonstrates that any actual *transaction* occurred prior to the IPO that might have violated the as-yet-unadopted "related party transaction policy."  Compl. ¶ 331.

Plaintiffs' lone authority reinforces the insufficiency of their pleading here. *Brown v. China Integrated Energy, Inc*. involved a documented purchase of a company majority-owned by defendant CEO's son, which was not reported as a related-party transaction in later public filings.  875 F. Supp. 2d 1096, 1118-19 (C.D. Cal. 2012) (cited Opp. at 16).  Plaintiffs there cited an analyst report finding that the purchase price was too high and other evidence that the CEO's son had taken pains to obscure his involvement in the transaction.  *Id.*  Unlike *Brown*, here there is no allegation of any specific transaction that took place, much less one that occurred before the IPO or under any suspicious circumstances—as required to make Defendants' statements misleading by omission.  *See Nykredit Portefolje Admin. A/S v. Propetro Holding Corp*., 2021 WL 9037758, at *18 (W.D. Tex. Sept. 13, 2021) (dismissing related-party allegations where plaintiffs alleged no pre-IPO "facts underscoring falsity"); *cf. In re LendingClub Sec. Litig*., 254 F. Supp. 3d 1107, 1118 (N.D. Cal. 2017) (finding related-party transaction allegations were sufficient because the complaint alleged specific facts regarding money

changing hands between companies before the IPO). Even if TuSimple had a related-party transaction policy in place at the time of the IPO (it did not, Compl. ¶ 331), the mere allegation that Hydron had existed for a period of two weeks is not enough to show a transaction between the two companies in that window.

*Second*, Plaintiffs argue that TuSimple's intellectual property risk disclosure was misleading because the "risks [] had already materialized." Opp. at 18. This argument also fails because, as discussed above, Plaintiffs have not pled a single fact indicating that TuSimple was actually sharing its intellectual property with Hydron prior to the IPO. Plaintiffs liken this case to Ninth Circuit decisions wherein the plaintiffs "pleaded with particularity" that employees internally raised the alarm about privacy and data security risks *prior to* the challenged statement at issue. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949 (9th Cir. 2023) (describing facts in that case and in *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687 (9th Cir. 2021)). No such allegations (particularized or not) exist here; Plaintiffs offer mere conjecture that sometime during a two-week window, information *may* have been passed between the two companies. This is plainly insufficient. Mot. at 8-9.

Plaintiffs' remaining arguments regarding purportedly suspicious circumstances in 2022 (Compl. ¶¶ 91 n.7, 225-261) and post-hoc 2023 "espionage" claims (*id.* ¶¶ 27, 145, 251) involve events that occurred *after* the IPO and do not indicate any risk had materialized before it. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009).[3]

### C.   Statements Related to Vehicle Safety

Plaintiffs' vehicle safety theory of falsity likewise fails on timing grounds. There are no allegations anywhere in the Complaint (even looking outside of those incorporated into the Securities Act claims) that support Plaintiffs' wild

---

[3] Plaintiffs also argue that Item 404 was violated. Opp. at 18-19 (citing Compl. ¶¶ 116, 156). But the Item 404 allegations are *not* incorporated into Plaintiffs' Securities Act claims. And in any event, there is no allegation of any pre-IPO "transaction," as required to trigger that Item. *See* 17 C.F.R. § 229.404(a).

speculation about safety issues *at the time of TuSimple's IPO*. Plaintiffs make only one attempt to respond to that timing argument (Mot. at 9-10)—claiming that it does not matter that the "April [2022] Crash did not occur simultaneous with the IPO" because it was "not the first indication *internally* that TuSimple's trucks were dangerous." Opp. at 22. As evidence of the "internal" indications, Plaintiffs cite the complaints of a single employee who was fired more than a year *before* the IPO, and the "April Crash" that occurred more than a year *after* the IPO. *Id.* at 21-22. Neither of these is sufficient. *See In re Progenity, Inc. Sec. Litig.*, 2023 WL 4498502, at *7 (S.D. Cal. July 12, 2023) (plaintiffs must offer more than "speculation" about state of affairs "at the time of the IPO").

Plaintiffs' claim additionally fails because the statements they challenge were inactionable corporate optimism and puffery. Each challenged statement summarizes benefits of TuSimple's autonomous vehicle offerings, among them "reliable and safe freight capacity." Compl. ¶ 333; *see id.* ¶¶ 334-35 (similar). Plaintiffs argue these are not puffery because they include "objectively verifiable" safety language made false by the employee testimony and April Crash. Opp. at 24-25. But "general statements about [a company's] values, workplace safety, and ethics—which read like mission statements rather than guarantees" are not rendered misleading by one specific instance of a safety issue like the April 2022 crash. *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 547 (W.D. Pa. 2019). And the employee's claim that TuSimple "was not as concerned about the safety of their vehicles as [he was]" (Compl. ¶ 130), even if true, does not make TuSimple's reference to "reliable and safe freight capacity" misleading either. Nor would a reasonable investor understand TuSimple's description of its aim to provide "safe and seamless end-to-end autonomous freight capacity" as a guarantee that its vehicles "would meet *all* the safety requirements within . . . the trucking industry," Opp. at 24 (emphasis added), or an implication that there could never be an accident, *see id.* at 21-22, 24-25 (citing April 2022 accident). As TuSimple's

statements were "not a guarantee that no safety issues would ever occur" and instead "presented a declaration of goals and aspirations," they are inactionable puffery. *Howard*, 395 F. Supp. 3d at 549; *see also Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (statements about Chipotle being "committed to serving safe, high quality food" were puffery).[4]

## III.   THE SECTION 12 CLAIM FAILS ON ADDITIONAL GROUNDS

### A.   Plaintiffs Lack Standing to Pursue Their Section 12 Claim

Plaintiffs' cursory response on standing only highlights the deficiencies of their Complaint. Plaintiffs ask the Court to infer that they have standing to pursue their Section 12 claim, based solely on the fact that Plaintiff Poirier purchased shares on the day of the IPO. Opp. at 26. However, that inference is belied by Plaintiffs' own allegations and certifications, as the IPO purchase price they allege makes clear that neither Poirier nor any other Plaintiff purchased securities in the IPO itself. *See* Mot. at 12-13.

To establish Section 12(a)(2) standing, Plaintiffs cannot simply allege that they "purchased and/or otherwise acquired shares traceable to the Company's Registration Statement." Compl. ¶¶ 44-46; *see* Mot. at 12 (collecting cases). As even Plaintiffs' cited cases acknowledge, a plaintiff lacks statutory standing unless she can demonstrate that she *actually* purchased shares in the IPO—which cannot be true if the plaintiff purchased on a different day or at a different price than the IPO. *See In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 976-77 (N.D. Cal. 2010) (plaintiff who purchased on day of IPO at price other than offering price did not have standing); *In re Immune Response Secs. Litig.*, 375 F. Supp. 2d 983, 1039 (S.D. Cal. 2005) (cited Opp. at 25-26) (only "those Plaintiffs who actually did purchase stock through the [IPO] have standing to pursue"

---

[4] The *Howard* opinion contrasts statements like those at issue here from those involving "extensive training and safety programs" in *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223 (S.D.N.Y. 2012) (cited Opp. at 24). *See Howard*, 395 F. Supp. 3d at 549.

Section 12 claims). Plaintiffs attempt to limit *Century Aluminum* to Section 11 claims (Opp. at 26 n.13), but these standing requirements are equally applicable to Section 12(a)(2) claims. *See In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *11 (C.D. Cal. May 5, 2011). Plaintiffs' allegations here do not meet that standard. Mot. at 12-13.

Though Plaintiffs know that *none* of the Plaintiffs purchased shares in the IPO, as their allegations and certifications demonstrate, they insist that Poirier has standing because she purchased shares on the IPO date. Opp. at 25-26; Compl. ¶ 343. But this disingenuous argument gets them nowhere: Poirier admittedly *did not purchase any shares* at the $40 offering price—and thus necessarily did not purchase her shares in the offering itself. Compl., Ex. B. Poirier cannot show that she "purchased a security directly from the issuer as part of the initial offering," and thus lacks standing to assert claims under Section 12. *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 966 (N.D. Cal. 2010).

### B. Plaintiffs Do Not Satisfy the Statutory-Seller Requirement

Plaintiffs' general allegations that Underwriter Defendants solicited the purchase of TuSimple stock are insufficient to satisfy the statutory-seller requirement under Section 12(a)(2). Plaintiffs have not alleged any "relationship between the plaintiff and defendant[s]" through either (i) direct sale or (ii) active solicitation of the shares Plaintiffs actually purchased. *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 1322884, at *5 (C.D. Cal. Apr. 16, 2012). This provides an independent basis to dismiss Plaintiffs' Section 12 claim.[5]

Plaintiffs' argument that "the Complaint clearly alleges that defendants sold" securities via the registration statement does not satisfy the direct sale prong of the

---

[5] Contrary to Plaintiffs' contention (Opp. at 26), courts regularly evaluate whether statutory-seller "allegations are sufficient" on a motion to dismiss. *Vignola v. FAT Brands, Inc.*, 2019 WL 6888051, at *5 (C.D. Cal. Dec. 17, 2019) (granting motion to dismiss when complaint "fails to adequately plead [defendants] status as 'seller' for purposes of § 12(a)(2)"); *Bare Escentuals*, 745 F. Supp. 2d at 1073 (similar).

Section 12 standing test. Opp. at 26. The allegations Plaintiffs cite (Compl. ¶¶ 4, 69-85, 341-50) do not show that Plaintiffs purchased their shares from any of the Underwriter Defendants, let alone "which trades and which Defendants" underlie the Section 12(a)(2) claim. *State Treasurer of Michigan v. Countrywide Fin. Corp.*, 2011 WL 13220150, at *6 (C.D. Cal. Aug. 22, 2011). Plaintiffs cannot assert claims against *thirteen* Underwriter Defendants without alleging facts showing that they purchased directly from any Underwriter, much less which one.[6]

Plaintiffs' solicitation argument suffers from similar flaws. Plaintiffs make no specific allegations that any Underwriter Defendant affirmatively solicited their purchases, nor do any of the cases Plaintiffs cite in Opposition (Opp. at 26) explain why the allegations at issue here would be sufficient. *See Primo v. Pac. Biosciences of California Inc.*, 940 F. Supp. 3d 1105, 1125 (N.D. Cal. 2013) (no discussion about sufficiency of particular allegations against underwriters); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549 (N.D. Cal. 2011) (similar); *In re Nat'l Golf Props., Inc.*, 2003 WL 23018761, at *3 (C.D. Cal. Mar. 19, 2003) (no underwriters involved in suit). Plaintiffs have not plausibly alleged that Underwriter Defendants' actions went beyond "mere participation" to active solicitation. *Vignola*, 2019 WL 6888051, at *5 ("preparatory involvement" in offering materials not sufficient to plead defendant is statutory seller). Plaintiffs have not stated a Section 12 claim.

## IV. CONCLUSION

For the foregoing reasons, the Underwriter Defendants respectfully request that the Court dismiss Plaintiffs' Securities Act claims.

---

[6] Plaintiffs' citation to *In re Wash. Mutual Inc. Sec. Derivative & ERISA Litig.*, 259 F.R.D. 490, 508 (W.D. Wash. 2009) (cited Opp. at 27) is misleading. That case relied on *In re DDi Corp. Sec. Litig.*, 2005 WL 3090882 (C.D. Cal. July 21, 2005), for the conclusion that plaintiffs do not need to identify "*which* underwriter sold securities to each plaintiff," but still must allege that each plaintiff "purchased the common stock directly from an underwriter defendant." *Id.* at *20 (emphasis added). While that is a lower bar than the one set by later opinions from this Court (*e.g.*, *Countrywide*, 2011 WL 13220150, at *6), Plaintiffs still have not met it here.

Dated: February 26, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Colleen C. Smith*
Colleen C. Smith (Bar No. 231216)
*colleen.smith@lw.com*
12670 High Bluff Drive
San Diego, California 92130
858.720.8900 / 858.509.3691 (Fax)

Andrew Clubok (PHV)
*andrew.clubok@lw.com*
555 Eleventh Street, NW
Washington, D.C. 20004
202.637.2200 / 202.637.2201 (Fax)

*Attorneys for Defendants Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., J.P. Morgan Securities LLC, BofA Securities, Inc., Credit Suisse Securities (USA) LLC, TD Cowen, Nomura Securities International, Inc., RBC Capital Markets, LLC, Needham & Company, LLC, Oppenheimer & Co, Inc., Piper Sandler & Co., Robert W. Baird & Co. Incorporated, and Valuable Capital Limited*