HOGAN LOVELLS US LLP
Jordan D. Teti (CA SBN: 284714)
Stephanie Sandoval (CA SBN: 347345)
1999 Ave. of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
jordan.teti@hoganlovells.com
stephanie.sandoval@hoganlovells.com

Jon M. Talotta (*pro hac vice*)
Samuel Yergin (*pro hac vice forthcoming*)
8350 Broad Street, 17th Floor
Tysons, VA 22102
Telephone:   (703) 610-6100
Facsimile:    (703) 610-6200
jon.talotta@hoganlovells.com
samuel.yergin@hoganlovells.com

Shannon Zhang (*pro hac vice forthcoming*)
390 Madison Avenue
New York, NY 10017
Telephone:   (212) 918-3000
Facsimile:    (213) 918-3100
shannon.zhang@hoganlovells.com

Attorneys for Defendant
Mo Chen

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC., et al. | Case No.: 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB)<br><br>**REPLY IN SUPPORT OF DEFENDANT MO CHEN'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Hon. Roger T. Benitez<br><br>Date:  March 18, 2024<br><br>Time:  10:30 a.m. |

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

MO CHEN'S REPLY IN SUPPORT OF MOT.
TO DISMISS

CASE NO.
3:22-CV-01300-BEN-MSB

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 1

A.  The Opposition Fails to Address Chen's Lack of Stock Sales, Which Undermines a Strong Inference of Scienter ................................... 1

B.  The Opposition Mischaracterizes the Legal Standard for Control Person Liability as Plaintiffs Fail to Plead Control Person Liability as to Chen ................................................................................. 3

C.  The Opposition Improperly Includes New Allegations, But Still Fails to Save Securities Act Claim ............................................. 5

III. CONCLUSION ................................................................................................. 6

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arthur Children's Tr. v. Keim,*
994 F.2d 1390 (9th Cir. 1993) ........................................................................... 4

*In re Downey Secs. Litig.,*
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .................................................... 2

*Hogg-Johnson v. Merz N. Am.,*
2020 WL 6826420 (S.D. Cal. Nov. 19, 2020) ................................................. 3, 5

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000) ........................................................................... 4

*In re Montage Tech. Grp. Ltd. Secs. Litig.,*
78 F. Supp. 3d 1215 (N.D. Cal. 2015) ............................................................... 4

*In re Peregrine Sys., Inc. Sec. Litig.,*
2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ................................................. 4, 5

*Prodanova v. H.C. Wainwright & Co., LLC,*
993 F.3d 1097 (9th Cir. 2021) ........................................................................... 3

*In re Rigel Pharms., Inc. Sec. Litig.,*
697 F.3d 869 (9th Cir. 2012) ............................................................................. 2

*S.E.C. v. Todd,*
642 F.3d 1207 (9th Cir. 2011) ........................................................................... 4

*In re Surebeam Corp. Sec. Litig.,*
2005 WL 5036360 (S.D. Cal. Jan. 3, 2005) ...................................................... 2

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
258 F. Supp. 3d 1037 (N.D. Cal. 2017) ............................................................. 4

*In re Worlds of Wonder Sec. Litig.,*
35 F.3d 1407 (9th Cir. 1994) ............................................................................. 2

*Xiaojiao Lu v. Align Tech., Inc.,*
417 F. Supp. 3d 1266 (N.D. Cal. 2019) ............................................................. 6

## I.      INTRODUCTION

Defendant Mo Chen ("Chen") submits this Reply brief in support of his Motion to Dismiss ("Chen MTD") to focus on three issues raised by the Opposition ("Opp.") that are specific to Chen.[1]

First, the Opposition fails to address the fact that Chen is not alleged to have sold any TuSimple stock.  Chen's ongoing losses from his ownership of TuSimple stock defeats any strong inference of Chen's scienter here.

Second, the Opposition mischaracterizes the legal standard for alleging control person liability.  Plaintiffs fail to allege that Chen had an active involvement in day-to-day affairs of the company or any specific control over financial statements that he did not sign.  This is fatal to Plaintiffs' control person theory as it relates to Chen.

Third, the Opposition improperly attempts to amend the Consolidated Amended Complaint ("CAC") by suggesting that TuSimple should have disclosed the incorporation of Hydron (f/k/a Turing Auto, Inc.) two weeks before TuSimple's IPO.  There was no such obligation, thus Plaintiffs fail to allege that the Registration Statement was materially false or misleading when made.

## II.     ARGUMENT

### A.      The Opposition Fails to Address Chen's Lack of Stock Sales, Which Undermines a Strong Inference of Scienter

Unlike the typical securities fraud defendant, Chen is not alleged to have sold any TuSimple shares during the purported fraud.  (*See* Chen MTD 7-8.)  In fact, he has been one of TuSimple's largest stockholders despite experiencing significant declines in his equity's unrealized value.

---

[1] In addition to this Reply, Chen joins in TuSimple's Reply in support of its Motion to Dismiss ("TuSimple Reply"), filed with the Court on February 26, 2024.  Chen also joins in Cheng Lu's Reply in support of his Motion to Dismiss (the "Lu Reply"), also filed on February 26, 2024, regarding (i) deficiencies in Plaintiffs' Section 12 claims (Lu Reply, Section I) and (ii) Plaintiffs' failures to allege actionable statements (*id.*, Section III).

The Opposition attempts to brush this aside by pointing to *other* Defendants' stock sales and by citing to the obvious point that a lack of stock sales is "not dispositive" of scienter.  (Opp. 50.)  This should be rejected for several reasons.

First, while not dispositive, courts in the Ninth Circuit (and common sense) hold that the absence of stock sales by corporate insiders is "inconsistent" with fraud and instead "supports the opposite inference."  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884–85 (9th Cir. 2012); *see also In re Downey Secs. Litig.*, 2009 WL 2767670, at *8 (C.D. Cal. Aug. 21, 2009) ("[A] strong inference of scienter *is negated* when there is an absence of stock sales . . . .") (emphasis added); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994) (if defendants knew a company's stock price was overvalued, they "probably would have bailed out" rather than incur the same alleged "losses as . . . Plaintiffs") (citation omitted).

Second, without any stock sales to flag,[2] Plaintiffs wrongly suggest that the "transfer of TuSimple's intellectual property to Hydron" is a sound basis for Chen's fraud motive.  (Opp. 51.)  This is illogical and far too speculative to support the strong inference of scienter required by the PSLRA.

This fraud motive theory is illogical because, if any TuSimple transfer of IP to Hydron harmed[3] TuSimple (as Plaintiffs claim), Chen would have every incentive to maximize his personal benefit by selling TuSimple shares.  It is

---

[2] Scienter must be alleged with respect to each of the individual defendants here, so other Defendants' stock sales should not be imputed to Chen.  (*See* Chen MTD at 7, n. 8.)  *See also In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *21 (S.D. Cal. Jan. 3, 2005) ("The fact that 'equally knowledgeable insiders' act inconsistently is evidence negating the inference of scienter.").

[3] The Company dispelled the notion that there was any substantial value associated with the information shared with Hydron temporarily without an NDA by stating that it was "*not* related to intangible assets or patents reflected on the Company's balance sheet."  (*See* TuSimple Reply 4-7; Chen MTD 5.)  Also, the only value attributed to the purported related-party activity with Hydron was the work hours valued at "less than $300,000."  (Opp. 30.)  Chen holding his TuSimple stock long after the purported sharing of information with Hydron supports an inference that any "transfer" away from TuSimple was immaterial.

inconsistent with such a motive for Chen to have held onto all of his TuSimple stock for years.  (Chen MTD 7-8.)

This fraud motive theory also is too speculative because Plaintiffs offer none of their own factual allegations regarding precisely what IP was transferred to Hydron or that IP's value.  Similarly, they do not allege that Hydron has achieved any success at all as a company, let alone success that has stemmed from information or IP purportedly transferred from TuSimple.[4]  Thus, Plaintiffs fail to specify what, if any, benefit Chen received as to his Hydron interests while losing vast sums of stock value as to his TuSimple interests.

As a result, Plaintiffs have not pleaded a strong inference of scienter as to Chen.  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1108 (9th Cir. 2021) ("[T]he lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter.").

### B. The Opposition Mischaracterizes the Legal Standard for Control Person Liability as Plaintiffs Fail to Plead Control Person Liability as to Chen

The Opposition's attempt to support Plaintiffs' theory of control person liability against Chen relies on a mischaracterization of the legal standard for alleging control person liability.  (*See* Opp. 54-55.)  The Opposition argues that "general allegations concerning an individual's title and responsibilities" are enough to establish control person liability.  (Opp. 54.)  This incomplete assertion glosses over **the kind of responsibilities** that must be alleged for control person liability in the Ninth Circuit.

---

[4] Going beyond the CAC, the Opposition states that Hydron became "autonomous ready" by November 2022.  (Opp. 4, 17.)  Even if considered, *see Hogg-Johnson v. Merz N. Am.*, 2020 WL 6826420, at *3 (S.D. Cal. Nov. 19, 2020), Plaintiffs proffer no definition for what it means to be "autonomous ready," any facts regarding the IP that supported Hydron's purported "readiness," or how that "readiness" is connected to TuSimple (if at all).  That ill-defined, passing reference cannot support a strong inference of scienter here.

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

Indeed, it remains true that Plaintiffs "must show that Defendants were ***active in the day-to-day affairs*** of [the company] or that they exercised . . . specific control over the preparation and release of the financial statements." *In re Peregrine Sys., Inc. Sec. Litig.,* 2005 WL 8158825, at *74 (S.D. Cal. Mar. 30, 2005) (Benitez, J.) (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067, n.13 (9th Cir. 2000)) (emphasis added); *see also S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011) ("[I]ndicia of 'control' include whether the person managed the company on a day-to-day basis and was involved in the formulation of financial statements, which is sufficient to presume control over the transactions giving rise to the alleged securities violation.") (citation omitted); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 258 F. Supp. 3d 1037, 1048 (N.D. Cal. 2017) (dismissing 20(a) claims against chairman of management board on conclusory allegations that he exercised power over corporate defendants).  In other words, a person's "title" alone is not enough—Plaintiffs must allege the kind of responsibilities that satisfy the control person standard set forth in *Howard* and *Todd*.

Here, Plaintiffs have failed to allege that Chen was active in the "day-to-day" affairs of TuSimple while serving as a director.  (*See* Chen MTD 2-3.)  Plaintiffs likewise have not alleged that Chen exercised "specific control" over any of the purportedly actionable financial statements that he did not sign.  (*See* TuSimple MTD, Ex. A, Dkt 138-5.)[5]

---

[5] Unlike the defendants in *In re Montage Tech. Grp. Ltd. Secs. Litig.*, 78 F. Supp. 3d 1215, 1228 (N.D. Cal. 2015), a case cited by Plaintiffs' Opposition (Opp. 54), Chen is not alleged to have been an officer during the Class Period and there should not be a presumption that he was involved in the day-to-day affairs of the company by virtue of his director title alone.  *See, e.g., Arthur Children's Tr. v. Keim*, 994 F.2d 1390, 1396-97 (9th Cir. 1993) ("A director is not automatically liable as a controlling person. . . .  [A] director who was uninvolved in the company's day-to-day cattle business and was without experience in the business and had nothing to do with the prospectuses issued to the doctor investors was not a controlling person . . . .") (citing *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984)).

A parenthetical in the Opposition attempts to distinguish this case by noting that "removing the entire audit committee" was evidence of "control." (Opp. 54, n. 29.) While stock ownership can be a factor in assessing "control," it is not, "by itself, sufficient." *Peregrine*, 2005 WL 8158825, at *74 (Benitez, J.) (citing *Howard*, 228 F.3d at 1067 n. 13). The audit committee-related allegations speak to Chen ***and*** Hou's combined stock ownership and combined stockholder power to remove directors after the Class Period—not active management of the "day-to-day" affairs of TuSimple during the Class Period. Plaintiffs do not allege Chen's control over the financial statements at-issue here (that Chen did not sign) or Chen's active participation in the daily affairs of the company.

### C. The Opposition Improperly Includes New Allegations, But Still Fails to Save Securities Act Claim

Plaintiffs' Securities Act claim must fail because there are no ***facts*** alleged as to any interactions between TuSimple and Hydron in the two weeks immediately following Hydron's incorporation on March 29, 2021 and the April 16, 2021 date of the Prospectus. (*See* TuSimple MTD 18-19, Chen MTD 6, TuSimple Reply 2.) Thus, Plaintiffs do not allege that the Registration Statement was materially misleading when made.

To try to avoid this deficiency, Plaintiffs now – for the first time – suggest that the March 2021 incorporation of Hydron (fka Turing Auto, Inc.) (CAC 24, n.7) was "surreptitious[]" (Opp. 5) and should have been disclosed in the Registration Statement (Opp. 17). (*Cf.* CAC ¶¶ 163, 332.) This distorts the record, exaggerating that Chen "launched" Hydron before the IPO (Opp. 16, 17, 28, 40) when all that has been alleged is the legal formality of Turing Auto, Inc.'s incorporation as of that time. Indeed, Plaintiffs' CAC cites to a Hydron press release ***over a year later*** (June 2022) that announced the "launch" of Hydron ***at that time***. (CAC 24, n.7.)

It is procedurally improper to make new allegations in an Opposition brief

and this attempt should be rejected by this Court.[6]  In any event, Plaintiffs have failed to plead facts requiring TuSimple to have disclosed the incorporation of another company as of April 2021.  Without allegations as to any material related-party transactions between Hydron and TuSimple before the IPO, the Securities Act claim must fail.[7]  (*See* TuSimple Reply at 3-7.)

## III.  CONCLUSION

For the foregoing reasons, Defendant Mo Chen respectfully requests that the Court grant Chen's Motion to Dismiss the Complaint with prejudice.

Dated: February 26, 2024

HOGAN LOVELLS US LLP

By: */s/ Jordan D. Teti*
Jon Talotta (*pro hac vice*)
Jordan D. Teti
Attorneys for Defendant
Mo Chen

---

[6] This Court has previously recognized that Plaintiffs cannot amend their complaint during briefing. *See Hogg-Johnson v. Merz N. Am.*, 2020 WL 6826420, at *3 (S.D. Cal. Nov. 19, 2020).

[7] *See, e.g.*, *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1277 (N.D. Cal. 2019) (dismissing claim because plaintiffs fail to connect communications with specific factual allegations showing how the statements were false at the time made).