ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
LUCAS F. OLTS (234843)
HEATHER G. GEIGER (322937)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
lolts@rgrdlaw.com
hgeiger@rgrdlaw.com
sjohnson@rgrdlaw.com

KAHN SWICK & FOTI, LLP
RAMZI ABADOU (222567)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUSTIN DICKER; Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TUSIMPLE HOLDINGS, INC. et al., <br><br> Defendants. | No. 3:22-cv-01300-BEN-MSB <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS CHAO'S & ZHANG'S MOTION TO QUASH SERVICE AND MOTION TO DISMISS <br><br> Date:  April 1, 2024 <br> Time:  10:30 a.m. <br> Judge:  Hon. Roger T. Benitez <br> Courtroom: 5A |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 3

III.  ARGUMENT .......................................................................................................... 6

    A.  The Court Should Deny Defendants Chao's and Zhang's Motion to Quash Service of Process, or, in the Alternative, Authorize Alternate Service of Process on Defendants Chao and Zhang under Rule 4(f)(3) ..................................................................................................... 6

    B.  The Court Has Personal Jurisdiction over Defendants Chao and Zhang .................................................................................................... 10

        1.  Plaintiffs Pleaded Both Purposeful Direction and Purposeful Availment ................................................................................... 11

        2.  Plaintiffs' Claims Arise out of Defendants' Contacts with the United States ....................................................................... 19

        3.  Defendants Fail to Rebut the Presumption that Jurisdiction is Reasonable ....................................................................... 20

IV.  CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Addaday, Inc. v. Artist Int'l Co.*,
    2022 U.S. Dist. LEXIS 87773 (C.D. Cal. 2022) ...................................................... 15

*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ................................................................................. 20

*Belden Techs., Inc. v. LS Corp.*,
    626 F. Supp. 2d 448 (D. Del. 2009) ...................................................................... 17

*Brown v. China Integrated Energy, Inc.*,
    285 F.R.D. 560 (C.D. Cal. 2012) ............................................................................ 8

*Bueno v. Merck & Co., Inc.*,
    2023 U.S. Dist. LEXIS 186283 (S.D. Cal. 2023) .................................................. 11

*Calder v. Jones*,
    465 U.S. 783 (1984) ............................................................................................... 12

*Caruth v. Int'l Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995) ................................................................................... 21

*Chassin Holdings Corp. v. Formula VC Ltd.*,
    2016 U.S. Dist. LEXIS 52430 (N.D. Cal. 2016) ............................................ *passim*

*Core–Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ............................................................................ 21, 22

*Ensource Invs. L.L.C. v. Tatham*,
    2017 U.S. Dist. LEXIS 226040 (S.D. Cal. 2017) .................................................. 10

*Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*,
    480 F. Supp. 3d 977 (N.D. Cal. 2020) .................................................................... 9

*Friends of Yosemite Valley v. Kempthorne*,
    520 F.3d 1024 (9th Cir. 2008) ..................................................................... 7, 12, 22

*Go-Video, Inc. v. Akai Electric Co.*,
    885 F.2d 1406, 1414 (9th Cir. 1989) ..................................................................... 10

*Gonzalez v. US Human Rights Network*,
    512 F. Supp. 3d 944 (D. Ariz. 2021) ..................................................................... 16

*Howard v. Everex Sys.*,
228 F.3d 1057 (9th Cir. 2000) ............................................................................ *passim*

*In re Alphabet, Inc. Secs. Litig.*
1 F.4th 687 (9th Cir. 2021) .......................................................................... 2-3

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 346 (S.D.N.Y. 2005) ................................................... 15, 16

*In re AstraZeneca Sec. Litig.*,
559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................................................... 16, 17

*In re China Educ. All., Inc.*,
2011 U.S. Dist. LEXIS 94494 (C.D. Cal. 2011) ........................................... 7

*In re CINAR Corp. Sec. Litig.*,
186 F. Supp. 2d 279 (E.D.N.Y. 2002) ........................................................ 16

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
2012 U.S. Dist. LEXIS 60776 (C.D. Cal. 2012) ................................... 14, 15

*In re DaimlerChrysler AG Sec. Litig.*,
197 F. Supp. 2d 86 (D. Del. 2002) ............................................................. 15

*In re JPMorgan Chase Derivative Litig.*,
263 F. Supp. 3d 920 (E.D. Cal. 2017) ....................................................... 15

*In re LDK Solar Sec. Litig.*,
2008 U.S. Dist. LEXIS 80717 (N.D. Cal. 2008) ................................ *passim*

*In re LDK Solar Sec. Litig.*,
2008 U.S. Dist. LEXIS 90702 (N.D. Cal. 2008) ...................................... 8, 10

*In re Medeva Sec. Litig.*,
1994 U.S. Dist. LEXIS 11675 (C.D. Cal. 1994) ............................... 13, 19, 21

*In re Parmalat Sec. Litig.*,
376 F. Supp. 2d 449 (S.D.N.Y. 2005) ........................................................ 17

*In re Rhodia S.A. Sec. Litig.*,
531 F. Supp. 2d 527 (S.D.N.Y. 2007) ........................................................ 16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ........................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

2017 U.S. Dist. LEXIS 1109 (N.D. Cal. 2017) .............................................. *passim*

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
715 F.3d 716 (9th Cir. 2013) ....................................................................... 11

*Kairalla v. Advanced Med. Optics, Inc.*,
2008 U.S. Dist. LEXIS 76987 (C.D. Cal. 2008) ................................... 14, 19

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
2024 U.S. Dist. LEXIS 31074 (D. Ariz. 2024) ...................................... 1, 7

*Reintegrative Therapy Ass'n v. Kinitz*,
2021 U.S. Dist. LEXIS 213651 (S.D. Cal. 2021) ...................................... 9

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
2011 U.S. Dist. LEXIS 71269 (N.D. Cal. 2011) ....................................... 8

*Rio Props. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................ 7-8

*Rupert v. Bond*,
68 F. Supp. 3d 1142 (N.D. Cal. 2014) .................................................... 13

*San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
979 F.2d 1356 (9th Cir. 1992) ................................................................. 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)....................................................... 11, 13, 21

*SEC v. Chen*,
2020 U.S. Dist. LEXIS 72704 (N.D. Cal. 2020) ................................ 12, 18, 21, 23

*SEC v. Ficeto*,
2013 U.S. Dist. LEXIS 26223 (C.D. Cal. 2013) .............................. *passim*

*SEC v. Jammin Java Corp.*,
2016 U.S. Dist. LEXIS 205270 (C.D. Cal. 2016) ........................... *passim*

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ................................................................. 23

*Snellink v. Gulf Res., Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) ...................................................... 2

*United States SEC v. Gutierrez*,
2020 U.S. Dist. LEXIS 48512 (S.D. Cal. 2020) ....................................... 8

iv

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
  2017 U.S. Dist. LEXIS 83621 (C.D. Cal. 2017) ............................................. *passim*

*Victaulic Co. v. Allied Rubber & Gasket Co.*,
  2020 U.S. Dist. LEXIS 82150 (S.D. Cal. 2020) ............................................. 1, 8, 9

*Wilhoite v. Xiaodi Hou, et al.*,
  No. 3:23-cv-02333-BEN-MSB, Slip Op. at 7 (S.D. Cal. Jan. 23, 2024) ................. 8

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ..................................................................................... 18

*Yahoo! Inc. v. La. Ligue Contre Le Racisme*,
  433 F.3d 1199 (9th Cir. 2006) ....................................................................... 12, 13

**Rules**

FED. R. CIV. P. 4 ...................................................................................... *passim*

FED. R. CIV. P. 11 ............................................................................................ 4

**Other**

17 C.F.R. § 229.404 ........................................................................................ 2

15 U.S.C. § 78aa ........................................................................................... 10

15 U.S.C. § 78t-1 (§ 20A of the Exchange Act)........................................................ 20

## I.     INTRODUCTION

Following the Class Period, U.S. Senator Marco Rubio, a senior member of the Senate Foreign Relations Committee, publicly urged the United States Securities and Exchange Commission to "take action to protect American retirees and investors from deceptive Chinese firms."[1] ¶ 96. This is the only such direct federal class action seeking to protect American retirees and investors to recover their investment losses from a deceptive Chinese firm called TuSimple Holdings, Inc. ("TuSimple or the "Company").

In a transparent attempt to evade liability, Defendants Chao and Zhang (hereafter "Defendants") raise multiple frivolous arguments which, if accepted, would exempt them from service of process and this Court's jurisdiction, merely because they've absconded to the People's Republic of China ("PRC"). As this Court has previously noted, service of process *via* the PRC's Central Authority can take years, assuming it is possible at all. *See Victaulic Co. v. Allied Rubber & Gasket Co.*, 2020 U.S. Dist. LEXIS 82150, at *2-4 (S.D. Cal. 2020) (noting that, according to the Ministry of Justice in China, service of process "often takes more than two years to complete," and there is a "concern among the international law community that the Chinese Central Authority has 'stopped executing US requests altogether.'") (quotations omitted); *see also Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 U.S. Dist. LEXIS 31074, at *3-4 (D. Ariz. 2024) (collecting cases and authorizing service by email on defendants located in Singapore, notwithstanding its accession to the Hague Convention). Defendants' refusal to accept service *via* TuSimple's registered agent is inconsistent with their acceptance of service of the complaint on their behalf in a derivative litigation in Delaware (the "Derivative Action") *via* TuSimple's registered agent. *See In Re TuSimple Holdings, Inc. Stockholder Litig.*, No. 2022-1095-PAF,

---

[1]     All references to "¶" or "¶¶" are to Plaintiffs' Consolidated Class Action Complaint for Violations of Federal Securities Laws.

1

Summons and Aff. of Service (Del. Ch. Ct. Jan. 17, 2023).[2] Indeed, this inconsistency vitiates Defendants' argument that Plaintiffs' proof of service on them is "defective on its face" because Chao and Zhang are no longer directors of TuSimple as per the National Security Agreement ("NSA") between TuSimple and the Committee on Foreign Investment in the United States ("CFIUS"). *See* ECF No. 147-1 at 6.

Tellingly, Defendants nowhere address this inconsistency or explain why this Court should quash service *via* the exact same method they accepted in the Derivative Action. Defendants' alternative argument seeking dismissal for lack of personal jurisdiction is equally without merit. Defendants adopt the widely rejected argument that United States courts lack jurisdiction over foreign directors who sign SEC filings, including but not limited to registration statements. Indeed, "United States courts frequently have asserted personal jurisdiction over foreign individual defendants who sign or, as control persons, approve the filing or dissemination of, particular forms required by the SEC which they knew or should have known would be relied on by U.S. investors." *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 80717, at *17 (N.D. Cal. 2008) (cleaned up). Defendants do not dispute that they both signed various materially misleading Class Period SEC filings concerning Hydron which they knew would be relied upon by U.S. investors.[3] *See* Compl., ECF No. 103, ¶ 50 ("Chao signed TuSimple's: (i) Registration Statement on Form S-1, filed on March 23, 2021; (ii)

---

[2]    *See* Ex. J *filed at* ECF No. 148-13 in support of Plaintiffs' Motion to Request Alternate Service of Process for Defendants Chao and Zhang and to Partially Lift the PSLRA Discovery Stay (hereafter "Pls.' Mot."). Even accepting *arguendo* that service on Defendants *via* TuSimple's registered agent was defective (it is not), Plaintiffs have moved for alternate service of process on Defendants Chao and Zhang. ECF No. 148.

[3]    Defendants' failure to disclose their incorporation of Hydron (and their relationships to it) by the time Chao sold his shares in the IPO, without more, constitutes an omitted "related party transaction." ¶ 119; *see Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939-40 (C.D. Cal. 2012); 17 C.F.R. § 229.404(a)(2). And the omission was profoundly material. *In re Alphabet, Inc. Secs. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) ("[t]he market reaction, increased regulatory and governmental scrutiny, both in the United States and abroad, and media coverage alleged by the complaint to have occurred after disclosure all support the materiality of the misleading omission").

Amendment No. 1 to the Registration Statement on Form S-1/A, filed on April 7, 2021 (*via* power of attorney granted to Lu); and (iii) Annual Report on Form 10-K, filed on February 24, 2022."); ¶ 56 ("Zhang signed TuSimple's: (i) Registration Statement on Form S-1, filed on March 23, 2021; (ii) Amendment No. 1 to the Registration Statement on Form S-1/A, filed on April 7, 2021 (via power of attorney granted to Lu); and (iii) Annual Report on Form 10-K, filed on February 24, 2022.").

As explained in § III.B, *infra*, Defendants' signing of the above SEC filings is sufficient to bring Defendants under the jurisdiction of this Court. And as to Defendant Chao, his egregious unlawful insider trading further strengthens this Court's already ironclad basis for exercising jurisdiction over him. As the Ninth Circuit has squarely held, "the trading of stock on a United States exchange by an actor who knowingly has inside information is 'fair warning' to be subjected to United States jurisdiction." *Howard v. Everex Sys.*, 228 F.3d 1057, 1068 (9th Cir. 2000). This is precisely what Defendant Chao did when he sold over 6.75 million shares of TuSimple stock in connection with the Company's material misrepresentations concerning Hydron for proceeds of over $270 million that he and other named defendants (*i.e.*, Chen, Hou, Lu and Zhang) pilfered from American investors.[4] ¶ 28.

## II.    STATEMENT OF FACTS

As explained in prior briefing, Plaintiffs have gone to great lengths to serve Chao and Zhang with the Complaint before seeking this Court's intervention. *See* ECF No. 148, at 2-4. Defendants' motion to quash misrepresents the record, particularly in claiming that Defendants' counsel, Mr. Tu, offered to provide Chao's and Zhang's residential addresses during a December 8, 2023 telephone call with Plaintiffs' counsel. ECF No. 147, at 2 n.2. Defendants double down on this misrepresentation, further asserting that "Plaintiffs' counsel's response was to flatly refuse to make any attempt to

---

[4]    These defendants' relationships with and ties to Hydron, TuSimple and Sun Dream can be aptly characterized as incestuous. *See, e.g.*, ¶¶14, 55, 155 and 234.

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

effect service under the Hague Service Convention or to otherwise seek an order for alternative service." *Howard*, 228 F.3d at 1068. To the contrary, it is undisputed that Plaintiffs' counsel began requesting Chao's and Zhang's addresses from TuSimple's counsel on November 1, 2023, over a month before Mr. Tu avers that Plaintiffs' counsel refused to accept his offer to provide their addresses. *See* ECF No. 148-6, at 3. It strains credulity that Plaintiffs would, without reason, refuse an offer to provide addresses for defendants they had attempted to serve since October 2, 2023. *See* ECF No. 148-4, at 2.

More troublingly, however, Defendants Chao and Zhang have made several false or, at a minimum, highly misleading statements in their sworn declarations filed with this Court in support of their motion. Defendant Chao stated under penalty of perjury that "I have not authorized TuSimple Holdings, Inc., TuSimple, or anyone else at TuSimple to be my agent for service of process or to accept service on my behalf in this or any other lawsuit." *See* ECF No. 147-4 ("Chao Decl.") ¶ 8. But Chao did, in fact, accept service of process in the Derivative Action via TuSimple's registered agent. *See* ECF No. 148-13. And Michael Tu,[5] Mr. Chao's counsel both here and in the Derivative Action, moved to appear *pro hac vice* in the Derivative Action, without objecting in any way to service. ECF No. 148-12.

Chao further states that "I do not maintain a residence of any kind anywhere in the United States." Chao Decl. ¶ 5; *see also* ECF No. 147 ("Mtn.") at 4 (claiming that Chao and Zhang "have never resided in California or anywhere else within the United States."). This averment is flatly false, however, as Chao has a residence in New York City, where he accepted personal service of process in litigation in the Southern District

---

[5]    In light of the multiple false statements and/or misrepresentations in Chao's and Zhang's declarations, Plaintiffs are concerned that neither these Defendants nor Mr. Tu are abiding by their obligations under FED. R. CIV. P. 11(b)(3)-(4). *See also* Cal. R. Prof. Cond. 5-200(B) (stating that a member of the bar "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law").

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-cv-01300-BEN-MSB

of New York on June 3, 2022. *See* Declaration of Ramzi Abadou ("Abadou Decl."), Ex. A, *Oasis Focus Fund LP v. Chao et al.*, 1:22-mc-00113-PAE, ECF No. 15, Aff. of Service (June 15, 2022). Chao's use of a luxury New York apartment as a personal residence, and his acceptance of personal service there, also calls into question his assertion that "[i]n the past five years, I traveled to the United States an average of approximately 2-3 times per year, usually for less than a week at a time." Chao Decl. ¶ 6.

Chao also previously lived in the United States, including in California. In 1990, Chao began graduate school in journalism at the University of Oklahoma, graduated in 1993 from business school at the University of Texas with a master's degree in public accounting, was hired following graduation by Arthur Andersen in Silicon Valley, went to PricewaterhouseCoopers (also in California), and did not permanently return to China until 1999, when he took an executive position with Sina Corporation.[6]

Finally, Chao's claim that "Mandarin Chinese[] . . . is the language that I primarily speak, read, and understand" (Chao Decl. ¶ 4) is willfully misleading, particularly in support of the assertion that serving documents in English on Chao and Zhang would create a hardship for Chao. *See* Mtn. at 8. In reality, Mr. Chao is very fluent in English, as demonstrated by him giving the approximately 42-minute keynote address, entirely in English, at the fourth annual China 2.0 conference at the Stanford

---

[6] Todd Savage, China's Social Media Maestro Charles Chao, MPA '93, talks about his persistently pursued path to the top job at one of China's biggest online media companies, Medium.com (Nov. 9, 2017), https://medium.com/texas-mccombs-news/chinas-social-media-maestro-faeb518ab5c4.

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

Graduate School of Business on October 3, 2013.[7] And in 2017, Chao was interviewed on *CNBC*, again entirely in English.[8]

Ms. Zhang's sworn declaration also contains false statements. She, like Mr. Chao, claims to have never authorized TuSimple to accept service of process on her behalf. ECF No. 147-5 ("Zhang Decl.") ¶ 8. And like Chao, she did, in fact, accept service of process via TuSimple's registered agent in the Derivative Action. ECF No. 148-13. Ms. Zhang also implies—and her attorney expressly states—that she has never lived in the United States. Mtn. at 4 (citing Zhang Decl. ¶¶ 5-6). But, like her codefendant Chao, Ms. Zhang previously lived, studied, and worked in the United States.[9]

Accordingly, whether inadvertently or by design, both Chao and Zhang have demonstrated a complete disregard of their duty of candor to this Court.

## III.    ARGUMENT

### A.    The Court Should Deny Defendants Chao's and Zhang's Motion to Quash Service of Process, or, in the Alternative, Authorize Alternate Service of Process on Defendants Chao and Zhang under Rule 4(f)(3)

As demonstrated above, Defendants Chao and Zhang have previously authorized TuSimple's registered agent to accept service of process on their behalf. This alone is sufficient reason to deny their motion to quash. Indeed, had Chao and Zhang not

---

[7]    Charles Chao, CEO of SINA, *Weibo's Social Impact and China's Media Revolution* (Oct. 25, 2013), https://www.youtube.com/watch?v=tlliivJKHk8. At approximately 32:32, Chao begins taking and answering questions from the audience, all in English.

[8]    CNBC, *Transcript: Charles Chao, CEO and President, Sina Corp.* (Mar. 23, 2017), https://www.cnbc.com/2017/03/23/cnbc-transcript-charles-chao-ceo-and-president-sina-corp.html.

[9]    *See* Hesai Group, *Bonnie Zhang - Board Member Biography*, https://investor.hesaitech.com/board-member/bonnie-zhang. As stated therein, "Ms. Zhang served as a senior manager in the National Office SEC Services group of Deloitte & Touche, LLP from May 2005 to August 2007, where she was responsible for pre-issuance reviews of securities offering documents and periodic reports to be filed with the SEC with a focus on foreign private issuers. Ms. Zhang received a bachelor's degree in business administration from McDaniel College. Ms. Zhang is a certified public accountant in the State of Maryland and is a member of the American Institution of Certified Public Accountants."

accepted service of process through TuSimple's registered agent in the Derivative Action, it might well be true that serving them through the Company's agent would present "a potential due process problem, because there is no guarantee the agent will actually serve each defendant or that each defendant is actually aware of the litigation." *In re China Educ. All., Inc.*, 2011 U.S. Dist. LEXIS 94494, at \*7 (C.D. Cal. 2011). Defendants do not, however, raise this argument, signaling that they recognize that it is without merit in light of their previous acceptance of service *via* TuSimple's registered agent.[10] Here, unlike in *China Education*, Defendants cannot plausibly argue that TuSimple's registered agent will fail to serve Defendants or that Defendants are actually aware of the litigation, thus overcoming any potential due process problem.

Defendants also fail to acknowledge binding Ninth Circuit precedent adverse to their position that Plaintiffs must first attempt service through the Hague Convention before seeking to serve Defendants by alternative means. *Sea Ltd.*, 2024 U.S. Dist. LEXIS 31074, at \*3-4 (collecting cases and granting motion for alternate service of process on defendants located in Singapore, despite absence of attempted service *via* the Hague Convention). The Ninth Circuit holds that "service of process under Rule 4(f)(3) is neither a 'last resort' nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). *See also Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at \*5 ("Of the methods Rule 4(f) permits, it 'does not denote any hierarchy or preference of one method of service over another.'").

Defendants likewise fail to acknowledge the mountain of precedent, including in this District, holding that "the Hague Convention does not prohibit service on a foreign Defendant through counsel based in the United States." *United States SEC v. Gutierrez*,

---

[10] Because Defendants failed to raise this argument in their motion, they have waived it. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived.").

2020 U.S. Dist. LEXIS 48512, at *4 (S.D. Cal. 2020) (citing cases); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565 (C.D. Cal. 2012); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 2011 U.S. Dist. LEXIS 71269, at *44 (N.D. Cal. 2011); *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702, at *10 (N.D. Cal. 2008); *see also Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *4-5 ("Under Rule 4(f)(3), courts can order service through a variety of methods, 'including . . . delivery to the defendant's attorney[] . . .' provided [t]here is no international agreement directly to the contrary."). "Specifically, courts have allowed service 'upon a foreign defendant's United States-based counsel' to prevent further delays in litigation." *Gutierrez*, 2020 U.S. Dist. LEXIS 48512, at *4. Indeed, given TuSimple's rapid divestment from the United States and efforts to abscond with its key assets and cash to China,[11] it is imperative to avoid needless delays in litigation caused by Defendants Chao's and Zhang's insistence on compelling Plaintiffs to attempt service of process in China, which could cause years of delay in the litigation. *Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *2-4.

Not surprisingly, none of Defendants' cited authority supports their unprecedented position. Defendants rely heavily—and to their detriment—on this Court's decision in *Reintegrative Therapy Ass'n v. Kinitz*, 2021 U.S. Dist. LEXIS 213651 (S.D. Cal. 2021). There, this Court required the plaintiffs to attempt service of process on a Canadian defendant through Canada's Central Authority and authorized service by email within ten days of the Order, if the plaintiffs receive notice from Canada's central authority that the defendant could not be served. *Id*. at *25. This Court,

---

[11]    On January 17, 2024, TuSimple began the process of delisting its shares from NASDAQ in order to officially move its operations to China. ECF No. 149-3 at 7. On January 23, 2024, this Court granted a temporary restraining order enjoining TuSimple from transferring its trade secrets to Hydron or other businesses outside of the United States. *Wilhoite v. Xiaodi Hou, et al.*, No. 3:23-cv-02333-BEN-MSB, Slip Op. at 7 (S.D. Cal. Jan. 23, 2024). And an article published by The *Wall Street Journal* on January 31, 2024, detailed how TuSimple attempted to ship advanced semiconductor chips to China by way of its Australian subsidiary in violation of United States export controls. *See* ECF No. 151.

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

however, noted that "[m]any district courts within the Ninth Circuit have authorized alternative service by e-mail on foreign defendants under Rule 4(f)(3) since *Rio*." *Id*. at *21 (cleaned up) (citing cases).

*Kinitz* is inapposite for two reasons. First, whether Canada's Central Authority would timely attempt service of a complaint filed in the U.S. was not in question. By contrast, there is "concern among the international law community that the Chinese Central Authority has 'stopped executing US requests altogether.'" *Victaulic Co.*, 2020 U.S. Dist. LEXIS 82150, at *2. And service *via* U.S. counsel was not an option there, as no counsel had appeared on the unserved defendant's behalf. *Kinitz*, 2021 U.S. Dist. LEXIS 213651, at *1.

Defendants' reliance on *Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*, 480 F. Supp. 3d 977 (N.D. Cal. 2020) is also misplaced. *Facebook* stands for the narrow proposition that service by email is not allowed in China under the Hague Convention, a holding which the *Facebook* court readily acknowledges is a minority view. *See id*. at 984 ("A reason for the tilt in the opposite direction is an overly broad reading of *Rio*."). And critically, no counsel appeared in that case on behalf of the unserved foreign defendant, rendering service *via* American counsel a nonissue in the case. *Id*. at 978. Defendants also rely upon authority which is directly adverse to their position. *See* Mtn. at 8 (citing *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702, at *8). The court there flatly rejected Defendants' position that Plaintiffs must first attempt service via China's Central Authority under the Hague Convention before seeking relief, describing this argument as having "little merit." *In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 90702, at *9. The *LDK* court further held that the defendants located in China, all of whom were subsidiaries, officers, or directors of the defendant corporation, could be served via the corporation's California offices. *Id.* at *11. Accordingly, the Court should either authorize alternate service of process under Rule 4(f)(3) or rule that

service *via* TuSimple's registered agent on December 13, 2023 was effective as to Chao and Zhang.

**B.    The Court Has Personal Jurisdiction over Defendants Chao and Zhang**

"Section 27 of the 1934 Act provides for nationwide service of process." *Ensource Invs. L.L.C. v. Tatham*, 2017 U.S. Dist. LEXIS 226040, at *12 (S.D. Cal. 2017) (citing 15 U.S.C. § 78aa). "Therefore, 'so long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court.'" *Id.* (quoting *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)). "Thus, 'where a claim of federal securities violations is brought in a proper district, the test for whether the district court has personal jurisdiction over a defendant is whether the defendant has minimum contacts with the United States.'" *Id.* (quoting *Bourassa v. Desrochers*, 938 F.2d 1056, 1057 (9th Cir. 1991)). *See also LDK*, 2008 U.S. Dist. LEXIS 80717, at *14 ("the question becomes whether the party has sufficient contacts with the United States, not any particular state.") (quoting *Go-Video, Inc. v. Akai Electric Co.*, 885 F.2d 1406, 1414 (9th Cir. 1989)).[12]

In the Ninth Circuit, courts apply a three-prong test for determining specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

[12]    Defendants' arguments concerning whether actions were "aimed at California" (Mtn. at 12), whether Plaintiffs pled "the required purposeful availment directed at California" (Mtn. at 13), whether Defendants' alleged conduct was "centered in" California (Mtn. at 16), and repeated analogies to courts' state-specific contact analysis are thus misplaced.

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*LDK*, 2008 U.S. Dist. LEXIS 80717, at *15 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

"[T]he plaintiff is only required to make a '*prima facie* showing of jurisdictional facts' to withstand dismissal and the court resolves all disputed facts in favor of the plaintiff." *Bueno v. Merck & Co., Inc.*, 2023 U.S. Dist. LEXIS 186283, at *7 (S.D. Cal. 2023) (quoting *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d 797, 802 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)).[13]

### 1. Plaintiffs Pleaded Both Purposeful Direction and Purposeful Availment

Defendants lack arguments as to purposeful availment, which "'[d]espite its label, this prong includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof.'" *LDK*, 2008 U.S. Dist. LEXIS 80717, at *15 (quoting *Yahoo! Inc. v. La. Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)).[14]

---

[13] Defendants, with no "compelling case" to make, opt to omit that language from their version of the Ninth Circuit standard. *Compare* Mtn. at 11 ("burden shifts to the defendants to show why the exercise of personal jurisdiction would not be reasonable and fair") (citing *Schwarzenegger*, 374 F.3d at 802 *with Schwarzenegger*, 374 F.3d at 802, as quoted above.

[14] Defendants have thus waived any argument as to purposeful availment on reply. *See Friends of Yosemite Valley*, 520 F.3d at 1033.

In "a securities fraud case, minimum contacts may be established either by purposeful direction or purposeful availment." *Chassin Holdings Corp. v. Formula VC Ltd.*, 2016 U.S. Dist. LEXIS 52430, at *14 (N.D. Cal. 2016); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 U.S. Dist. LEXIS 1109, at *862 (N.D. Cal. 2017) (same); *SEC v. Ficeto*, 2013 U.S. Dist. LEXIS 26223, at *14 (C.D. Cal. 2013); *SEC v. Jammin Java Corp.*, 2016 U.S. Dist. LEXIS 205270, at *13 (C.D. Cal. 2016) (same); *SEC v. Chen*, 2020 U.S. Dist. LEXIS 72704, at *15 (N.D. Cal. 2020) (same). "The fraud aspects of a securities case may establish purposeful direction, as in a tort case, while the transactional aspects of a securities case may establish purposeful availment." *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *863.

### a.  Plaintiffs Pled Purposeful Direction

To assess "purposeful direction," courts "employ the 'effects' test of *Calder v. Jones*, 465 U.S. 783 (1984)." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *16 n.4. In the Ninth Circuit, to establish "purposeful direction" a plaintiff must show three things: "'the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum.'" *Id.* (quoting *Yahoo! Inc.*, 433 F.3d at 1207).[15] This test is met where a defendant "consummate[d] some transaction with the forum or resident thereof." *Schwarzenegger*, 374 F.3d at 802.[16]

Plaintiffs allege that Defendants Chao and Zhang each signed false and misleading statements filed with the SEC that form the basis of Plaintiffs' claims. ¶¶ 50

---

[15]    Defendants cite *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014), to say a failure to "plead any one of these three elements" of purposeful direction would be "fatal to [Plaintiffs'] attempt[s] to show personal jurisdiction." Mtn. at 11-12. Not so. As discussed *supra*, and as Defendants nowhere address, personal jurisdiction in federal securities claims lies where there is either purposeful direction or purposeful availment.

[16]    Defendants misstate the Ninth Circuit's holding as to the first element. *Compare* Mtn. at 11 (omitting the court's holding that the first prong of the test for specific jurisdiction is met where a defendant "consummate[d] some transaction with the forum or resident thereof") *with Schwarzenegger*, 374 F.3d at 802.

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

(Chao), 56 (Zhang), 158-163 (both), 176-180 (both), 329-332 (both), 333-340 (both). Indeed, even the Company acknowledges that a significant portion of the misstatements which form the basis of Plaintiffs' allegations were "made by" Defendants Chao and Zhang. *See* ECF No. 138, Ex. A at 3, 10-12 (identifying statements at ¶¶ 160, 161, 162, 187, 329, 331, 333-335 as having been "Alleged to Have Been 'Made By'" Chao and Zhang).

Courts repeatedly hold this as sufficient. *See LDK*, 2008 U.S. Dist. LEXIS 80717, at *16 (finding jurisdiction proper where "[d]efendants signed the prospectus for the offering and caused it to be filed with the SEC."); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 U.S. Dist. LEXIS 83621, at *6 (C.D. Cal. 2017) (finding jurisdiction proper where the misleading financial statement was "signed by each of the Individual Defendants"); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *863 (same); *In re Medeva Sec. Litig.*, 1994 U.S. Dist. LEXIS 11675, at *18-19 (C.D. Cal. 1994) (same); *Ficeto*, 2013 U.S. Dist. LEXIS 26223, at *18 (finding "misleading United States [securities] markets" constitutes a "foreseeable harm" in the United States"). Indeed, it is an "unremarkable proposition that a foreign defendant that signs a registration statement for the sole purpose of listing on [a U.S. stock exchange] has purposefully directed its actions towards the United States." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 U.S. Dist. LEXIS 60776, at *49 (C.D. Cal. 2012).

Moreover, Plaintiffs' allegations that Defendants Chao and Zhang exercised control over TuSimple are independently sufficient to allege purposeful direction. ¶¶ 351-364, 380-396; *San Mateo Cnty. Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) ("personal jurisdiction[] exists if the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for the fraud."); *Chassin*, 2016 U.S. Dist. LEXIS 52430, at *16 (same); *Ficeto*, 2013 U.S. Dist. LEXIS 26223, at *15-16 (same); *Kairalla v. Advanced Med. Optics, Inc.*, 2008 U.S. Dist. LEXIS 76987, at *43-44 (C.D. Cal. 2008) (finding control allegations provided an

13

independent basis for personal jurisdiction); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *860 (same); *Vancouver*, 2017 U.S. Dist. LEXIS 83621, at *23 (same).

Defendants offer five arguments as to why Plaintiffs fail to plead purposeful direction: (i) Plaintiffs' allegations are "conclusory" and thus insufficient; (ii) Defendants' mere status as board members is insufficient; (iii) Plaintiffs' control allegations are insufficient; (iv) Defendants merely signing an SEC filing is not sufficient; and (v) Defendant Chao owning stock in TuSimple is insufficient. Each argument relies on a faulty reading of Plaintiffs' allegations, is unsupported, and fails.

*First,* Defendants argue that the Complaint's allegations regarding Chao and Zhang are "conclusory and inadequate to establish specific jurisdiction." Mtn. at 12. Not so. Defendants "actually signed and caused to be filed an allegedly fraudulent IPO prospectus, and the alleged misrepresentations in that document are central to plaintiffs' claims. . . . those claims are more than conclusory." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *21. As Defendants' own cases demonstrate, that is enough. *See* Mtn. at 13 (citing *Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at *19 ("[T]he FAC alleges direct participation by the Moving Defendants, which is sufficient to grant the Court personal jurisdiction over them."); *Countrywide*, 2012 U.S. Dist. LEXIS 60776, at *45 ("a part of [plaintiff's] Exchange Act claims remain[] in the case. Those claims are asserted against Mozilo and Sambol, and so jurisdiction is proper as to them"); *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d 920, 927, 928 (E.D. Cal. 2017) ("Plaintiffs bring three California state claims and one federal claim" and "[t]he parties [only] dispute the court's personal jurisdiction over defendants with respect to the state law claims.); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 399 (S.D.N.Y. 2005) ("[t]he signing of documents filed with the SEC which form the basis for Plaintiffs' claims is

sufficient contact with the jurisdiction to justify this Court's exercise of jurisdiction over [the foreign defendant]").[17]

Defendants fail to cite a single case where a court held that it lacked personal jurisdiction over an individual defendant who signed an SEC filing which formed the basis of plaintiffs' federal securities law claims.[18] Nor could they. Rather, Defendants unsuccessfully seek to liken their conduct to cases with passive, outside-directors that did not sign the SEC filings at issue. Mtn. at 14 (citing *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334 (D. Md. 2004) (finding a lack of jurisdiction as to individual defendants who did not sign any of the filings at issue); *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008) (same)); Mtn. at 16 (citing *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 542 (S.D.N.Y. 2007) (foreign defendants "made no allegedly false statements described in the Complaint")).[19]

---

[17] Defendants also rely on two inapposite cases that, as noted *supra*, apply a state-specific analysis to state law claims. Mtn. at 13 (citing *In re JPMorgan Chase Derivative Litig.*, 263 F. Supp. 3d at 944-45); Mtn. at 13-14 (citing *Addaday, Inc. v. Artist Int'l Co.*, 2022 U.S. Dist. LEXIS 87773, at \*16 (C.D. Cal. 2022)).

[18] Defendants claim to have found two such cases, but blatantly misrepresent the holding in each. *Compare* Mtn. at 15-16 (citing *In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d 86, 96 (D. Del. 2002) as "dismissing for lack of personal jurisdiction") *with In re DaimlerChrysler AG Sec. Litig.*, 197 F. Supp. 2d at 96 ("Accordingly, the Court will deny with leave to renew Defendant Kopper's Motion [t]o Dismiss [plaintiffs'] Complaints insofar as it is based upon the lack of personal jurisdiction"); *compare* Mtn. at 13 (citing *Countrywide* as "dismissing federal securities claims for lack of personal jurisdiction") *with Countrywide*, 2012 U.S. Dist. LEXIS 60776, at \*45 (finding jurisdiction proper as to Exchange Act claims). The only claims the *Countrywide* court dismissed for lack of personal jurisdiction as to the foreign defendants were those brought under Ohio state law. *Countrywide*, 2012 U.S. Dist. LEXIS 60776, at \*49 (dismissing state law claim defendants, explicitly distinguishing the court's analysis from that in cases concerning "***federal*** securities claims.") (emphasis in original).

[19] The court in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d at 352-53, actually found personal jurisdiction proper as to every foreign defendant who signed the SEC filings at issue, holding that "by signing SEC filings, [the foreign defendants] were primary participants in [the Company's] contacts with the United States") (quoting *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 305 (E.D.N.Y. 2002) ("The Court finds that it is perfectly reasonable to exercise jurisdiction over [foreign defendant] based solely on her signing the [allegedly misleading] Registration Statement")).

**Second,** Defendants argue that "status as a Board member without more is too tenuous" to foreseeably create personal jurisdiction, citing a case that, in the very next paragraph after the language Defendants quote, explicitly supports a finding of personal jurisdiction here. Mtn. at 13 (citing *In re Alstom*, 406 F. Supp. 2d at 399 ("The signing of documents filed with the SEC which form the basis for Plaintiffs' claims is sufficient contact with the jurisdiction to justify this Court's exercise of jurisdiction over [director defendant]").[20] But "Plaintiffs do not seek liability against [Defendants] based solely on [their] position of control at [TuSimple]. To the contrary, Plaintiffs allege [Defendants'] direct involvement." *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *861. So too here, as Plaintiffs allege at length Defendant Chao's and Zhang's direct involvement in the scheme to defraud U.S. investors by sharing TuSimple's technology with Hydron. *See, e.g.*, ¶¶ 11, 13, 15, 30, 50-52, 56, 93, 101, 103, 109, 111, 122, 158, 163, 167, 169, 172, 175-76, 178, 180, 184, 188, 190, 195, 234, 237-38, 262, 315.

**Third**, Defendants argue that Plaintiffs' allegations that Chao and Zhang controlled TuSimple are insufficient "because 'the Due Process Clause is made of sterner stuff.'" Mtn. at 13 (quoting *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005)). Defendants cite only one case to support this proposition, and a cursory read of the opinion distinguishes it from Plaintiffs' claims here. *In re Parmalat*, 376 F. Supp. 2d at 453-54 (holding that it lacked personal jurisdiction over a foreign member of statutory board of directors of defendant corporation's foreign holding company who signed none of the challenged filings).

**Fourth**, Defendants argue that "'signing' an SEC filing 'in a foreign country is not sufficient'" to establish personal jurisdiction, citing only to one, readily distinguishable case where the foreign defendants signed only one SEC filing that was

---

[20]    Defendants further rely on *Gonzalez v. US Human Rights Network* which is inapposite. Mtn. at 13 (citing *Gonzalez*, 512 F. Supp. 3d 944, 955 (D. Ariz. 2021) (assessing jurisdiction on a state-specific basis as to Arizona courts in state law wrongful termination and employment claims).

16

neither alleged to be false or misleading, nor formed the basis of plaintiff's claims. Mtn. at 13 (citing *AstraZeneca Sec. Litig.*, 559 F. Supp. 2d at 467 (foreign director defendants signed none of the allegedly false or misleading filings)). *See also LDK*, 2008 U.S. Dist. LEXIS 80717, at *18-19 (finding "*AstraZeneca* unpersuasive" and explaining that "[i]n contrast, here defendants actually signed and caused to be filed an allegedly fraudulent IPO prospectus, and the alleged misrepresentations in that document are central to plaintiffs' claims.").

***Finally,*** Defendants argue that "specific jurisdiction may not be premised solely upon a foreign defendant's ownership of stock in a U.S. corporation." Mtn. at 14.[21] But, as detailed herein, the Complaint "alleges far more than mere stock ownership in an American company." *Ficeto*, 2013 U.S. Dist. LEXIS 26223, at *21 (rejecting the same argument). Thus, "defendants' argument that all shareholders in a public company would be subjected to jurisdiction on the theory presented here is simply wrong." *Howard*, 228 F.3d at 1069.

"Each of the 'purposeful direction' requirements is met under the complaint allegations: [Defendants] intentionally made and signed off on false statements in the [TuSimple SEC filings]; such statements were expressly directed at United States investors as part of [TuSimple's] compliance with SEC Rule[s]; and the statements caused harm [Defendants] knew was likely to be suffered in the United States." *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *863. The Court should have "no difficulty concluding that a fraud aimed at [U.S.] investors as well as U.S. regulators is aimed at the United States, and that defendants likely would know that such a fraud would cause harm in the country." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *18 n.5.

---

[21] Defendants rely on one case to make this argument, *Belden Techs*, which is, as noted above, inapposite. Mtn. at 14 (citing *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 457 (D. Del. 2009) (assessing purposeful direction on a state-specific basis, applying Delaware long-arm statute to patent infringement claim).

17

### b.   Plaintiffs Pled Purposeful Availment

"To demonstrate purposeful availment, [plaintiffs] must show that the defendants 'engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state.'" *Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at *14 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Courts have consistently "found that the transactional aspects of securities fraud establish purposeful availment." *Chassin*, 2016 U.S. Dist. LEXIS 52430, at *17 (collecting cases); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *862-63 (same); *Jammin Java*, 2016 U.S. Dist. LEXIS 184773, at *24 (same); *Ficeto*, 2013 U.S. Dist. LEXIS 26223, at *15 (same); *Chen*, 2020 U.S. Dist. LEXIS 72704, at *15.

Courts routinely find that where Defendants engage in fraudulent conduct connected with the sale of securities on U.S. markets, such as drafting, approving, and signing a Registration Statement, Defendants have purposefully availed themselves of the benefits of the United States. *See, e.g., LDK*, 2008 U.S. Dist. LEXIS 80717, at *16 ("Defendants purposefully availed themselves of the forum by taking advantage of this nation's laws and its capital markets"); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *865 (finding defendant "purposefully availed himself of the benefits of doing business in the United States by taking advantage of the [securities] markets available here"); *Medeva*, 1994 U.S. Dist. LEXIS 11675, at *18-19 ("Thus, according to the complaint's allegations, [defendant] personally availed himself of the laws such that he could reasonably anticipate being haled into court").

The Ninth Circuit has unequivocally held, along with numerous district courts to follow, that a "defendant who is alleged to have knowingly traded on an American exchange on the basis of inside information has purposefully availed himself of the instrumentalities of United States commerce and can reasonably expect to be haled into an American court." *Howard*, 228 F.3d at 1068 (reversing district court that dismissed

securities claims for lack of personal jurisdiction); *Kairalla*, 2008 U.S. Dist. LEXIS 76987, at *43 ("[O]n these allegations alone, Plaintiff has alleged one basis for personal jurisdiction over [insider trading] Defendant"); *Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at *16 ("Courts routinely find personal jurisdiction over foreign defendants" on this basis) (citing cases). Indeed, it is Ninth Circuit law that "the trading of stock on a United States exchange by an actor who knowingly has inside information is 'fair warning' to be subjected to United States jurisdiction" and "there is little question that it is proper for this Court to exercise personal jurisdiction over them for claims arising out of those trades." *Howard*, 228 F.3d at 1068.[22]

"The conduct [P]laintiffs identify contains elements both of purposeful availment and purposeful direction. Defendants purposefully availed themselves of the forum by taking advantage of this nation's laws and its capital markets, and in so doing purposefully directed a fraud at investors on [NASDAQ] (and U.S. regulators)." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *16-17. Specifically, Plaintiffs allege that Defendant Chao violated § 20A of the Exchange Act by engaging in insider trading of TuSimple stock, when he sold more than 6.75 million shares for proceeds of over $270 million while knowing that TuSimple was secretly funneling intellectual property to its Chinese competitor Hydron. ¶¶ 28, 398-402. In light of Defendant Chao's fraudulent manipulation of U.S. securities markets at the expense of U.S. investors, there is simply no colorable argument that this Court lacks personal jurisdiction over him.

### 2. Plaintiffs' Claims Arise out of Defendants' Contacts with the United States

"The Ninth Circuit employs a 'but for' test in order to determine whether a claim arises out of a nonresident defendant's activities in the forum." *Vancouver*, 2017 U.S. Dist. LEXIS 83621, at *24 (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.

---

[22]    That Defendants failed to disclose this directly adverse, binding authority, is yet more evidence of their lack of candor before this Court.

1995)). Here, "Plaintiffs' claims arise directly from defendants' forum-related activities—the [Registration Statement], plaintiffs allege, contained material false statements which are integral to plaintiffs' securities claims. Courts regularly assert jurisdiction in such circumstances." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *17; *see also Vancouver*, 2017 U.S. Dist. LEXIS 83621, at *25 ("the 'but for' test is satisfied because Plaintiffs have established a direct nexus between their causes of action for securities fraud and Defendants' contacts with the United States, *i.e.*, the false statements they made"). "Because Plaintiffs allege that they were defrauded by the intentional misrepresentations contained in the Registration Statement and Prospectus knowingly signed by [Defendants], the Plaintiffs' claims for fraud against [Defendants] arise out of [Defendants'] contract with the United States." *Medeva*, 1994 U.S. Dist. LEXIS 11675, at *19 (same).[23]

### 3.   Defendants Fail to Rebut the Presumption that Jurisdiction is Reasonable

"Plaintiffs have satisfied their burden under the first two prongs of the specific jurisdiction test and, therefore, the burden shifts to defendants." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *16. "There is a presumption of reasonableness when the first two prongs have been met, and a defendant thereafter must present a 'compelling case' that jurisdiction is unreasonable." *Chen*, 2020 U.S. Dist. LEXIS 72704, at *18-19 (quoting *Schwarzenegger*, 374 F.3d at 802).[24]

In assessing reasonableness, courts balance seven non-dispositive factors, of which Defendants raise only two:

---

[23]   Defendants do not – indeed, cannot – contest this element.

[24]   Defendants conveniently omit both the weight of their burden and the presumption Ninth Circuit courts apply when assessing whether defendants have met that burden. *Compare* Mtn. at 16 (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) *with Caruth*, 59 F.3d at 128 ("we begin with a presumption of reasonableness, which can only be overcome by a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'").

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *866-67 (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993)). "Defendants only raise the first and second factors: 1) the extent of the Defendants' interjection in the forum; and 2) the burden litigating in this forum presents to them as international parties." *Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at *24.[25]

Defendants argue that the first factor "weighs against jurisdiction because [their] alleged conduct is centered in China, not California." Mtn. at 16. Defendants cite no authority to support this position, nor could they. Defendants' alleged conduct is centered in the United States, where Defendants filed the allegedly false and misleading Registration Statement, among other SEC filings they signed, and sold hundreds of millions of dollars of shares on U.S. exchanges.

Defendants next argue that the inconvenience of litigating in a "foreign legal system" renders the Court's exercise of personal jurisdiction unreasonable. Mtn. at 16 (citing *Core-Vent*, 11 F.3d at 1489).[26] However, "Ninth Circuit jurisprudence dictates that '[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'"

---

[25]   Defendants thus waived any argument as to the remaining five factors on reply. *Friends of Yosemite Valley*, 520 F.3d at 1033.

[26]   Defendants description of the holding in *Core-Vent*, 11 F.3d at 1489, is both inaccurate and nonsensical, and the Ninth Circuit's actual holding in fact weighs in favor of finding jurisdiction here. Mtn. at 16-17 (citing *Core-Vent* to say "'the presence or absence of connections to the United States in general, not just to the forum state,' cautions against finding jurisdiction") *with Core-Vent*, 11 F.3d at 1489 ("Sovereignty concerns weigh more heavily when the defendants have no United-States based relationships").

*Vancouver*, 2017 U.S. Dist. LEXIS 83621, at \*26 (quoting *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1481 (9th Cir. 1986)).

Accordingly, Defendants' exact arguments have been resoundingly rejected: "Defendants emphasize their lack of geographic connection to the United States: they live and work in China, own no property in the United States, and travel here infrequently.[27] The Court finds these factors to be ***insufficient to render jurisdiction unreasonable***." *LDK*, 2008 U.S. Dist. LEXIS 80717, at \*20; *see also Chassin*, 2016 U.S. Dist. LEXIS 52430, at \*22 ("Courts routinely reject claims by foreign defendants that it would be too burdensome for them to defend themselves outside their home country"); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at \*868 (rejecting the same argument in securities action); *Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at \*25 (same); *Ficeto*, 2013 U.S. Dist. LEXIS 26223, at \*23 (same).

"Further, 'modern advances in communications and transportation have significantly reduced the burden of litigation in distant forums.'" *Vancouver*, 2017 U.S. Dist. LEXIS 83621, at \*27 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)). Moreover, "Defendants have secured competent counsel in this District." *Id*. Thus, this factor weighs in favor of Defendants "only slightly, 'as it probably does in every case.'" *Chassin*, 2016 U.S. Dist. LEXIS 52430, at \*22 (quotations omitted). "Of course, the burdens of a foreign defendant to defend a case are substantial, but that does not defeat responsibility for alleged securities-laws violations here." *Chen*, 2020 U.S. Dist. LEXIS 72704, at \*19. This is the case because "[i]f the reasonableness inquiry were dictated by the extent of defendants' geographic ties to the forum alone, the purposeful availment and purposeful direction inquiries would be meaningless." *LDK*, 2008 U.S. Dist. LEXIS 80717, at\*20.

---

[27] As explained in § II, *supra*, Defendant Chao indirectly owns a luxury apartment in New York City, where he previously accepted personal service of process in prior litigation.

22

Defendants do not argue that the third factor, the extent of conflict with the sovereignty of the defendant's state, applies, and thus it is no aid in Defendants meeting their burden to show unreasonableness. "Under the fourth factor, the United States has a clear and obvious domestic interest in protecting U.S. investors[.]" *Vancouver*, 2017 U.S. Dist. LEXIS 83621, at *28. "The United States' clear interest in protecting U.S. investors favors a finding of reasonableness." *Id*.; *see also Jammin Java*, 2016 U.S. Dist. LEXIS 205270, at *26 (finding the U.S. interest "substantial because there is a need to protect American shareholders and insure the integrity of trading securities of American corporations"); *Volkswagen*, 2017 U.S. Dist. LEXIS 1109, at *868; *LDK*, 2008 U.S. Dist. LEXIS 80717, at *21.

Defendants do not contest the fifth, sixth, or seventh factors, and do not suggest an alternative venue exists or would achieve a more efficient judicial resolution of the controversy. Thus, these factors cannot aid Defendants in meeting their burden. In fact, each of these factors weighs in favor of a finding of reasonableness here. The Court need not take Plaintiffs' word for it. It can take the Company's: "most of the witnesses, most the information that is necessary" are here, in this District. *See Wilhoite v. Hou*, Case No. 23-cv-02333-BEN, ECF No. 80 at 10-11 ("THE COURT: . . . wouldn't most of the witnesses, most of the information that's necessary be located here in California? [TuSimple Counsel]: It would, your honor."). Abadou Decl., Ex. B. There is undoubtedly no more efficient forum than this Court for judicial resolution of this controversy. Moreover, there does not appear to be an alternative forum for Plaintiffs to pursue their claims under the United States's federal securities laws, aside from the United States federal courts. The fifth, sixth, and seventh factor thus each weigh in favor of a finding of reasonableness.

"In sum, Defendants have not presented a 'compelling case' demonstrating that the Court's exercise of jurisdiction would be unreasonable." *Vancouver*, 2017 U.S. Dist. LEXIS 83621, at *25. "Plaintiffs certainly have a strong interest in obtaining effective

23

and efficient relief, and the integrity of this nation's securities markets would be undermined if foreign corporations and executives could fleece those capital markets while standing just beyond the water's edge." *LDK*, 2008 U.S. Dist. LEXIS 80717, at *21. Defendants have failed to meet their burden to show jurisdiction would be unreasonable here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to quash service should be denied, and this Court should grant Plaintiffs' motion for alternative service on Defendants Chao and Zhang.

Dated:   March 18, 2024                     Respectfully submitted,

KAHN SWICK & FOTI, LLP


By:   *s/ Ramzi Abadou*
Ramzi Abadou (SBN 222567)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 459-6900
Facsimile:  (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

KAHN SWICK & FOTI, LLC
Alexander Burns
(admitted *pro hac vice*)
James T. Fetter
(admitted *pro hac vice*)
Alexandra Pratt
(admitted *pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

24

alexander.burns@ksfcounsel.com
james.fetter@ksfcounsel.com
alexandra.pratt@ksfcounsel.com

*Counsel for Named Plaintiff, Robert Miller*

ROBBINS GELLER RUDMAN
& DOWD LLP

By:  *s/ Lucas F. Olts*
Darren J. Robbins
Lucas F. Olts
Heather G. Geiger
Stephen Johnson
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
Facsimile: (619) 231-7423
darrenr@rgrdlaw.com
lolts@rgrdlaw.com
hgeiger@rgrdlaw.com
sjohnson@rgrdlaw.com

*Lead Counsel for Lead Plaintiff, Indiana Public Retirement System, and Named Plaintiff, Michelle Poirier*

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB

## <u>SIGNATURE CERTIFICATION</u>

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to counsel for Plaintiffs, and that I have obtained counsel's authorization to affix his electronic signature to this document.

DATED: March 18, 2024

*s/ Ramzi Abadou*
RAMZI ABADOU

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on Monday, March 18, 2024 on all counsel of record by using the CM/ECF system.

*s/ Ramzi Abadou*
RAMZI ABADOU

PLAINTIFFS' OPP. TO MOTION TO QUASH SERVICE
CASE NO. 3:22-CV-01300-BEN-MSB