MICHAEL C. TU (State Bar No. 186793)
*mctu@cooley.com*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone: (213) 561-3250
Facsimile:  (213) 561-3244

RYAN E. BLAIR (State Bar No. 246724)
*rblair@cooley.com*
COOLEY LLP
10265 Science Center Drive
San Diego, California 92121
Telephone: (858) 550-6000
Facsimile:  (858) 550-6420

*Attorneys for Specially Appearing Defendants*
*Charles Guowei Chao and Bonnie Yi Zhang*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED,<br><br>Defendants. | Case No.: 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB)<br><br>**CLASS ACTION**<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO REQUEST ALTERNATE SERVICE OF PROCESS FOR DEFENDANTS CHAO AND ZHANG AND TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY AS TO DEFENDANTS CHAO AND ZHANG**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br>Date:  April 1, 2024<br>Time:  10:30 a.m. |

COOLEY LLP
ATTORNEYS AT LAW

OPP. TO MOT. FOR ALT. SERVICE & PARTIAL
LIFT OF DISCOVERY STAY
NO. 3:22-CV-01300-BEN-MSB

**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTS | 2 |
| III. | LEGAL STANDARDS | 5 |
| | A. Rule 4, the Hague Service Convention, and the Limited Exceptions Thereto | 5 |
| | B. Partial Lifting of the PSLRA Discovery Stay | 6 |
| IV. | ARGUMENT | 6 |
| | A. Plaintiffs' Motion Is Premature Because Plaintiffs Have Not Attempted to Comply with the Hague Service Convention, Which Undisputedly Applies, and There Are No Exceptions Excusing Non-Compliance or Justifying "Protective Measures" | 6 |
| | 1. It is undisputed both that the Convention applies, and that plaintiffs made no effort to serve Specially Appearing Defendants in accordance with the Convention's requirements | 7 |
| | 2. There are no exceptions relieving plaintiffs of their obligation to comply with the Convention's service requirements | 9 |
| | 3. This is not a "case of urgency" justifying this Court's intervention on account of plaintiffs' failure to comply with the Convention's requirements | 11 |
| V. | CONCLUSION | 16 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brockmeyer v. May*,
383 F.3d 798 (9th Cir. 2004) ..........................................................................5

*Brown v. China Integrated Energy, Inc.*,
285 F.R.D. 560 (C.D. Cal. 2012)...............................................................11, 12

*Cadence Design Sys. V. Syntronic AB*,
2021 U.S. Dist. LEXIS 176743 (N.D. Cal. 2021) ......................................12, 13

*Camarillo v. Balboa Thrift & Loan Ass'n*,
2021 WL 409726 (S.D. Cal. Feb. 4, 2021).......................................................7

*Catalyst Lifestyle Ltd. v. Elago Co., Ltd.*,
2022 WL 16951656 (S.D. Cal. Nov. 15, 2022)..................................................9

*Chan v. ArcSoft, Inc.*,
2020 WL 13891272 (N.D. Cal. Sept. 16, 2020)................................................14

*In re China Educ. All., Inc. Sec. Litig.*,
2011 WL 3715969 (C.D. Cal. Aug. 22, 2011) ..................................................10

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020).......................................................*passim*

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co., Ltd.*,
2019 WL 246562 (S.D. Cal. Jan. 17, 2019) ................................................12, 13

*Hawkins v. Bank of Am., N.A.*,
2018 WL 1616941 (S.D. Cal. Apr. 4, 2018) ................................................9, 12

*Laborers District Council Construction Industry Pension Fund v. Sea Ltd.*,
2024 U.S. Dist. LEXIS 31074 (D. Ariz. Feb. 23, 2024) ...................................11

*In re LDK Solar Sec. Litig.*,
2008 WL 2415186 (N.D. Cal. June 12, 2008) ...............................................8, 11

*M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*,
    2017 WL 5642326 (C.D. Cal. Aug. 18, 2017) ......................................................16

*In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*,
    347 F. Supp. 2d 538 (S.D. Ohio 2004)................................................................16

*OGM, Inc. v. Televisa, S.A. de C.V.*,
    2009 WL 1025971 (C.D. Cal. Apr. 15, 2009).......................................................8

*Powers v. Eichen*,
    961 F.Supp. 233 (S.D. Cal. 1997) ......................................................................14

*In re Rambus, Inc. Sec. Litig.*,
    2007 WL 1430047 (N.D. Cal. May 14, 2007) ......................................................16

*Reintegrative Therapy Ass'n, Inc. v. Kinitz*,
    2021 WL 5140195 (S.D. Cal. Nov. 4, 2021).................................................*passim*

*Rio Props. v. Rio Int'l Interlink*,
    284 F. 3d 1007 (9th Cir. 2002) ...........................................................................10

*Rose v. Deer Consumer Products, Inc.*,
    2011 WL 6951969 (C.D. Cal. Dec. 29, 2011)......................................................11

*In re SeraCare Life Scis., Inc. Sec. Litig.*,
    2006 WL 8455342 (S.D. Cal. Aug. 1, 2006)..........................................................6

*SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. Of CA*,
    189 F.3d 909 (9th Cir. 1999) ...........................................................................6, 14

*In re Tesla, Inc. Sec. Litig.*,
    2019 WL 210956 (N.D. Cal. Jan. 15, 2019)..........................................................16

*U.S. SEC v. Gutierrez*,
    2020 U.S. Dist. LEXIS 48512 (S.D. Cal. 2020)..................................................9, 12

*Vezzetti v. REMEC, Inc.*,
    2001 WL 37118900 (S.D. Cal. July 23, 2001)......................................................16

*Victaulic Co. v. Allied Rubber & Gasket Co.*,
    2020 U.S. Dist. LEXIS 82150 (S.D. Cal. 2020)................................................8, 12, 14

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)..........................................................................................5, 13

COOLEY LLP
ATTORNEYS AT LAW
-iii-

OPP. TO MOT. FOR ALT. SERVICE & PARTIAL
LIFT OF DISCOVERY STAY
CASE NO. 3:22-CV-01300-BEN-MSB

*Watkins v. Hireright, Inc.*,
   2013 WL 10448882 (S.D. Cal. Nov. 18, 2013)..................................................16

**Statutes**

10 Del. C. § 3114 ..............................................................................................14

15 U.S.C. § 78u-4 ...............................................................................................6

**Rules**

Fed. R. Civ. P. 4.............................................................................5, 6, 8, 10, 13

Fed. R. Civ. P.  12(b)(2) ....................................................................................1

Fed. R. Civ. P.  12(b)(5) ....................................................................................1

**Other Authorities**

Hague Service Convention, Art. 1, 20 U.S.T. 361 .........................................5, 9

Hague Service Convention, Art. 15, 20 U.S.T. 361 .........................................11

Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 999–1000
   (2017)...........................................................................................................10

S. Rep. No. 104–98 (1995) .................................................................................6

U.S. Const. art. VI...............................................................................................2

## I.  INTRODUCTION

Plaintiffs' assertion that they went to "great lengths to serve defendants Chao and Zhang" (Mot.[1] at 2) is stunning given their admission that they *did not even attempt the one method of service that is required by the Federal Rules of Civil Procedure, the Supreme Court, the Ninth Circuit, and this Court*.  Since Mr. Chao and Ms. Zhang ("Specially Appearing Defendants") are full-time residents of China, plaintiffs must first attempt to serve them through China's Central Authority in accordance with the rules of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention" or the "Convention"), to which both the United States and China are signatories.  *See, e.g.*, *Reintegrative Therapy Ass'n, Inc. v. Kinitz*, 2021 WL 5140195, at *3 (S.D. Cal. Nov. 4, 2021) (Benitez, J.) (holding that "Plaintiffs' attempts to serve [defendant] are deficient . . . given Plaintiffs have not *first* attempted service on Canada's Central Authority" in accordance with the Convention) (emphasis added).  In truth, plaintiffs' supposed "great lengths" were no such thing, consisting merely of (1) serving the domestic agent of TuSimple Holdings, Inc. ("TuSimple" or the "Company"), an entity that is *not* Mr. Chao's or Ms. Zhang's agent; and (2) grumbling that Mr. Chao's and Ms. Zhang's counsel should agree to accept service on their behalf because plaintiffs do not wish to follow the required process to serve them.  Neither is adequate service of process here.

To be certain, this is not a case where these *former* TuSimple board members with little to no involvement in the underlying litigation are attempting to evade proper service.  On the contrary, plaintiffs were affirmatively provided with the work and residential addresses to which service on Specially Appearing Defendants may be

---

[1] "Motion" and "Mot. at ___" refer to plaintiffs' Motion to Request Alternate Service of Process for Defendants Chao and Zhang and to Partially Lift the PSLRA Discovery Stay as to Defendants Chao and Zhang. (Dkt. No. 148.) Likewise, "Mot. Ex. ___ at ___" refers to exhibits to the Motion. "Complaint" and "Compl. ¶ __" refer to plaintiffs' Consolidated Class Action Complaint for Violations of the Federal Securities Laws. (Dkt. No. 103.) "Motion to Quash" and "MTQ" refer to the Motion to Quash Service and to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2). (Dkt. No. 147.)

properly made under the Convention.  Yet, plaintiffs inexplicably have refused to follow any of the well-delineated steps to effect service under Federal Rule of Civil Procedure ("Rule") 4, as courts consistently require before considering requests for alternate service.  Instead, plaintiffs' Motion asks the Court to ignore the requirements of the Convention, a ratified, multilateral, self-executing treaty which is the "law of the land" (U.S. Const. art. VI) and agreed to by the United States and many other nations.  Indeed, the facts here bear no relation whatsoever to *any* of the cases cited in plaintiffs' Motion, all of which involved limited exceptions to the requirements of the Convention. Granting alternate service here would only perversely incentivize other plaintiffs to attempt to circumvent the Convention's requirements.

Plaintiffs also assert that the PSLRA discovery stay should be partially lifted so that they may serve "a limited number of interrogatories and requests for production of documents, solely to ensure that defendants Chao and Zhang are preserving relevant evidence." (Mot. at 11.)  Plaintiffs do not even attempt to explain *why* they believe there is a risk of evidence spoliation or undue prejudice warranting a partial lifting of the stay as to Specially Appearing Defendants.  Rather, they merely claim they have not been given the proper "assurances" that they "have been apprised of their discovery obligations."  (*Id*.)  Such a bald claim is far from the "exceptional circumstances" required to lift the mandatory PSLRA discovery stay, which should remain in effect.

## II.  RELEVANT FACTS

On October 2, 2023, plaintiffs filed their Complaint, alleging violations of federal securities laws against the Company and several individuals, including Specially Appearing Defendants.  The Complaint alleges that Specially Appearing Defendants are former board members of the Company, but that both resigned in June 2022, well before the end of the class period.  (Compl. ¶¶ 50, 52, 56, 57.)  It is undisputed that Specially Appearing Defendants do not hold any current position or involvement in, or

affiliation with, the Company.[2] (*See* Declaration of Charles Guowei Chao ("Chao Decl.," Dkt. No. 147-4) ¶3; Declaration of Bonnie Yi Zhang ("Zhang Decl.," Dkt. No. 147-5) ¶3.)

Specially Appearing Defendants are both residents of China, and Mr. Chao is a citizen of China. (Chao Decl. ¶¶2–3; Zhang Decl. ¶¶2–3.) They do not reside in California or anywhere else within the United States. (Chao Decl. ¶¶5–6; Zhang Decl. ¶¶5–6.) The Complaint itself concedes that Specially Appearing Defendants work in China for China-based companies. (Compl. ¶¶50–52, 56–57.) But plaintiffs have **never** even attempted to serve the Complaint on Specially Appearing Defendants in China, pursuant to the Convention or otherwise.

Nevertheless, plaintiffs have filed purported proofs of service erroneously claiming to have served Specially Appearing Defendants by dropping off documents with an individual in Wilmington, Delaware named Lyanne Gates, who is identified only as a "managing agent" of TuSimple. (Dkt. Nos. 143, 144.) Neither Specially Appearing Defendant has ever authorized the Company, or anyone at the Company, to be their agent for service of process or to accept service on their behalf in this lawsuit. (Chao Decl. ¶8; Zhang Decl. ¶8.)

Further, in response to plaintiffs' counsel's requests that counsel for Specially Appearing Defendants in this matter accept service on Specially Appearing Defendants' behalf, counsel twice informed plaintiffs' counsel that he was not authorized to do so—

---

[2] Specially Appearing Defendants' connections to the Complaint's claims are tenuous at best. Neither is alleged to have specifically made a single materially false or misleading statement. (Compl. ¶¶154–231.) And the Complaint contains little more than allegations that Specially Appearing Defendants were directors during part of the relevant putative class period, and, as all board members do, signed SEC filings. (*Id.* at ¶¶50, 56.) Further, the large stock sale following TuSimple's IPO attributed by plaintiffs to Mr. Chao (Mot. at 1) was actually made by SUN Dream Inc., an entity with which Mr. Chao is affiliated (TuSimple Holdings Inc., Statement of Changes in Beneficial Ownership (Form 4, dated Apr. 21, 2021), available at https://www.sec.gov/Archives/edgar/data/1823593/000089924321016587/xslF345X03/doc4.xml). Entirely devoid of specifics regarding Specially Appearing Defendants, the Complaint leans heavily into vague, conclusory, and unsupported allegations that Specially Appearing Defendants, and particularly Mr. Chao, have "ties to the Chinese government . . . a foreign adversary." (*See, e.g.*, Compl. ¶¶162–63.)

first on November 29, 2023, and again on December 8, 2023. (Mot. at 3–4.)

In a good faith attempt to avoid the necessity of motion practice, Specially Appearing Defendants' counsel explained in a telephone call with plaintiffs' counsel on December 8, 2023, the Hague Service Convention requirements applicable to Specially Appearing Defendants and proactively offered to provide current work and residential addresses to help facilitate such service and avoid unnecessary delays; *those addresses were in fact affirmatively provided on December 14, 2023*. (Declaration of Michael C. Tu ("Tu Decl.," Dkt. No. 147-2) at ¶¶2–5; Mot. Ex. H at 42–43.)[3] Plaintiffs' counsel's response was to flatly and categorically refuse to make any attempt to effect service under the Convention, and instead engaged in unwarranted invective accusing counsel of "gaslighting" and "evasion of service" simply because counsel told plaintiffs' counsel that he is required to comply with the Convention's requirements. (Mot. Ex. H at 42–43.)

On January 3, 2024, Specially Appearing Defendants filed their Motion to Quash, arguing that plaintiffs' attempted service was defective as to Specially Appearing Defendants because it did not satisfy the requirements of the Convention or California law. (Dkt. No. 147.) It was not until the Motion to Quash was filed raising these issues that plaintiffs subsequently filed their own Motion the very next day, seeking leave to serve Specially Appearing Defendants by alternative means for the first time—*i.e.*, effectively conceding that plaintiffs' previously submitted proof of service was insufficient. (Dkt. No. 148.)

---

[3] Plaintiffs misrepresent the December 8, 2024, telephone call between counsel, claiming that Specially Appearing Defendants' counsel was "unwilling to provide [Specially Appearing Defendants'] residential addresses." (Mot. at 4.) However, Exhibit H to plaintiffs' own Motion contradicts this spin on the facts. (Mot. Ex. H at 43 ("I don't think there is any dispute that I offered to provide the address information if it would resolve your service issues, so you could move forward with a Hague Service Convention request. You flatly refused, and that was the end of our discussion.").) And in any event, plaintiffs' Motion conveniently omits that counsel *did in fact provide that address information*.

### III.    LEGAL STANDARDS

#### A.    Rule 4, the Hague Service Convention, and the Limited Exceptions Thereto

Rule 4 expressly authorizes service of process on foreign individuals "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1); *accord Reintegrative Therapy*, 2021 WL 5140195, at *2 (ruling "Subsection [4(f)](1) implements the [Hague Service] Convention"). "The United States and China are both parties to the Hague Service Convention, a multilateral treaty whose purpose is to simplify, standardize, and generally improve the process of serving documents abroad." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020) (internal quotation marks omitted); *accord Reintegrative Therapy*, 2021 WL 5140195, at *2 (finding the Convention "is an internationally agreed means of service expressly incorporated into and referenced by Rule 4."). And it is well-established by both the Supreme Court and the Ninth Circuit that the Hague Service Convention is "the ***exclusive means*** of valid service" for defendants in signatory countries. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988) (emphasis added); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) ("the validity of [] service [abroad] is controlled by the Hague Convention, to the extent that the Convention applies.").

There are very limited circumstances—neither of which apply here, as described fully below—where compliance with the Convention's service requirements are unnecessary. The Convention, by its own terms, does not apply where: (1) a plaintiff does not know the address of the party to be served, or (2) a party can be validly served domestically. Hague Service Convention, Art. 1, 20 U.S.T. 361 ("This Convention shall not apply where the address of the person to be served with the document is not known" and "[t]he present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for

service *abroad*.") (emphasis added). Also, even where the Convention applies, courts may sometimes order "protective measures" in urgent circumstances that also decidedly are not present here. *Id.* at Art. 15 ("Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures."). These "protective measures" may include "special forms of service." Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (f)(3).

### B. Partial Lifting of the PSLRA Discovery Stay

The PSLRA requires that "all discovery" in a securities fraud class action "shall be stayed during the pendency of any motion to dismiss unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to a party." *In re SeraCare Life Scis., Inc. Sec. Litig.*, 2006 WL 8455342, at *1 (S.D. Cal. Aug. 1, 2006) (citing 15 U.S.C. § 78u-4(b)(3)(B)). *See also* S. Rep. No. 104–98, at 14 (1995) *reprinted in* U.S.C.C.A.N. 693 (the 'Stay of Discovery' provision of the Exchange Act means that "discovery should be permitted in securities class actions *only after the court has sustained the legal sufficiency of the complaint*.") (emphasis added). Thus, to lift the PSLRA discovery stay, a court must determine that "exceptional circumstances" exist such that (1) discovery is necessary to preserve evidence or prevent undue prejudice and (2) the discovery sought is sufficiently particularized. *SG Cowen Sec. Corp. v. U.S. Dist. Court for N. Dist. Of CA*, 189 F.3d 909, 911-12 (9th Cir. 1999).

## IV. ARGUMENT

### A. Plaintiffs' Motion Is Premature Because Plaintiffs Have Not Attempted to Comply with the Hague Service Convention, Which Undisputedly Applies, and There Are No Exceptions Excusing Non-Compliance or Justifying "Protective Measures"

The Court should deny alternate service for at least three reasons: (1) it is undisputed that the Convention applies and that plaintiffs did not attempt service per its requirements; (2) there are no exceptions causing the non-applicability of the Convention; and (3) this is not a "case of urgency" justifying the Court's intervention

at this time.  Indeed, plaintiffs' Motion ***never directly engages with the law*** governing this issue.  Despite their admission that they did not attempt service under the Convention, plaintiffs never affirmatively claim an exception causing the Convention not to apply, nor do they specifically claim urgent circumstances justifying their non-compliance with the Convention's requirements and necessitating this Court's intervention.[4]  *See Facebook*, 480 F. Supp. 3d at 987 ("Facebook hasn't asserted that an exception to the Hague Service Convention applies.").  Instead, plaintiffs appear to argue only that the Convention's requirements are optional, to be adhered to or ignored at will by plaintiffs and the Court, because they are just as favored as any other method of service.  (Mot. at 6–10.)  That is not the law.

> **1.    It is undisputed both that the Convention applies, and that plaintiffs made no effort to serve Specially Appearing Defendants in accordance with the Convention's requirements**

Plaintiffs do not dispute that the Convention applies here, nor do they claim to have made any attempt to serve Specially Appearing Defendants under the Convention.

Where the Convention applies, service is generally accomplished under its terms by "send[ing] a request for service to a receiving country's central authority, an entity that every signatory to the Convention must establish." *Facebook*, 480 F. Supp. 3d at 980; *accord Reintegrative Therapy*, 2021 WL 5140195, at *4 (describing proper method for plaintiff to serve process under the Convention); Hague Service Convention, Arts. 2–7, http://www.hcch.net/upload/conventions/txt14en.pdf (last visited Mar. 18, 2024).  After that, "[t]he central authority must attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that service was successful or listing the reasons that prevented service." *Facebook*, 480 F. Supp. 3d at 980.

---

[4] Plaintiffs should therefore be prohibited from raising these arguments on reply. *Camarillo v. Balboa Thrift & Loan Ass'n*, 2021 WL 409726, at *11 (S.D. Cal. Feb. 4, 2021) (Benitez, J.)  ("A moving party may not raise new arguments in a reply brief.").

In addition to service through the Central Authority, the Convention permits "alternative methods of service unless the receiving country objects." *Id*. (citing Hague Service Convention, Arts. 8–10). But as courts have recognized, China has stated its express opposition to service in accordance with Article 10, so personal service or service by mail on Specially Appearing Defendants in China is not permitted. *Id*. at 983 ("China has affirmatively objected to service 'by postal channels'" under Article 10); *accord In re LDK Solar Sec. Litig*., 2008 WL 2415186, at *2 (N.D. Cal. June 12, 2008) ("China explicitly objected to Article 10 of the Convention."). Accordingly, the only permissible service method on a defendant in China under the Convention is through China's Central Authority. *See also OGM, Inc. v. Televisa, S.A. de C.V.*, 2009 WL 1025971, at *3 (C.D. Cal. Apr. 15, 2009) ("Mexico has in fact objected to service through the alternative methods specified in Article 10 of the Hague Convention" and "service through Mexico's Central Authority is the exclusive method by which Plaintiff can serve Televisa in Mexico").

The Court's opinion in *Reintegrative Therapy* is instructive. In that case, the plaintiffs first attempted personal service on defendants in Canada at their known physical addresses. 2021 WL 5140195, at *2–3. When personal service for one of the defendants failed, the plaintiffs requested that the Court authorize alternate service by mail or email. *Id*. at *3. However, the Court held that prior to being granted alternate service, "Plaintiffs must attempt to serve [defendant] through Canada's central authority first" in accordance with the Convention. *Id*. at *5. The Court further stated, "***[s]hould service of the central authority prove unsuccessful***, a court may order alternative means of service pursuant to Rule 4(f)(3) so long as no international agreement prohibits that alternative method." *Id*. (citation omitted and emphasis added).

Each of plaintiffs' cases cited in their Motion reinforce the Court's holding in *Reintegrative Therapy*, rather than support plaintiffs' argument, because the plaintiffs in those cases attempted to comply with the Convention **before** seeking alternate service. *See Victaulic Co. v. Allied Rubber & Gasket Co.*, 2020 U.S. Dist. LEXIS

82150, at *6 (S.D. Cal. 2020) (Benitez, J.) ("Plaintiff indicates it attempted service on Defendant [] via the relevant Chinese Authority. However, due to issues within the Chinese government . . . service has yet to be effectuated"); *Catalyst Lifestyle Ltd. v. Elago Co., Ltd.*, 2022 WL 16951656, at *1 (S.D. Cal. Nov. 15, 2022) ("Plaintiff attempted to effect service on Elago in accordance with the Hague Convention through the Central Authority of Korea"); *Hawkins v. Bank of Am., N.A.*, 2018 WL 1616941, at *1 (S.D. Cal. Apr. 4, 2018) ("Plaintiff attempted to serve Hawkins at her residence in Japan pursuant to the Hague Convention"); *U.S. SEC v. Gutierrez*, 2020 U.S. Dist. LEXIS 48512, at *2 (S.D. Cal. 2020) ("Plaintiff's attempts in serving Defendants pursuant to the Hague Convention have been unsuccessful").

Here, plaintiffs admittedly have made no attempt to serve Specially Appearing Defendants through China's Central Authority. Indeed, both written and oral communications with plaintiffs' counsel have made clear that plaintiffs do not intend to make *any* efforts to comply with the Convention's requirements. (*See* Tu Decl. ¶¶2–5; Mot. Ex. H.)

### 2. There are no exceptions relieving plaintiffs of their obligation to comply with the Convention's service requirements

There is no question that this case does not contemplate either of the limited exceptions where the Convention's "channels of service may be bypassed" because the Convention does not apply by its own terms. *Facebook*, 480 F. Supp. 3d at 980. Indeed, plaintiffs cannot claim that the Convention does not apply because (1) they possess Specially Appearing Defendants' physical addresses and (2) service on Specially Appearing Defendants cannot be completed domestically. *See* Hague Service Convention, Art. 1, 20 U.S.T. 361.

First, counsel for Specially Appearing Defendants provided plaintiffs with Specially Appearing Defendants' business and home addresses on December 14, 2023—*more than three months ago*. (Mot. Ex. H at 42-43.)

Next, domestic service on Specially Appearing Defendants is defective for at least two reasons.  First, as plaintiffs admit, neither Specially Appearing Defendant has been a member of the Company's board of directors (or held any other position) since June 2022.[5]  (Compl. ¶¶52, 57.)  Second, as plaintiffs also admit, Specially Appearing Defendants' counsel informed them that he was not authorized to accept service on Specially Appearing Defendants' behalf.  (Mot. at 3–4; *see also* MTQ at 5–9 (explaining the deficiency of plaintiffs' service).)

All the cases cited by plaintiffs in their Motion are inapposite because they granted alternate service where exceptions existed causing the Convention not to apply.  For example, plaintiffs egregiously misstate the holding in *Rio Props. v. Rio Int'l Interlink*, 284 F. 3d 1007 (9th Cir. 2002), citing it for the claim that court-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1) or 4(f)(2), and using that claim as the primary support for their assertion that they need not comply with the Convention's service requirements.  (Mot. at 5.)  However, plaintiffs fail to mention that the *Rio* court was interpreting only Rule 4 and was not considering the Hague Service Convention because it ***did not apply*** in that case.  *Id*. at 1015 n.4 ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.")[6]  Plaintiffs' other cases likewise do not support

---

[5] Service through a company's agent on defendants who are no longer affiliated with the company "presents a potential due process problem, because there is no guarantee the agent will actually serve each defendant." *In re China Educ. All., Inc. Sec. Litig.*, 2011 WL 3715969, at *3 (C.D. Cal. Aug. 22, 2011).

[6] Notably, *Facebook* went to great lengths to clarify the holding in *Rio*, stating that "when the Convention applies and no exception is applicable, the plaintiff cannot invoke [Rule] 4(f)(3)"—and that this is entirely consistent with *Rio's* holding. *Facebook*, 480 F. Supp. 3d at 986. *See also* Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 999–1000 (2017) ("some district courts have . . . relied on *Rio* to conclude that, even when the Service Convention does apply, plaintiffs can immediately invoke Rule 4(f)(3) to seek approval to serve foreign defendants through less formal means . . . [but] Rule 4(f)(3) was intended as a safety valve available only when the Convention, by its own terms, does not apply.").

their position.  *See Rose v. Deer Consumer Products, Inc.*, 2011 WL 6951969, at *1 (C.D. Cal. Dec. 29, 2011) (the defendants to be served "[could] not be located after diligent endeavor to obtain [their] residential addresses" but could be served through a defendant corporation's domestic agent or counsel); *Laborers District Council Construction Industry Pension Fund v. Sea Ltd.*, 2024 U.S. Dist. LEXIS 31074, at *4 (D. Ariz. Feb. 23, 2024) (the Convention did not apply where "the addresses of the Individual Defendants [we]re unknown" despite the plaintiffs' reasonable and diligent efforts to obtain them)[7]; *LDK Solar*, 2008 WL 2415186, at *4 (domestic service was valid because "LDK trades on the New York Stock Exchange, its subsidiary is located in California, and the remaining defendants are all sophisticated officers [or] directors o[f] the Chinese subsidiary of LDK."); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 562 (C.D. Cal. 2012) (the defendants to be served were all current officers or directors of a defendant company that could be served domestically and plaintiffs did not have their addresses).

### 3.  This is not a "case of urgency" justifying this Court's intervention on account of plaintiffs' failure to comply with the Convention's requirements

There is no "case of urgency" here such that this Court should grant "provisional or protective measures" even though the Convention applies simply because plaintiffs have not attempted service under its provisions.  Hague Service Convention, Art. 15, 20 U.S.T. 361.  It is true that courts have the authority to order such measures, including "special forms of service," in **urgent** circumstances, but this "do[es not] mean that the court and the plaintiff can regularly circumvent [Rule] 4(f)(1).  That interpretation would render the Convention optional, which the Advisory Committee's notes make clear is not the case." *Facebook*, 480 F. Supp. 3d at 980, 986.

Although their Motion is vague (again, plaintiffs do not directly engage with the law and should not be allowed to make up for that shortcoming on reply), plaintiffs

---

[7] Cited in plaintiffs' supplemental authority filed on February 26, 2024.  (Dkt. No. 157.)

appear to make several allegations which they might claim constitute "urgent" circumstances: (1) Specially Appearing Defendants' alleged "efforts to evade or prevent service" (Mot. at 11); (2) service of process in China under the Convention "could result in years of unnecessary delays" (*id*. at 8); and/or (3) requiring plaintiffs to attempt service under the Convention might "enable [Specially Appearing Defendants] to escape liability altogether" (*id*.).

First, Specially Appearing Defendants have not attempted to evade or prevent service of process—rather, ***they provided plaintiffs with their home and business addresses to allow plaintiffs to effect service under the Convention***. (Mot. Ex. H at 42-43.) Plaintiffs' only argument here is that Specially Appearing Defendants have not authorized TuSimple's agent to accept service on their behalf (again, Specially Appearing Defendants are not alleged to have been involved with TuSimple for nearly two years), nor have they authorized their counsel to accept service on their behalf.[8] (Mot. at 8.) This is plainly nothing more than a transparent attempt to circumvent the requirements of the Convention. If courts may regard a defendant's insistence on being served in accordance with the Convention as evidence of an attempt to evade service, thereby immediately justifying alternate service, then the Convention effectively would be rendered ***optional***. That is not the law, and it raises significant due process concerns.

Second, plaintiffs who are unsuccessful in effecting service abroad despite attempting to comply with the Convention's requirements are not left without recourse while their claims sit for years, as plaintiffs imply. On the contrary, if a plaintiff

---

[8] Incidentally, the cases plaintiffs cite to support alternate service on a defendant's domestic counsel are inapposite because the Convention did not apply in those cases or the plaintiff actually showed urgent circumstances. *See Victaulic*, 2020 U.S. Dist. LEXIS 82150, at *3 (plaintiff first attempted service through Convention); *Hawkins*, 2018 WL 1616941, at *1 (same); *Gutierrez*, 2020 U.S. Dist. LEXIS 48512, at *2 (same); *China Integrated Energy*, 285 F.R.D. at 562 (valid domestic service possible); *Cadence Design Sys. V. Syntronic AB*, 2021 U.S. Dist. LEXIS 176743, at *3 (N.D. Cal. 2021) (same); *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co., Ltd.*, 2019 WL 246562, at *1 (S.D. Cal. Jan. 17, 2019) (Chinese Ministry of Justice would not process the service documents because they referenced Taiwan and because one of the parties was located in Taiwan, which is not a Convention signatory).

attempts service through a central authority and receives no response for six months after initiating service, the plaintiff may petition a court to "direct a special method of service" under Rule 4(f)(3).  Fed. R. Civ. P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (f)(3).  *See also Facebook*, 480 F. Supp. 3d. at 981; *Reintegrative Therapy*, 2021 WL 5140195, at *5.  Plaintiffs could have initiated service on Specially Appearing Defendants under the Convention ***months*** ago if they had chosen to follow the proscribed required procedures.  And if they received no answer from China's Central Authority, they could then submit this Motion.  Plaintiffs' decision to ignore the Convention's requirements altogether does not create any "case of urgency" requiring this Court's intervention.  *See Facebook*, 480 F. Supp. 3d at 987 (denying alternate service and requiring a plaintiff to attempt service on a Chinese defendant through China's Central Authority even though it would delay litigation).

Third, as the Supreme Court has stated, "parties that comply with the Convention ultimately may find it easier to enforce their judgments abroad." *Schlunk*, 486 U.S. at 706.  Thus, if plaintiffs wish, as they claim, to prevent Specially Appearing Defendants from escaping liability if they are ultimately found liable for wrongdoing, then they should make every effort to comply with the Convention rather than risk the possibility that any judgment rendered by a United States court would not be recognized by China based on contested service.

Again, plaintiffs' cases cited in the Motion are inapposite because they granted alternate service where there ***were*** urgent circumstances.  *See Fourte*, 2019 WL 246562, at *1 (granting alternate service where the plaintiffs argued that the Chinese Ministry of Justice would not process the service documents because they referenced Taiwan, which China does not recognize, and because one of the parties was located in Taiwan, to which the Convention does not apply because Taiwan is not a signatory);[9] *Cadence*,

_____

[9] *Facebook* discussed the holding in *Fourte*, stating, "[t]he Convention, however, doesn't simply offer options for service abroad—options that plaintiffs can resort to or not at their discretion.  Rather, unless an exception applies, the Convention-delineated methods of service (along with the methods that countries unilaterally and bilaterally

2021 U.S. Dist. LEXIS 176743, at *3 (granting alternate service only where the plaintiffs alleged the defendant entity to be served, together with other defendants that had already been served, were "alter egos, act as a single enterprise, have overlapping officers and employees, commingle their assets through intercompany accounts, and are represented by the same counsel").  Plaintiffs allege no such circumstances here.[10]

\*\*\*

Consistent with its holdings in *Reintegrative Therapy* and *Victaulic*, the Court should not grant alternate service until plaintiffs have first attempted to effect service on Specially Appearing Defendants per the Convention's requirements.  Were the Court to hold otherwise, it would be the first to do so where (1) a plaintiff made no effort to comply with the Convention, (2) there are no exceptions such that the Convention does not apply, and (3) there are no urgent circumstances requiring Court intervention.

### A.    The PSLRA Discovery Stay Should Remain in Effect Because Plaintiffs Fail to Show that Discovery Is Necessary to Preserve Evidence or Prevent Undue Prejudice

Plaintiffs have not shown the required "exceptional circumstances" demonstrating that "particularized" discovery is necessary to preserve evidence or prevent undue prejudice.  *SG Cowen Sec. Corp.,* 189 F. 3d at 911–12; *Powers v. Eichen*, 961 F.Supp. 233, 235 (S.D. Cal. 1997); *Chan v. ArcSoft, Inc.*, 2020 WL 13891272, at *16 (N.D. Cal. Sept. 16, 2020).

---

agree to under Articles 11 and 19) are exclusive."  480 F. Supp. at 982–83.

[10] Plaintiffs claim that Specially Appearing Defendants purportedly accepted service on TuSimple's agent in derivative litigation pending in Delaware Chancery Court and then imply that this should justify alternate service in this case. (Mot. at 4 n.7.)  However, plaintiffs provide no support for the proposition that being served in one case, in an entirely different forum, justifies alternate service in another.  More importantly, plaintiffs neglect to mention that Specially Appearing Defendants were served pursuant to 10 Del. C. § 3114. (Mot. Ex. J at 57.)  10 Del. C. § 3114(a) provides that any director who accepts appointment to the board of a Delaware corporation is deemed to have consented to service on the registered agent of that corporation in proceedings brought in Delaware "***whether or not the person continues to serve as such director*** . . . ."  Thus, service was valid on Specially Appearing Defendants under Delaware law as former directors regardless of whether Specially Appearing Defendants "accepted" such service.  No comparable law exists in California or under Federal law.

Plaintiffs purport to seek a lift of the discovery stay to "identify whether Defendants Chao and Zhang are complying with their discovery obligations." (Mot. at 12.) Specifically, plaintiffs "seek to propound interrogatories and requests for production" which they attached to their Motion as Exhibits L and M. However, to support their requested relief, plaintiffs merely argue in conclusory fashion that discovery is necessary to preserve evidence and prevent undue prejudice "[g]iven Defendants Chao's and Zhang's efforts to evade or prevent service of process, the ongoing U.S. criminal investigations related to this matter [], and the fact that TuSimple is rapidly winding down its U.S. operations . . . ." (Mot. at 11.) None of these reasons is grounded in facts, nor do they support lifting the discovery stay.

First, as described above (*supra* at 14), Specially Appearing Defendants' desire to be served in accordance with the Convention is not an attempt to evade service.

Second, plaintiffs concede that the alleged FBI and SEC investigations do not target Specially Appearing Defendants but are instead focused on TuSimple and Defendants Hou and Chen. (*See, e.g.*, Compl. ¶¶ 17, 99, 109–11, 286.) In any event, plaintiffs do not even attempt to explain precisely why these ongoing investigations make discovery of Specially Appearing Defendants necessary to preserve evidence or prevent undue prejudice.

Third, and similarly, plaintiffs fail to clarify exactly why TuSimple winding down its U.S. operations and moving to China makes discovery necessary to preserve evidence or prevent undue prejudice, or how that relates to Specially Appearing Defendants, who are no longer involved with TuSimple.

At bottom, plaintiffs allege no facts whatsoever, much less "exceptional" ones, indicating that lifting the mandatory PSLRA stay is necessary to prevent undue prejudice, particularly since Specially Appearing Defendants have not been affiliated with TuSimple for nearly two years and there is zero indication that Specially Appearing

Defendants are ***not*** complying with their discovery obligations.[11]   *See, e.g.*, *In re Rambus, Inc. Sec. Litig.*, 2007 WL 1430047, at \*1 (N.D. Cal. May 14, 2007) (maintaining stay where the plaintiff did not "point to any evidence or indication of spoliation").[12]

***

Accordingly, the Court should maintain the PSLRA stay of discovery.

## V.   CONCLUSION

For the foregoing reasons, Specially Appearing Defendants respectfully request that the Court deny plaintiffs' Motion in its entirety.

Dated:  March 18, 2024                    COOLEY LLP

/s/ Ryan E. Blair
Ryan E. Blair

*Attorneys for Specially Appearing Defendants*

---

[11] To the contrary, the fact that Specially Appearing Defendants have appeared in derivative litigation pending in Delaware Chancery Court, a case that plaintiffs admit overlaps with the issues and facts in the present action (Mot. at 4 n.7), strongly suggests that Specially Appearing Defendants are aware of and complying with their discovery obligations as to these issues and facts.

[12] Additionally, the discovery plaintiffs seek is not sufficiently particularized and is far too broad. *See, e.g.*, *M & M Hart Living Tr. v. Glob. Eagle Entm't, Inc.*, 2017 WL 5642326, at \*3 (C.D. Cal. Aug. 18, 2017) ("courts often deny a plaintiff's request to lift the PSLRA discovery stay if the discovery request is broad"). Instead of merely seeking "assurances" that Specially Appearing Defendants "have been apprised of their discovery obligations" (Mot. at 11), plaintiffs instead seek a full accounting of TuSimple's preservation efforts to date regarding Specially Appearing Defendants. (Mot. Exs. L and M.) None of plaintiffs' cases support the kind of extensive, disfavored "discovery on discovery" plaintiffs seek. *See, e.g.*, *Vezzetti v. REMEC, Inc.*, 2001 WL 37118900, at \*1 (S.D. Cal. July 23, 2001) (granting plaintiffs permission ***only*** to issue preservation subpoenas); *In re Tesla, Inc. Sec. Litig.*, 2019 WL 210956, at \*1 (N.D. Cal. Jan. 15, 2019) (same); *In re Nat'l Century Fin. Enterprises, Inc. Fin. Inv. Litig.*, 347 F. Supp. 2d 538, 542 (S.D. Ohio 2004) (same). *See also Watkins v. Hireright, Inc.*, 2013 WL 10448882, at \*3 (S.D. Cal. Nov. 18, 2013) (a party "is not entitled to independently assess the adequacy of [the other party's] preservation.").