MICHAEL C. TU (State Bar No. 186793)
*mctu@cooley.com*
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, California 90071
Telephone: (213) 561-3250
Facsimile:  (213) 561-3244

RYAN E. BLAIR (State Bar No. 246724)
*rblair@cooley.com*
COOLEY LLP
10265 Science Center Drive
San Diego, California 92121
Telephone: (858) 550-6161
Facsimile:  (858) 550-6420

*Attorneys for Specially Appearing Defendants*
*Charles Guowei Chao and Bonnie Yi Zhang*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, INDIANA PUBLIC RETIREMENT SYSTEM, ROBERT MILLER, MICHELLE POIRIER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC., GUOWEI "CHARLES" CHAO, XIAODI HOU, MO CHEN, BONNIE YI ZHANG, CHENG LU, PATRICK DILLON, BRAD BUSS, KAREN C. FRANCIS, MORGAN STANLEY & CO. LLC, CITIGROUP GLOBAL MARKETS, INC., J.P. MORGAN SECURITIES LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, CREDIT SUISSE SECURITIES (USA) LLC, NOMURA SECURITIES INTERNATIONAL, INC., RBC CAPITAL MARKETS, LLC, NEEDHAM & COMPANY, LLC, OPPENHEIMER & CO., INC., PIPER SANDLER & CO., ROBERT W. BAIRD & CO. INCORPORATED, and VALUABLE CAPITAL LIMITED,<br><br>Defendants. | Case No.: 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB)<br><br>**SPECIALLY APPEARING**<br><br>**REPLY IN SUPPORT OF MOTION TO QUASH SERVICE AND TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) AND 12(b)(2)**<br><br>Judge: Hon. Roger T. Benitez<br>Courtroom: 5A<br><br>Date:  April 1, 2024<br>Time:  10:30 a.m. |

COOLEY LLP
ATTORNEYS AT LAW

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 2

    A.   The Court Should Grant the Motion to Quash Because Plaintiffs' Arguments Are Entirely Without Merit and Their Cited Cases Contradict Those Arguments ......................................................... 2

        1.   Specially Appearing Defendants did not "accept" service in Delaware via TuSimple's agent ............................................... 2

        2.   The fact that service of process was valid in litigation in Delaware does not mean service of process is valid in litigation in California ............................................................. 4

        3.   All of plaintiffs' cited cases support quashing service ................... 5

    B.   Plaintiffs' Conclusory Allegations Fail to Establish Personal Jurisdiction ......................................................................... 8

        1.   Plaintiffs do not and cannot supplement their conclusory allegations against Specially Appearing Defendants ...................... 8

        2.   Plaintiffs' opposition relies on misleading factual inferences ........ 9

III. CONCLUSION ............................................................................................. 10

COOLEY LLP
ATTORNEYS AT LAW

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986) ...................................................................................4

*Brown v. China Integrated Energy, Inc.*,
285 F.R.D. 560 (C.D. Cal. 2012)..............................................................................7

*In re Countrywide*,
2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) ...........................................................8

*Direct Mail Specialists v. Eclat Computerized Techs., Inc.*,
840 F.2d 685 (9th Cir. 1988) ...................................................................................4

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)..................................................................................................9

*ePlus Tech., Inc. v. Aboud*,
155 F. Supp. 2d 692 (E.D. Va. 2001) .......................................................................7

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020).....................................................................6

*Gavrieli Brands, LLC v. Xiamen Huaxi Technology Co., Ltd.*,
Case No. 2:22-cv-05924, Dkt. Nos. 23, 24, 26 (Aug. 19, 2022 C.D. Cal.).......................................................................................................................8

*In re Hayes Lemmerz Int'l, Inc. Equity Secs. Litig.*,
271 F. Supp. 2d 1007 (E.D. Mich. 2007) ................................................................6

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
2024 U.S. Dist. LEXIS 31074 (D. Ariz. 2024) .......................................................5

*In re LDK Solar Sec. Litig.*,
2008 WL 2415186 (N.D. Cal. June 12, 2008)...................................................5, 6, 7

*In re Oasis Focus Fund, LP*,
Case No. 3:23-mc-80150, Dkt. No. 15 (July 5, 2023 N.D. Cal.) ............................3

*Reintegrative Therapy Ass'n v. Kinitz*,
2021 U.S. Dist. LEXIS 213651 (S.D. Cal. Nov. 4, 2021)....................................6, 7

# TABLE OF AUTHORITIES
## continued

**Page(s)**

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
2011 U.S. Dist. LEXIS 71269 (N.D. Cal. 2011) ...................................................7

*Rio Props. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ...............................................................................5

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) .......................................................................9

*SEC v. Jammin Java Corp.*,
2016 U.S. Dist. LEXIS 184773 (C.D. Cal 2016) ..................................................9

*Smart Study Co., Ltd. v. Acuteye-Us*,
620 F. Supp. 3d 1382 (S.D.N.Y. 2022) .................................................................6

*Swartz v. KPMG LLP*,
476 F. 3d 756 (9th Cir. 2007) ................................................................................9

*United States SEC v. Gutierrez*,
2020 U.S. Dist. LEXIS 48512 (S.D. Cal. 2020)....................................................7

*Victaulic Co. v. Allied Rubber & Gasket Co.*,
2020 U.S. Dist. LEXIS 82150 (S.D. Cal. 2020)...............................................6, 7

**Rules**

Fed. R. Civ. P.
4 .....................................................................................................................*passim*
12 ............................................................................................................................2

**Statutes**

10 Del. C.
§ 3114 ..................................................................................................................3, 4

**Other Authorities**

U.S. Const. art. VI.....................................................................................................1

Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 999–1000
(2017)......................................................................................................................6

## I.    INTRODUCTION

Even were the Court to accept plaintiffs' xenophobic assertions that China is a foe of the United States and does not honor its obligations under international treaty and law, that still would not give plaintiffs the right to ignore the requirements of the Hague Service Convention (the "Convention"), a ratified, multilateral, self-executing treaty which is the "law of the land" (U.S. Const. art. VI) and agreed to by the United States and over 80 other nations, including China.  The *United States* is still a nation of laws, and our courts—including this one—should and *must* enforce those laws.

Plaintiffs' Opposition[1] engages in a host of questionable tactics, including twisting facts and grossly misrepresenting case law.  But none of that changes that the Convention applies and, because it applies, plaintiffs *must* adhere to its requirements under Federal Rule of Civil Procedure ("Rule") 4(f)(1).  Precedent from the Supreme Court, the Ninth Circuit, and this very Court confirms this.  Plaintiffs have not done so, nor have they given any reason for not doing so.  Indeed, it is baffling that they have not even attempted to serve Mr. Chao and Ms. Zhang ("Specially Appearing Defendants[2]") through China's Central Authority, if only to cover their bases, despite admittedly possessing Specially Appearing Defendants' work and home addresses for *months*.[3]  In short, nothing in the Opposition demonstrates compliance with the service requirements of Rule 4 or the Convention.

---

[1] "Opposition" or "Opp. at __" refers to citations to Plaintiffs' Opposition to Defendants Chao's & Zhang's Motion to Quash Service and Motion to Dismiss (Dkt. No. 168).
[2] Specially Appearing Defendants previously requested the Court's permission to make a special appearance for the limited purpose of asserting arguments related to insufficient service and lack of jurisdiction. (Dkt. No. 147-1 at 1 n.1.)
[3] Plaintiffs claim they "began requesting Chao's and Zhang's addresses from TuSimple's counsel on November 1, 2023" and assert that it "strains credulity that Plaintiffs would, without reason, refuse an offer [by Specially Appearing Defendants' counsel] to provide addresses for defendants they had attempted to serve since October 2, 2023." (Opp. at 4.)  Specially Appearing Defendants invite the Court to read the emails in question. (Dkt. No. 148-11.)  What *really* strains credulity is that plaintiffs would, after receiving the work and home addresses which would allow them to effect service (as they claim to have sought to do since October 2023), *do nothing at all with those addresses* to complete that service.

Furthermore, as argued in their opening brief (Dkt. No. 147-1), there are significant issues with this Court exercising jurisdiction over Specially Appearing Defendants. And plaintiffs *still* offer no particularized facts to bolster the conclusory allegations set forth in their Complaint. Faced with that reality, plaintiffs instead attempt to poison the well regarding both service and jurisdiction by making assertions that are not alleged in the Complaint and/or are outright inventions by plaintiffs and their counsel.

The Court should quash the purported service of the Complaint and/or dismiss plaintiffs' claims against Specially Appearing Defendants for lack of jurisdiction.[4]

## II. ARGUMENT

### A. The Court Should Grant the Motion to Quash Because Plaintiffs' Arguments Are Entirely Without Merit and Their Cited Cases Contradict Those Arguments

Plaintiffs' arguments against quashing service[5] are insufficient for at least three reasons: (1) Specially Appearing Defendants did not, as plaintiffs claim, "authorize[] TuSimple's registered agent to accept service of process on their behalf" (Opp. at 6); (2) that Specially Appearing Defendants were served in derivative litigation in Delaware via TuSimple's registered agent does not mean they must accept service in this litigation via the same method; and (3) *all* of plaintiffs' cases cited in their Opposition demonstrate precisely why their arguments fail.

#### 1. Specially Appearing Defendants did not "accept" service in Delaware via TuSimple's agent

Plaintiffs' assertion that Specially Appearing Defendants "previously authorized

---

[4] Specially Appearing Defendants brought their Rule 12(b)(2) motion concurrently with their motion to quash service because their jurisdictional arguments would otherwise have been waived. (Dkt. No. 147-1 at 3 n.3.) Assuming the Court quashes service here, it need not rule on the jurisdictional issues at this time. Once validly served, Specially Appearing Defendants would then intend to file a single motion including all applicable grounds for dismissal on the then-operative complaint, if appropriate.
[5] Plaintiffs argue, in the alternative, that the Court should authorize alternate service under Rule 4(f)(3). Specially Appearing Defendants fully briefed their opposition to this request at Dkt. No. 169.

TuSimple's registered agent to accept service of process on their behalf" and that "[t]his alone is sufficient reason to deny their motion to quash" (Opp. at 6) is both factually inaccurate and legally irrelevant. Plaintiffs refer to derivative litigation currently pending in Delaware Chancery Court, but tellingly fail to inform the Court that Specially Appearing Defendants were served under 10 Del. C. § 3114, which provides that directors of Delaware companies automatically consent to service on the company's registered agent for "all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation" regardless of whether that individual is a former director. 10 Del. C. § 3114(a).

Thus, Specially Appearing Defendants did not "accept" service in Delaware, as plaintiffs misleadingly claim.[6] Rather, service was ***automatically*** deemed valid under an express provision of Delaware law because of their former affiliation with TuSimple (a Delaware corporation) as board members. Their "acceptance" of service—even their knowledge of that litigation—was immaterial.[7]

Put simply, Specially Appearing Defendants' refusal to accept service via TuSimple's agent in ***this*** litigation is in no way "inconsistent with their acceptance of service of the complaint on their behalf" in the ***Delaware*** derivative litigation. (Opp. at 1.) Plaintiffs have not (and cannot) cite any similar provisions under California or federal law indicating otherwise.

---

[6] Plaintiffs' additional claims that Mr. Chao "owns" and uses "a luxury New York apartment as a personal residence" and that he "accepted" personal service there in another case (Opp. at 5, 22 n.27) are entirely unsupported. The only "evidence" plaintiffs offer for these made-up facts is an affidavit showing personal service was made on Mr. Chao at or near an address in New York City on June 3, 2022, ***nearly two years ago***. (Dkt. No. 168-3.) Indeed, Mr. Chao is fighting personal jurisdiction and the service of deposition subpoenas in that and other related cases brought by a plaintiff who is unsuccessfully forum shopping extensively across the country. ***See In re Oasis Focus Fund, LP***, Case No. 3:23-mc-80150, Dkt. No. 15 (July 5, 2023 N.D. Cal.). Furthermore, while such ***personal*** service on Mr. Chao was valid under New York law and thus satisfied Rule 4(e)—that is not so in this litigation. (***See supra*** at II.A.2.) Service in that litigation is therefore irrelevant here.

[7] Thus, the "potential due process problem" that plaintiffs admit would be presented "had Chao and Zhang not accepted service of process through TuSimple's registered agent in the Derivative Action" still exists. (Opp. at 6–7.)

**2.    The fact that service of process was valid in litigation in Delaware does not mean service of process is valid in litigation in California**

Plaintiffs' next request that the Court "rule that service via TuSimple's registered agent on December 13, 2023 was effective as to Chao and Zhang" (Opp. at 9–10) must also be denied because plaintiffs do not even attempt to specify how such service satisfies the requirements of Rule 4, nor do they cite a single case in support thereof.

Although plaintiffs do not say so, Specially Appearing Defendants presume plaintiffs suggest that such service satisfies Rule 4(e), which governs the service of individuals within the United States, by complying with the state of Delaware's service laws.  Fed. R. Civ. P. 4(e)(1).[8]  Plaintiffs' attempt to play coy with the Court is unsurprising given that the Delaware law pursuant to which Specially Appearing Defendants were served in the Delaware derivative litigation[9] specifically notes that former directors of Delaware companies are only "deemed [] to have consented to the appointment of the registered agent of such corporation" for service of process "***in all civil actions or proceedings brought in this State*** by or on behalf of, or against such corporation . . . whether or not the person continues to serve as such director . . . at the time suit is commenced."  10 Del. C. § 3114(a) (emphasis added).  Thus, the automatic consent provision of this Delaware statute by its express terms applies only to litigation brought ***in Delaware***—it cannot be used for valid service in litigation elsewhere.

Plaintiffs facetiously claim that Specially Appearing Defendants never explain "why this Court should quash service *via* the exact same method they accepted in the [Delaware litigation]."  (Opp. at 2.)  As plaintiffs well know, the reason is that service in Delaware under Delaware law regarding Delaware litigation satisfies Rule 4(e), while

---

[8] Furthermore, actual notice of pending litigation does not constitute proper service. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) ("neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction"); *see also Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Rule 4].").

[9] *See* Dkt. No. 148-13 at 57 ("by service pursuant to 10 Del. C. Sec. 3114 upon TuSimple Holdings, Inc.").

service in Delaware under Delaware law regarding litigation in *California* does not.[10]

### 3.   All of plaintiffs' cited cases support quashing service

*All* of the cases cited in the Opposition can be grouped into two categories: (1) cases they use to rebut Specially Appearing Defendants' argument that plaintiffs must first attempt service under the Convention before seeking alternate service from the Court; and (2) cases they use to argue that the Convention does not prohibit service on a foreign defendant through the defendant's counsel in the United States. The cases in the first category do not support plaintiffs' position and those in the second category are irrelevant.

*Compliance with the Convention*: Each of plaintiffs' cases in the first category unambiguously demonstrate that, if the Convention applies, plaintiffs must at least first attempt to comply with its service requirements.

For example, *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 U.S. Dist. LEXIS 31074 (D. Ariz. 2024), granted alternate service only because *the Convention did not apply* since the plaintiffs could not learn the addresses of the defendants despite their reasonable and diligent efforts to obtain them. *Id*. at *3–4. Plaintiffs here have had the Specially Appearing Defendants' addresses for months. Thus, the Convention applies. *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002), likewise found that *the Convention did not apply* because Costa Rica was not a signatory nation. *Rio* did, however, note that had the Convention applied, "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of" the Convention. *Id*. at 1015 n.4. Again, the Convention *does* apply here. *In re LDK Solar Sec. Litig.*, 2008 WL 2415186 (N.D. Cal. June 12, 2008), is inapposite because the individual defendants were all *current* officers and/or directors of the defendant company and could be served domestically via their company's subsidiary's office. *Id*.

---

[10] Plaintiffs brazenly accuse Specially Appearing Defendants' counsel of violations of Rule 11. (Opp. at 4 n.5.) If plaintiffs' counsel is searching for Rule 11 violations, they need only look in the mirror. Plaintiffs' omission of the plain language of the Delaware statute in question can only have been intentional and designed to mislead the Court.

at *4. *LDK* also specifically cited the advisory committee's notes that it could use Rule 4(f)(3) to allow a "special method of service" in cases of "urgency." *Id.* at *2. As argued in separate briefing (Dkt. No. 169), there is no such urgency here.[11] More importantly, plaintiffs wholly ignore *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977 (N.D. Cal. 2020), which is much more recent and in the same district as *LDK*. *Facebook* clearly held that "when the Convention applies and no exception is applicable, the plaintiff cannot invoke [Rule] 4(f)(3)." *Id.* at 986; *see also* Maggie Gardner, *Parochial Procedure*, 69 Stan. L. Rev. 941, 999–1000 (2017) ("Rule 4(f)(3) was intended as a safety valve available only when the Convention, by its own terms, does not apply.").

Plaintiffs also misunderstand the Court's holdings in *Victaulic Co. v. Allied Rubber & Gasket Co.*, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. 2020) (Benitez, J.), and *Reintegrative Therapy Ass'n v. Kinitz*, 2021 U.S. Dist. LEXIS 213651 (S.D. Cal. Nov. 4, 2021) (Benitez, J.). The Court only granted alternate service in *Victaulic* because the plaintiff *did* attempt to serve the defendants under the Convention via China's Central Authority but could not complete service for almost three years against the backdrop of the challenges resulting from COVID-19, which further complicated

---

[11] Plaintiffs appear to make an "urgency" claim here slightly different than the one in their separate request for alternate service, although they do not clearly state this, by (1) citing TuSimple's alleged "rapid divestment from the United States" (Opp. at 8); (2) claiming Specially Appearing Defendants have "absconded" to China (*id*. at 1); and (3) asserting a desire to "avoid needless delays in litigation" (*id*. at 8). But plaintiffs still never specify how Specially Appearing Defendants, who have not been involved with TuSimple for nearly two years, factor into considerations regarding TuSimple's "rapid divestment." Further, plaintiffs later admit that Mr. Chao did not "abscond" from the United States but, in fact, "permanently return[ed] to China [in] 1999"—*25 years ago*. (*Id*. at 5.) Finally, litigation delays do not absolve plaintiffs of their obligations under the Convention. *See Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1402 (S.D.N.Y. 2022) (denying default judgment for failure to serve defendant under the Convention because courts "may not ignore" the text of Rule 4, the Hague Convention, and Supreme Court precedent "in order to make service more efficient for Plaintiff" or in the name of "concrete case management concerns"); *In re Hayes Lemmerz Int'l, Inc. Equity Secs. Litig.*, 271 F. Supp. 2d 1007, 1032 (E.D. Mich. 2007) (requiring compliance with the Convention's service requirements notwithstanding "the Court [being] sympathetic to Plaintiffs' argument that the German Defendants have actual notice of the lawsuit against them and that following the Hague Convention is a lengthy, time-consuming process").

service efforts in China.  2020 U.S. Dist. LEXIS 82150, at *3–5, 10.  Plaintiffs here have made no such effort.  And the Court held in *Reintegrative Therapy* that "Plaintiffs' attempts to serve [defendant] are deficient . . . given Plaintiffs have not ***first*** attempted service on Canada's Central Authority" in accordance with the Convention.  2021 U.S. Dist. LEXIS 213651, at *9 (emphasis added).[12]  That is ***precisely*** the situation here, and Specially Appearing Defendants' ask nothing more than for the Court to require plaintiffs to follow the exact procedure the Court required in *Reintegrative Therapy*.[13]

*Service on counsel*: Specially Appearing Defendants nowhere argue that service on their domestic counsel can ***never*** be granted as an alternative means of service—however, it is clear that the Court must require plaintiffs to adhere to the Convention's service requirements ***before*** it considers such alternative service.  Thus, plaintiffs' citation to the second category of cases, the so-called "mountain of precedent" (Opp. at 7) allowing service on a foreign defendant through domestic counsel is a straw man argument.  Even so, plaintiffs' cases still do not support their position. *See United States SEC v. Gutierrez*, 2020 U.S. Dist. LEXIS 48512, at *4 (S.D. Cal. 2020) (granting alternate service only because the plaintiff had ***already attempted to comply with the Convention***); *Victaulic*, 2020 U.S. Dist. LEXIS 82150, at *9 (same); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565 (C.D. Cal. 2012) (the ***Convention did not apply*** where defendants could be served domestically and plaintiffs did not have their foreign addresses); *LDK Solar*, 2008 U.S. Dist. LEXIS 90702, at *4 (***domestic*** service could be validly made on ***current*** officers and directors); *Richmond Techs., Inc. v.*

---

[12] The Court also cited *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 701 (E.D. Va. 2001), which held that "[t]he lesson of the result reached here is that a party seeking to serve process in foreign countries that are signatories to the Hague Convention should make use of the Central Authority designated by that country."

[13] Plaintiffs' attempt to spin the Court's holding in *Reintegrative Therapy* as favorable to their position is absurd.  Plaintiffs essentially urge the Court to disregard the Convention (and prior precedent) because there is "concern among the international law community" that China is not efficiently conducting service under the Convention, unlike Canada in *Reintegrative Therapy*. (Opp. at 9.)  Not only is that a position which neither *Reintegrative Therapy* nor *Victaulic* support, but its logical extension would have disastrous consequences for international service of process, not just between the United States and China but also between the United States and other nations.

*Aumtech Bus. Sols.*, 2011 U.S. Dist. LEXIS 71269, at * (N.D. Cal. 2011) (granting alternate service only where the individual defendants were ***current*** officers, directors, or founders who could be served ***domestically*** and because the plaintiff's "claims of urgency ha[d] merit.").[14]

> **B.    Plaintiffs' Conclusory Allegations Fail to Establish Personal Jurisdiction**

Assuming the Court quashes service and requires plaintiffs to adhere to the Convention, it need not rule on the jurisdictional issues at this time. (*See supra* at 2 n.4.) Indeed, these issues would be better determined after Specially Appearing Defendants are validly served in this case.   Nevertheless, as outlined in their opening brief (Dkt. No. 147-1 at 9–16), there are significant issues with this Court exercising jurisdiction over Specially Appearing Defendants.    Rather than meaningfully responding to these issues, plaintiffs double down on their conclusory allegations set forth in their Complaint and invent new unsupported and ***unpled*** allegations.

> **1.    Plaintiffs do not and cannot supplement their conclusory allegations against Specially Appearing Defendants**

Plaintiffs' Opposition offers no new ***particularized*** facts or allegations, and thus, nothing in the Opposition negates the arguments made in Specially Appearing Defendants' opening brief.  Instead, plaintiffs have taken to misconstruing their original (and conclusory) allegations.

It is undisputed that courts in the Ninth Circuit have consistently found that conclusory allegations are insufficient to establish personal jurisdiction. *See In re Countrywide,* 2012 WL 1097244, at *14 (C.D. Cal. Mar. 9, 2012). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden" to overcome a

---

[14] In any event, post-COVID, and contrary to plaintiffs' suggestion, the Chinese Central Authority ***is*** serving process in accordance with the Convention.  *See, e.g.*, *Gavrieli Brands, LLC v. Xiamen Huaxi Technology Co., Ltd.*, Case No. 2:22-cv-05924, Dkt. Nos. 23, 24, 26 (Aug. 19, 2022 C.D. Cal.)

12(b)(2) motion.  *Swartz v. KPMG LLP,* 476 F. 3d 756, 766 (9th Cir. 2007); *see also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) ("The plaintiffs include [the foreign defendant] in their broad group pleadings and allege that he acted as a control person, but they fail to note a single specific act taken by [the foreign defendant] directed at the U.S.").

Yet "bare bones" assertions are all that have been provided.  Plaintiffs' only allegation supporting that Specially Appearing Defendants "purposefully direct[ed]" their activities at the forum state is that Specially Appearing Defendants signed SEC filings, as all directors do.[15]  (Opp. at 12–13.)

Further, plaintiffs incorrectly attempt to conflate Specially Appearing Defendant Chao with Sun Dream, Inc. ("Sun Dream"), an entity with which Mr. Chao is affiliated.  Plaintiffs attribute the large stock sale following TuSimple's initial public offering to Mr. Chao as an individual.  (Opp. at 2 n.3, 3.)  However, this sale was made by Sun Dream,[16] and it is well-established that a sale by an entity may not necessarily be attributed to an individual.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–77 (2003) ("[a] basic tenet of American corporate law is that the corporation and its shareholders are distinct entities" and explaining that "[c]ontrol and ownership are distinct concepts"); *SEC v. Jammin Java Corp.*, 2016 U.S. Dist. LEXIS 184773, at *19 (C.D. Cal 2016) ("The conclusory allegation that the owner or officer's actions are coexistent with that of the owned or employing entity is insufficient.").  Plaintiffs wholly ignore the fact that Mr. Chao is not Sun Dream.

### 2. Plaintiffs' opposition relies on misleading factual inferences

To distract from the reality that their allegations against Specially Appearing

---

[15] Allegations against both Specially Appearing Defendants are entirely devoid of specifics, and plaintiffs indiscriminately tack the Specially Appearing Defendants onto their allegations against the other named defendants, and each other, throughout their pleadings.  However, it is particularly notable that facts regarding Ms. Zhang are virtually nonexistent.

[16] *See, e.g.,* TuSimple Holdings Inc., Statement of Changes in Beneficial Ownership (Form 4, dated Apr. 21, 2021), available at https://www.sec.gov/Archives/edgar/data/1823593/000089924321016587/xslF345X03/doc4.xml).

Defendants are threadbare, plaintiffs include new *unpled* facts in their Opposition that are outright inventions of plaintiffs and their counsel.

First, the Opposition states that Specially Appearing Defendants have "absconded" to China. (Opp. at 1.) However, plaintiffs later directly contradict their own assertion by admitting that Mr. Chao "permanently return[ed]" to China in 1999, *25 years ago*. (*Id*. at 5; *see supra* at 6 n.11.) Further, the Opposition alleges that Ms. Zhang was only present in the United States from May 2005 to August 2007, *nearly 20 years ago*. (*Id*. at 6 n.9.)

Second, plaintiffs argue that Mr. Chao's statement that he does not "maintain a residence of any kind anywhere in the United States" is false. (*Id*. at 4 (citing Chao Decl. ¶5).) But plaintiffs' only "evidence" for that assertion is that Mr. Chao was served in New York City in litigation pending in the Southern District of New York. (*Id*. at 4–5.) How plaintiffs twist that into an elaborate mischaracterization that Mr. Chao "owns a luxury apartment in New York City" which he uses as a "personal residence" is as equally shocking as its lack of evidentiary support. (*Id*. at 5, 22 n.27.)

Finally, plaintiffs claim that, because Mr. Chao previously gave presentations in English, Mr. Chao's statement that "Mandarin Chinese[] . . . is the language that I primarily speak, read, and understand" was somehow misleading. (*Id*. at 5 (citing Chao Decl. ¶4)). How so? The fact that Mr. Chao participated in presentations conducted in English numerous years ago in no way negates his statement that Mandarin is his native and preferred language. Put simply, there is nothing "misleading" about Mr. Chao's preference to communicate in Mandarin, his native language.

## III.  CONCLUSION

For the foregoing reasons, Specially Appearing Defendants request that the Court quash the purported service of the Complaint, or in the alternative, dismiss plaintiffs' claims against Specially Appearing Defendants for lack of jurisdiction.

Dated:  March 25, 2024                    COOLEY LLP


                                          */s/ Ryan E. Blair*
                                          Ryan E. Blair

                                          *Attorneys for Specially Appearing*
                                          *Defendants*