ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
LUCAS F. OLTS (234843)
JENNIFER N. CARINGAL (286197)
HEATHER G. GEIGER (322937)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
lolts@rgrdlaw.com
jcaringal@rgrdlaw.com
hgeiger@rgrdlaw.com
sjohnson@rgrdlaw.com

KAHN SWICK & FOTI, LLP
RAMZI ABADOU (222567)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TUSIMPLE HOLDINGS, INC., et al., <br><br> Defendants. | Case No. 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB) <br><br> CLASS ACTION <br><br> REPLY IN FURTHER SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED EXPEDITED DISCOVERY <br><br> Judge:  Mag. Judge Michael S. Berg <br> Courtroom:  2C |

**[REDACTED]**

4882-2664-2630.v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. ARGUMENT ............................................................................................. 3

    A. *Grupo Mexicano* Is Not Controlling Here ............................................ 3

    B. Plaintiffs Will Prevail on Their Equitable Claims ................................ 4

    C. Plaintiffs and the Class Face a Likelihood of Irreparable Harm .......... 6

    D. The Balance of Hardships and Public Interest Tips Decidedly in Favor of a TRO ................................................................................... 7

    E. Plaintiffs' Discovery Is Warranted and Sufficiently Particularized ........................................................................................ 8

    F. A Bond Is Not Required ...................................................................... 9

III. CONCLUSION ....................................................................................... 10

4882-2664-2630.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
321 F.3d 878 (9th Cir. 2003) .................................................................................. 10

*Dan D. Peterson Living Tr. Dated Apr. 2, 2009 v. Fyve LLC*,
2023 WL 7282295 (D. Ariz. Nov. 3, 2023) .............................................................. 9

*Deckert v. Indep. Shares Corp.*,
311 U.S. 282 (1940) ................................................................................................. 3

*Duggs v. Eby*,
2014 WL 5035006 (N.D. Cal. Oct. 8, 2014) ........................................................... 4

*Gorbach v. Reno*,
219 F.3d 1087 (9th Cir. 2000) ................................................................................. 9

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999) ............................................................................................ 1, 3

*Gustafson v. Alloyd Co., Inc.*,
513 U.S. 561 (1995) ................................................................................................. 5

*In re Century Aluminum Co. Sec. Litig.*,
749 F. Supp. 2d 964 (N.D. Cal. 2010) .................................................................... 5

*In re Focus Media Inc.*,
387 F.3d 1077 (9th Cir. 2004) ................................................................................. 3

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
2006 WL 3456666 (D. Minn. Nov. 29, 2006) ........................................................ 10

*JBF Interlude 2009 Ltd, v. Quibi Holdings LLC*,
2020 WL 9311954 (C.D. Cal. Dec. 30, 2020) ........................................................ 4

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ......................................................................... 3, 4, 9

*Kokka & Backus, PC v. Bloch*,
2010 WL 458909 (N.D. Cal. Feb. 4, 2010) ............................................................ 4

4882-2664-2630.v1

**Page**

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
   917 F. Supp. 717 (S.D. Cal. 1996) ..................................................................... 9

*Newby v. Enron Corp.*,
   188 F. Supp. 2d 684 (S.D. Tex. 2002)............................................................. 3, 4

*Oh v. Sunvalleytek Int'l, Inc.*,
   2023 WL 3549523 (N.D. Cal. May 17, 2023) ................................................. 10

*Panyanouvong v. Aphay*,
   2014 WL 2986507 (W.D. Wash. July 1, 2014)................................................ 10

*People of State of Cal. ex rel. Van De Kamp v.
   Tahoe Reg'l Plan. Agency*,
   766 F.2d 1319 (9th Cir. 1985), *amended*,
   775 F.2d 998 (9th Cir. 1985)........................................................................... 10

*Primo v. Pac. Biosciences of Cal., Inc.*,
   940 F. Supp. 2d 1105 (N.D. Cal. 2013) ............................................................. 4

*Rondeau v. Mosinee Paper Corp.*,
   422 U.S. 49 (1975) ............................................................................................. 3

*S&G Labs Haw., LLC v. Graves*,
   2021 WL 4927494 (D. Haw. Oct. 21, 2021)...................................................... 8

*Schaffer v. Evolving Sys., Inc.*,
   29 F. Supp. 2d 1213 (D. Colo. 1998) ................................................................ 4

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ....................................................................................... 2, 4

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*,
   189 F.3d 909 (9th Cir. 1999).............................................................................. 9

*Shell Offshore Inc. v. Greenpeace, Inc.*,
   815 F.3d 623 (9th Cir. 2016).............................................................................. 8

*Takiguchi v. MRI Int'l, Inc.*,
   2013 WL 5150444 (D. Nev. Sept. 12, 2013) ................................................... 10

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-
00282-BEN-MSB)

4882-2664-2630.v1

**Page**

*TAP Worldwide, LLC v. Becker*,
 2010 WL 2757354 (C.D. Cal. July 12, 2010) ....................................................... 10

*United States ex rel. Rahman v. Oncology Assocs.*,
 198 F.3d 489 (4th Cir. 1999) .............................................................................. 1

*WorldCom, Inc. Sec. Litig.*,
 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................................................. 9

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
 §78t-1(c) ......................................................................................................... 2, 5

Federal Rules of Evidence
 Rule 802.......................................................................................................... 2, 6

- iv -                    3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-
00282-BEN-MSB)

4882-2664-2630.v1

## I.    INTRODUCTION

One week after Plaintiffs filed their Motion TuSimple established ████████ ████████████████████████████████████████████████████████████████ Opp. at 7.[1] ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ *Id.* This eleventh-hour revelation is an explicit concession that the concerns raised in Plaintiffs' Motion are not just valid, but acute.

Plaintiffs' Motion seeks to prevent further dissipation of TuSimple's remaining U.S. assets consistent with the letter (and spirit) of the Agreement, but with additional safeguards and an order of this Court. Contrary to TuSimple's contention, the issuance of the proposed TRO will not allow Plaintiffs to unilaterally dictate how the Company will operate. Instead, entry of a TRO will allow for the transferring of TuSimple's U.S.-based assets to be done via a process approved by the Court. Accordingly, TuSimple's claim that entry of a TRO will somehow doom the Company is unfounded.[2]

TuSimple's opposition also fails to provide any legal or factual basis for denying Plaintiffs' Motion. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) establishes that, where a case is brought under the federal securities laws as here, interim equitable relief is permitted. *See United States ex rel. Rahman v. Oncology Assocs.*, 198 F.3d 489, 496 (4th Cir. 1999) ("*Grupo Mexicano's* holding is carefully circumscribed, providing specifically that the general

---

[1]    "Opp." refers to the Opposition of Defendant TuSimple to Plaintiffs' TRO Motion and "Lu Decl." to the Declaration of Defendant Cheng Lu in Support Thereof (ECF 197). Additionally, all capitalized terms not defined herein have the same meaning as set forth in Plaintiffs' TRO Motion ("Motion" or "Mot.") (ECF 187-1), and unless otherwise noted emphasis is added and citations are omitted throughout.

[2]    Thus, the Underwriter Defendants' claim that a TRO would deprive them of their contractual right to indemnity and would further allow Plaintiffs to deny indemnity payments to them is wrong. *See* ECF 192.

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1

equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions ***solely at law***."). Here, Plaintiffs allege claims sounding in equity pursuant to both the Securities Act and the Exchange Act, and the Complaint's Prayer specifically seeks "such other equitable relief, ***including injunctive relief***, as this Court may deem just and proper." Complaint at 120.

Although TuSimple tries to suggest otherwise, plaintiff Poirier has a viable equitable §12(a)(2) claim, having purchased TuSimple shares from one of the underwriters (RBC) of the IPO in which TuSimple was a statutory seller. *See Pinter v. Dahl*, 486 U.S. 622, 647-50 (1988). Next, TuSimple is jointly and severally liable to Plaintiffs alongside defendant Chao under §20A's statutory equitable disgorgement remedy. *See* 15 U.S.C. §78t-1(c).

Plaintiffs have also amply demonstrated that they will likely suffer irreparable harm. Plaintiffs ask the Court only to preserve TuSimple's assets from further dissipation. TuSimple's feigned hardship claims are anything but, particularly because the proposed TRO would allow for legitimate monthly expenditures. In fact, the only argument TuSimple offers in opposition as to the likelihood of success and balance of hardships elements are defendants' inadmissible and self-serving "testimony."[3] For instance, defendant Lu's statements concerning Hydron lack any evidentiary value whatsoever as they are based on little more than speculation and hearsay. *See* Fed. R. Evid. 802; Lu Decl., ¶35 (". . . I was told . . . .") ("I was also informed . . . ."); *id.*, ¶37 ("I was not involved in the details of TuSimple's efforts to evaluate Hydron . . . .") ("As explained to me . . . ."); *id.*, ¶40 ("I did not participate in the feasibility study in which TuSimple evaluated Hydron . . . .").

---

[3] TuSimple improperly includes this testimony *via* Exhibit H and referred to it in its opposition brief in yet another stark breach – this time of the Parties' April 12, 2024 Mediation Confidentiality Agreement. For the reasons set forth in Plaintiffs' motion to strike filed earlier today (ECF 203-1) ("Motion to Strike"), TuSimple's misconduct in breaching the mediation privilege should not be countenanced by this Court.

- 2 -

4882-2664-2630.v1

Plaintiffs' request for expedited discovery is also warranted. The requested discovery has already been produced in the *Wilhoite* Action, to Plaintiffs here, and/or to regulators and is directly related to the preservation of TuSimple's assets. Finally, no bond is required. The Court should grant Plaintiffs' Motion.

## II.    ARGUMENT

### A.    *Grupo Mexicano* **Is Not Controlling Here**

TuSimple argues that, under *Grupo*, the Court lacks authority to issue the TRO. Not so. Opp. at 11-14. Justice Scalia held in *Grupo* that in a contract action for money damages, the district court lacked authority to issue a preliminary injunction freezing a defendant's assets before judgment was entered. Actions (such as this one) alleging violations of the federal securities laws are controlled by *Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940) – which Justice Scalia specifically distinguished in *Grupo*. *Deckert* held that a district court's general equitable powers under the federal securities laws include the "***power to make effective the right of recovery***." *Id.* at 288. In fact, the law "could not be plainer." *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64 (1975); *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 691 (S.D. Tex. 2002). This binding Supreme Court precedent unequivocally holds that the claims Plaintiffs assert here provide a strong basis for Plaintiffs' request for relief. *Compare* Mot. at 11-12 *with* Opp. at 11-14.[4]

Moreover, as the Ninth Circuit held in *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009), "by its very terms, the holding of *Grupo Mexicano* is limited to cases in which only monetary damages are sought."[5] And, as they must, TuSimple

---

[4] This precedent explains why, as TuSimple points out in an attempt to distinguish three of Plaintiffs' cases (Opp. at 14), and the court in *Enron* acknowledged, "[a] number of cases assume" without addressing *Grupo* "that generally available equitable remedies may be used in actions under the Exchange Act." 188 F. Supp. 2d at 699.

[5] *See also In re Focus Media Inc.*, 387 F.3d 1077, 1084-85 (9th Cir. 2004) ("*Grupo Mexicano* suggests that when equitable claims are at issue, as opposed to solely legal damages claims, the rule barring issuance of a preliminary injunction freezing assets is

- 3 -

concedes this is not a "case[] in which **only** monetary damages are sought." *Johnson*, 572 F.3d at 1084; Opp. at 11-13. "The fact that [Plaintiffs] seek[] substantial money damages as well as invoking equitable remedies does not in itself bar the issuance of preliminary equitable relief." *Enron*, 188 F. Supp. 2d at 701.

### B. Plaintiffs Will Prevail on Their Equitable Claims

Conceding that Plaintiffs seek equitable relief for their §12(a)(2) claim, TuSimple argues that Plaintiffs have "no likelihood of success." Opp. at 3, 15-16. This is baseless. ***First***, TuSimple is a statutory seller under §12. Liability under §12(a)(2) is "not 'limited to the person who passes title to the securities, but extends "to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner.""" *Schaffer v. Evolving Sys., Inc.*, 29 F. Supp. 2d 1213, 1222 (D. Colo. 1998) (citing *Pinter*, 486 U.S. at 647-50). Here, it is incontrovertible that TuSimple solicited the purchase of Company stock *via* the Registration Statement. ¶¶4, 69-85, 341-350; *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1126 (N.D. Cal. 2013) (defendant company was statutory seller under §12(a)(2) where plaintiffs alleged the company "participated in the preparation of, and signed, the purportedly misleading [Offering Materials]").

***Second***, Ms. Poirier has §12(a)(2) standing. She purchased 500 shares of TuSimple common stock on April 16, 2021, prior to the consummation of the offering which TuSimple itself stated was set to close on April 19, 2021.[6] And Poirier bought

inapplicable"). Defendants' cases are distinguishable on this basis. *See* Opp. at 11 (citing *Kokka & Backus, PC v. Bloch*, 2010 WL 458909, at *1 (N.D. Cal. Feb. 4, 2010) ("action by a law firm seeking to recover unpaid legal fees"); *Duggs v. Eby*, 2014 WL 5035006, at *1 (N.D. Cal. Oct. 8, 2014) (action "to recover . . . $125,000"); *JBF Interlude 2009 Ltd, v. Quibi Holdings LLC*, 2020 WL 9311954, at *25 (C.D. Cal. Dec. 30, 2020) ("[plaintiff] has not pled any equitable claim to any of the funds it now seeks to encumber")).

[6] Declaration of Lucas F. Olts in Support of Plaintiffs' Reply ("Olts Decl."), filed concurrently herewith, Ex. 8 (stating "TuSimple's Class A common stock is expected to begin trading on the Nasdaq Global Select Market on April 15, 2021 under the

- 4 -

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1

those shares directly from defendant RBC. *See* Olts Decl., Ex. 9; *see also* ¶343. Thus, Poirier has standing to assert her §12(a)(2) claim, as Defendants cannot legitimately contest Poirier purchased TuSimple shares directly from underwriter defendant RBC, and that the offering was consummated three days later. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 578 (1995).[7]

**Third**, after relegating Plaintiffs' equitable §20A disgorgement claim against defendant Chao to a footnote, TuSimple then incorrectly claims that "Plaintiffs have pleaded no such [disgorgement or insider trading] claims" against TuSimple itself. Opp. at 13. In so arguing, the Company ignores the plain language of §20A which provides that TuSimple is itself "jointly and severally liable" alongside Chao for his illicit $270 million sale of TuSimple stock. *See* 15 U.S.C. §78t-1 (c). TuSimple's attempt to have this Court ignore its joint and several liability under §20A alongside Chao further undermines their argument that Plaintiffs have not pled any equitable claims.

**Finally**, as set forth in the Motion, Plaintiffs are likely to prevail in proving defendants' misconduct was actionable. Mot. at 13-14. The **undisputed** facts remain – TuSimple admitted it shared confidential information with Hydron; TuSimple has settled CFIUS's allegations; TuSimple transferred its intellectual property contrary to the national security agreement; and the Company fired Hou for "his lack of candor and transparency" for transferring TuSimple's technology to Hydron. *Id.* TuSimple conveniently ignores these admissions in baldly asserting "Plaintiffs' Motion relies on very few facts." TuSimple's only attempt to dispute the strength of Securities Act claims is a citation **to its own brief** in the *Wilhoite* Action, which purports to excerpt

---

ticker symbol 'TSP.' The offering is expected to close on April 19, 2021, subject to the satisfaction of customary closing conditions.").

[7] Unlike the plaintiffs in *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 976 (N.D. Cal. 2010), Poirier purchased her shares directly from an underwriter defendant before the consummation of the offering. Olts Decl., Ex. 9.

- 5 -                     3:22-cv-01300-BEN-MSB
                         (Consolidated with No. 3:23-cv-
                         00282-BEN-MSB)

deposition transcripts not even in the record here.  Opp. at 1, 4, 10.  *See also* Motion to Strike at 3-5.

If these depositions actually shed any doubt on Plaintiffs' claims, TuSimple could have introduced them.  It did not.  And considering what Judge Benitez recognized after reviewing evidence in the *Wilhoite* Action – that "[t]here's ***no question that there was misappropriation of trade secrets back in 2021, 2022***," – TuSimple's citations to its own briefing in that case are hardly persuasive.  Mar. 12, 2024 Hrg. Tr., *Wilhoite* Action, ECF 131 at 67:24-68:3; Motion to Strike at 3-5. Defendant Lu's "testimony" in his (untested and conclusory) declaration is inadmissible and lacks foundation.  *See* Fed. R. Evid. 802.  In sum, defendant Lu provides no basis to discount the strength of Plaintiffs' claims.  Lu admits, for instance, that he "***was not involved in the details of TuSimple's efforts to evaluate Hydron***" and he "***did not participate*** in the feasibility study in which TuSimple evaluated Hydron as an OEM partner."  Lu Decl., ¶¶37, 40.  Lu also states that he "***was also informed*** at this time that Hydron did not have its own autonomous driving software – and as far as I know, that is still true, since ***I have never been informed otherwise***."  *Id.*, ¶35.  TuSimple provides no legitimate evidentiary basis to dispute Plaintiffs' equitable claims.

### C.   Plaintiffs and the Class Face a Likelihood of Irreparable Harm

Absent the issuance of a TRO, TuSimple will continue to divest its U.S. assets, leaving American investors holding the bag.  Mot. at 18-19.  TuSimple's claim that Plaintiffs' Motion "makes no sense" because TuSimple might have been able to absconded with all of the Company's remaining assets months ago is specious.  Opp. at 17.  There are numerous reasons why TuSimple has not yet fully diverted all of its cash to China (including ongoing litigation, Company politics, and/or the threat of Court intervention), but that does not lessen the risk that, in light of recent events, TuSimple will further dissipate its U.S. assets at any time.

- 6 -

4882-2664-2630.v1

Next, TuSimple relies entirely upon the Lu Declaration to rebut Plaintiffs' evidence of the risk of harm. *Id.* at 17-18. But the self-serving and conclusory assertions therein do nothing but strengthen Plaintiffs' request. For example, █████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████ .

TuSimple touts James Lu's role on the Audit Committee, and asserts that he is "not alleged to have ties to China or to have engaged in any wrongdoing" (Lu Decl., ¶16), but not only does James Lu have direct ties to the Chinese Government, a *Reuters* report uncovered disclosures made to CFIUS that directly contradicted statements made to investors. *See* Olts Decl., Ex. 10.

### D. The Balance of Hardships and Public Interest Tips Decidedly in Favor of a TRO

TuSimple's claimed parade of calamities that will beset the Company if the TRO is granted is speculative and hypothetical. Opp. at 18-19. Histrionics aside, the requested TRO specifically allows for legitimate business expenses, including payroll and legal fees. First, defendant Lu himself admits TuSimple has no meaningful U.S. operations (Lu Decl., ¶44) ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

- 7 -                    3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1

██████████████████████████████ Second, TuSimple should have no issue presenting the budget for those legitimate expenses to Plaintiffs and/or the Court.

Lu's speculation that "TuSimple's prospects for commercial success are likely to be thwarted," by issuance of a TRO and that a TRO would "effectively end" **unidentified** "commercial arrangements" and prevent the execution of additional **unidentified** "future supplier agreements" is hardly competent evidence. *Id.*, ¶52. █████████████████████████████████████████████████████████████. *Id.*, ¶54. But even if true those are much more likely the consequence of multiple federal investigations of TuSimple's misconduct, its voluntary delisting from NASDAQ, the shutdown and sale of its U.S. assets, and/or the collapse in TuSimple's stock price, than any threat of a Court order ensuring its remaining U.S. cash is not dissipated or diverted to China. The public interest is also served by protecting the victims of securities fraud over those who actively raised $1 billion from U.S. investors using misleading statements and then sending the cash raised to China, where TuSimple has argued this Court has no jurisdiction. *Wilhoite* Action, ECF 85 at 9.[8]

### E.    Plaintiffs' Discovery Is Warranted and Sufficiently Particularized

Plaintiffs' expedited discovery request is limited to seven discrete categories, three of which TuSimple concedes are particular and discrete. Opp. at 23. TuSimple argues that the fourth category, all documents and communications between TuSimple and CFIUS related to any CFIUS investigation involving TuSimple, "focuses on a government investigation concerning events two years old." *Id.* Two years old or not,

---

[8] Plaintiffs' Motion does not seek a civil contempt sanction and none of the cases TuSimple cites for support state that a TRO qualifies as a civil contempt sanction. *See S&G Labs Haw., LLC v. Graves*, 2021 WL 4927494, at *4 (D. Haw. Oct. 21, 2021) (granting civil contempt sanctions for failure to comply with sanctions order from the court); *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 627 (9th Cir. 2016) (civil contempt sanctions issued for violating temporary restraining order).

4882-2664-2630.v1

those events are directly related to Plaintiffs' allegations here.  Indeed, on May 29, 2024, TuSimple announced a settlement agreement with CFIUS relating to allegations that TuSimple transferred its intellectual property contrary to the national security agreement.  *See* Mot. at 14.  Courts routinely lift the discovery stay to allow plaintiffs to receive copies of documents and testimony being produced by the same defendants in related matters because defendants suffer no additional burden by producing an additional copy.[9]  Plaintiffs' discovery requests are therefore "particularized."  *See* Opp. at 22.[10]  This clearly is ***not*** a case where the discovery will be used to bolster an otherwise baseless claim.  *WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002).  Indeed, as explained in Plaintiffs' Motion to Strike, TuSimple has already produced much of this discovery to Plaintiffs.  *See* Motion to Strike at 1-2.

## F.    A Bond Is Not Required

TuSimple's demand that the Plaintiffs must post an admittedly "massive bond" of "at least $150 million" if the TRO is granted is meritless.  Opp. at 24.  The Court has "'""discretion [to determine] the amount of security required, ***if any***."""'  *Johnson*, 572 F.3d at 1086 (emphasis in original).  A bond is unnecessary where, as here, "there is no realistic likelihood of harm to the defendant from enjoining [its] conduct."  Opp. at 24 (quoting *Dan D. Peterson Living Tr. Dated Apr. 2, 2009 v. Fyve LLC*, 2023 WL 7282295, at *4 (D. Ariz. Nov. 3, 2023) (requiring no bond)); *see also Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000).  The vague and unsupported statement that the "asset freeze threatens TuSimple's ability to survive and pursue business opportunities" (Opp. at 25), is insufficient to support the need for a bond, let alone

---

[9]   *See Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996) (undue prejudice standard is satisfied with "something less than 'irreparable harm'" and "means improper or unfair detriment").

[10]  Defendants' reliance on *SG Cowen* is misplaced.  There, plaintiffs sought discovery specifically "for the purpose of uncovering facts to support their allegations" after the court dismissed their claims.  *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 911 (9th Cir. 1999).  Plaintiffs' allegations here have already shown substantial merit.  *See* Mot., §III.C.1.

- 9 -

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1

TuSimple's request for a "massive bond." "[T]he party affected by the [TRO] [bears the] obligation of presenting evidence that a bond is needed." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). TuSimple declined to do so. The conclusory and self-serving declaration of its current CEO (and defendant) likewise fails to satisfy the TuSimple's evidentiary burden. *TAP Worldwide, LLC v. Becker*, 2010 WL 2757354, at *6 (C.D. Cal. July 12, 2010).

Plaintiffs are merely asking to preserve TuSimple's assets from further dissipation, which in no way would "force[] TuSimple to shut down." Opp. at 25. Plaintiffs' proposed order sets forth a process by which TuSimple shall continue operations, just with sufficient oversight to prevent further dissipation of its U.S. assets. Such injunctive relief "merely preserves [d]efendants' assets during the pendency of this litigation and carves out an allowance for ordinary living expenses" thus avoiding undue burden on TuSimple. *Panyanouvong v. Aphay*, 2014 WL 2986507, at *6 (W.D. Wash. July 1, 2014); *see also People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985) ("the likelihood of success on the merits, as found by the district court, tips in favor of a minimal bond or no bond at all"), *amended*, 775 F.2d 998 (9th Cir. 1985).[11]

## III.    CONCLUSION

For the reasons stated herein, Plaintiffs' Motion should be granted.

DATED:  June 12, 2024                     Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

s/ Lucas F. Olts
LUCAS F. OLTS

[11]  TuSimple argues that pre-class certification injunctions are limited to an individual plaintiff's damages. Opp. at 20 (citing *Oh v. Sunvalleytek Int'l, Inc.*, 2023 WL 3549523, at *2 (N.D. Cal. May 17, 2023)). This outlier, non securuties case stands against the greater weight of authority, and the "very strong probability that a class action will be certified in this case." *Takiguchi v. MRI Int'l, Inc.*, 2013 WL 5150444, at *3 (D. Nev. Sept. 12, 2013); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 2006 WL 3456666, at *1 (D. Minn. Nov. 29, 2006) (same).

- 10 -                     3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1

DARREN J. ROBBINS
LUCAS F. OLTS
JENNIFER N. CARINGAL
HEATHER G. GEIGER
STEPHEN JOHNSON
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
lolts@rgrdlaw.com
jcaringal@rgrdlaw.com
hgeiger@rgrdlaw.com
sjohnson@rgrdlaw.com

Lead Counsel for Lead Plaintiff Indiana Public Retirement System, and Named Plaintiff Michelle Poirier

Dated: June 12, 2024

KAHN SWICK & FOTI, LLP
RAMZI ABADOU

                s/ Ramzi Abadou
             RAMZI ABADOU

580 California Street, Suite 1200
San Francisco, CA  94104
Telephone:  866/467-1400
ramzi.abadou@ksfcounsel.com

KAHN SWICK & FOTI, LLC
ALEXANDER L. BURNS (*pro hac vice*)
ALEXANDRA PRATT *(pro hac vice)*
JAMES T. FETTER (*pro hac vice*)
1100 Poydras Street, Suite 960
New Orleans, LA  70163
Telephone:  504/455-1400
alexander.burns@ksfcounsel.com
alexandra.pratt@ksfcounsel.com
james.fetter@ksfcounsel.com

Counsel for Named Plaintiff Robert Miller

- 11 -

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4882-2664-2630.v1