MORRIS KANDINOV LLP
Leonid Kandinov (State Bar # 279650)
Aaron T. Morris (*pro hac* forthcoming)
Andrew W. Robertson (*pro hac* forthcoming)
550 West B Street, 4th Floor
San Diego, CA 92101
Tel: (212) 431-7473
leo@moka.law
aaron@moka.law
andrew@moka.law

*Attorneys for Intervenor Camac Fund, LP*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC., et al.,<br><br>Defendants, | Case No. 3:22-cv-01300-BEN-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE** |
| CAMAC FUND, LP,<br><br>Intervenor Plaintiff,<br><br>v.<br><br>TUSIMPLE HOLDINGS, INC.,<br><br>Intervenor Defendant. | |

Camac Fund, LP ("Camac" or "Intervenor"), by and through its undersigned counsel, respectfully submits the following memorandum of points and authorities in support of its motion to intervene under Fed. R. Civ. P. 24(a)(2) (the "Motion").

## **INTRODUCTION**

Camac holds approximately 6% of TuSimple's outstanding stock and is currently investigating the Company's potential misuse of resources on businesses affiliated with its current Board Chair, Defendant Chen. Camac has recently learned—primarily through two open letters from a shareholder who Camac has reason to believe has knowledge of the Company's operations—that certain of the Defendants appear to be initiating a scheme to settle this action and other pending litigation, and thereafter transfer the Company's remaining cash and other assets to China where they will be utilized in unrelated business ventures affiliated with Defendant Chen. In May 2024, this Court entered a temporary restraining order (the "TRO") prohibiting the Company from transferring funds outside of the U.S. (ECF 189), but the TRO was lifted at the request of the parties on July 31, 2024 (ECF 220, 222), apparently in connection with a forthcoming proposed settlement which has not yet been disclosed.

Camac seeks to intervene in this action for the limited purpose of moving to temporarily reinstate the TRO until the proposed settlement is disclosed and Camac can fully and fairly evaluate its terms and whether it will protect current investors

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

from the misappropriation of the Company's remaining assets. Camac is entitled to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2) because of its significant and protectable financial interest in the Company's remaining assets, which is currently in jeopardy after the Court vacated the TRO and is not adequately protected by the parties to this action.

## BACKGROUND

TuSimple claims to be developing hardware and software for fully autonomous semi-trucks. (ECF 103 ¶ 6) It entered the public markets in April 2021 through an IPO that raised over $1 billion from U.S. investors. (*Id.* ¶ 7)

Beginning in 2022, allegations of self-dealing, unauthorized sharing of technology and corporate resources with a Chinese competitor, multiple investigations and settlements with U.S. agencies, and a subsequent internal coup led by Defendant Chen cratered the Company's stock price, resulting in this securities class action as well as other pending litigation. This action is brought on behalf of a class of purchasers of the Company's stock between April 15, 2021 and October 31, 2022 and arises "out of a scheme and fraudulent course of conduct pursuant to which defendants: (i) concealed the Company's related-party transactions with a Chinese semi-trucking rival controlled by TuSimple senior insiders. . . ; (ii) materially overstated TuSimple's safety profile while

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE

simultaneously concealing its safety record; and (iii) concealed from investors that certain 'Risk Factors.'" (ECF 103 at 7)

In June 2023, the Company disclosed that it had no path to commercialization of its technology in the U.S and was seeking strategic alternatives. (ECF 198-1 ¶ 41) The Board engaged investment bankers to determine whether the Company or its proprietary technology could be sold, but the Company was unable to find a buyer and ultimately chose to shut down the U.S. business and shift its focus to the Asia-Pacific ("APAC") region, including China. *Id.* The Board claimed that the Company's prospects in the U.S. were not worthy of further investment and that APAC offered greater prospects for commercialization given its existing relationships with business partners in countries like China and Japan as well as a better regulatory climate related to autonomous driving on public roads. *Id.* As part of this strategic shift, the Company established operations in Australia through an Australian subsidiary, TuSimple Australia Pty Ltd., and began redeploying operations and assets to APAC, including hardware components purchased from third parties that can be used to commercialize its technology in APAC. *Id.* ¶¶ 47-48.

On January 17, 2024, in anticipation of a delisting notice, the Company announced its plan to voluntarily delist and deregister its stock and stated that "the benefits of remaining a publicly traded company [purportedly] no longer justify the

4

cost," and that "the Company is undergoing a transformation that the Company believes it can better navigate as a private company that as a publicly traded one."[1]

On April 26, 2024, the Company confirmed that its registration had been withdrawn.[2] Since then, it has not filed any financial information with the SEC. Its stock price has declined by more than 99% and currently trades at 19 cents. Nevertheless, the Company reported, at least as of September 2023, approximately $240 million in unutilized cash on its balance sheet and $526 million in short-term investments.[3]

On May 30, 2024, Plaintiffs in this action moved for a TRO "to preserve the remaining U.S.-based cash assets." (ECF 187) Plaintiffs asserted that "TuSimple has fired most of its American workforce, deregistered its stock from NASDAQ, liquidated most of its physical assets in the United States, and begun transferring its remaining assets to the People's Republic of China," and had breached an agreement with plaintiff by "making cash transfers explicitly prohibited by the [a]greemeent." (ECF 187-1 at 2). Plaintiffs argued that "any recovery they seek in this action will be dissipated via offshore asset transfers or by other means." *Id*. at 8.

---

[1] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823593/000119312524008909/d673687d8k.htm

[2] https://www.sec.gov/Archives/edgar/data/1823593/000119312524118238/d823263d1512ga.htm

[3] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823593/000162828023037959/tsp20230930.htm

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE

On May 31, 2024, this Court entered the original TRO ordering the Company "not to transfer funds outside the United States." (ECF 189) However, on July 30, 2024—apparently in connection with a settlement of this action—Plaintiffs filed a notice of withdrawal of their TRO motion (ECF 217) and thereafter the parties filed a joint motion requesting the Court vacate the TRO (ECF 218), which the Court granted on July 31, 2024. (ECF 222) By rescinding the TRO before the terms of the proposed settlement are made public, the Company appears to be seeking an opportunity to funnel funds from the U.S. to China, potentially for impermissible purposes without stockholder oversight or disclosure obligations.

Camac has become aware of information suggesting that the Company has no credible Chinese operations relating to its only disclosed business purpose, developing self-driving vehicles, and has discontinued not only its U.S. operations but its Chinese operations as well. Upon information and belief, in March 2024, the Company told its tech employees in China that the long-term prospects of autonomous trucking were bleak, and an exodus of engineers ensued. (Affidavit of Eric Shahinian at ¶ 6) The Company has closed its Shanghai testing facility, fired all of its testing drivers, and the majority of employees focused on autonomous technology. *Id.* The total number of employees in China has fallen from 700 to less than 200 and is quickly decreasing further. *Id.* Hundreds of employees have taken

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE

severance or simply left the Company, which no longer has any actual development or testing capabilities. *Id.*

The few remaining employees are not actively developing self-driving technology at all. Rather, upon information and belief, the Company has surreptitiously begun to redeploy employees and resources into other businesses affiliated with Defendant Chen, including companies focused on gaming and entertainment. *Id.* ¶¶ 7-8, 13. The Company has created at least two subsidiaries in China, Beijing BearBear Factory Culture Co. Ltd. and Guangzhou BearBear Animation Culture Co. Ltd., which are not focused on autonomous trucking, and Mr. Chen is affiliated with and/or controls a number of other entities which have connections to the Company. *Id.* ¶¶ 13-14. Indeed, the Company has listed job postings seeking positions unrelated to self-driving vehicles, including publishers, streamers, video editors, film directors and screenwriters. *Id.* ¶¶ 7, 13-14. The Company has not disclosed this pivot to other industries, and a sworn affidavit previously submitted to the Court by the Company's CEO, Defendant Lu, appears to have omitted these facts. *Id.* ¶ 8, 15.

## **ARGUMENT**

Pursuant to F.R.C.P. 24(a)(2), Camac is entitled to intervene as of right because it "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

This Circuit applies a "four-part test under Rule 24(a): (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also California Trucking Ass'n v. Bonta,* 2022 WL 22609239, at \*2 (S.D. Cal. Sept. 22, 2022) (Benitez, J.) ("Courts normally construe the Rule broadly in favor of proposed intervenors").

Camac meets all four elements to intervene as of right and the Motion to Intervene should be granted.

First, the motion is timely. Camac learned that the TRO had been lifted on July 31, 2024 and filed this motion three business days later. The filing has not caused any delay or prejudice.

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

Second, Camac has a significant protectible interest, as a large current investor, in the Company's remaining cash and preventing management from absconding with it. To the extent that the settlement of this action will free the Company from the TRO and facilitate the transfer of cash oversees, Camac's interests will be severely impeded because of the difficulties inherent in attempting to claw such assets back to the U.S. and the risk of permanent loss. *See, e.g., Sec. & Exch. Comm'n v. Learn Waterhouse, Inc.*, 2009 WL 10674470, at \*2 (S.D. Cal. Mar. 23, 2009) (granting intervention where party had "significant protectable interest relating to [r]eal [p]roperty" that was subject to an injunction in the action); *Travelers Indem. Co. v. Arena Grp. 2000, L.P.*, 2005 WL 8173582, at \*2 (S.D. Cal. Nov. 2, 2005) (granting intervention where party "may be left without a remedy").

Third, the disposition of this action, including by settlement, may severely impair or impede the interests of Camac and all stockholders if the Company's remaining cash is not fully protected and preserved from misappropriation. TuSimple has admitted that it is no longer pursuing development activities in the U.S., and Camac has a strong basis to believe that the Company is no longer developing autonomous trucks in China either. Instead, it appears to be covertly pivoting to various other businesses operated Defendant Chen, including gaming and entertainment endeavors, and apparently plans to repurpose TuSimple's current cash reserves for those purposes. Camac's interests as a stockholder of TuSimple will be

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

severely impaired if management is permitted to divert the Company's cash to China where it is unlikely to ever be recovered. *See Berg*, 268 F.3d at 822 (citing the advisory committee guidance that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.").

Fourth, Camac's interests are not adequately represented by the parties. Camac's interests are adverse to the Company's to the extent that Defendants intend to divert assets outside of the U.S. for improper purposes, as Camac has reason to believe is happening. Further, Camac's interests are not fully protected by Plaintiffs' counsel because this action seeks a recovery only on behalf of certain purchasers of the Company's stock during the class period, not current investors. Camac has no information regarding the extent to which the settlement attempts to protect current investors, if at all, from the future misappropriation of assets.

## **CONCLUSION**

For the reasons set forth above, Camac respectfully requests that the Court grant its Motion to Intervene.

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE

Dated: August 5, 2024

By: */s/ Leonid Kandinov*

MORRIS KANDINOV LLP
Leonid Kandinov (State Bar # 279650)
Aaron T. Morris (*pro hac forthcoming*)
Andrew W. Robertson (*pro hac forthcoming*)
550 West B Street, 4th Floor
San Diego, CA 92101
Tel: (212) 431-7473
leo@moka.law
aaron@moka.law
andrew@moka.law

*Attorneys for*
*Intervenor Camac Fund, LP*

11

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO INTERVENE