MORRIS KANDINOV LLP
Leonid Kandinov (State Bar # 279650)
Aaron T. Morris (*pro hac* forthcoming)
Andrew W. Robertson (*pro hac* forthcoming)
550 West B Street, 4th Floor
San Diego, CA 92101
Tel: (212) 431-7473
leo@moka.law
aaron@moka.law
andrew@moka.law

*Attorneys for Intervenor Camac Fund, LP*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TUSIMPLE HOLDINGS, INC., et al., <br><br> Defendants, | Case No. 3:22-cv-01300-BEN-MSB <br><br><br> **[PROPOSED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REINSTATE TRO** |
| CAMAC FUND, LP, <br><br> Intervenor Plaintiff, <br><br> v. <br><br> TUSIMPLE HOLDINGS, INC., <br><br> Intervenor Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................2

A.    Self-Dealing, Federal Investigations, And Internal Strife
      Quickly Destroy The Company's Prospects Following Its IPO ..........2

B.    The Company Goes Dark................................................................3

C.    The Court Enters And Then Lifts A TRO Prohibiting
      The Company From Transferring Assets Outside Of The U.S.............4

D.    Information Suggests That The Company Has Given Up On Self-
      Driving Technology And Plans To Reutilize Its Assets Overseas........5

ARGUMENT ....................................................................................7

I.     LEGAL STANDARD..................................................................7

II.    THE COURT HAS ALREADY GRANTED
       A TRO UNDER THE CIRCUMSTANCES...........................................8

III.   THE TRO SHOULD BE REINSTATED ...........................................8

       A.    Camac Is Likely To Succeed On The Merits.............................8

       B.    Camac Will Suffer Irreparable
             Harm Absent the Requested Relief.........................................9

       C.    The Balance Of The Hardships And
             Public Interests Favor Reinstatement Of The TRO ..................10

CONCLUSION ..............................................................................11

ii

Case No. 3:22-CV-01300-BEN-MSB

# TABLE OF AUTHORITIES

## Cases

*Alliance for Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................. 11

*Carillo v. Schneider Logistics, Inc.*,
501 F. App'x 713 (9th Cir. 2012) ....................................................... 11

*Deckert v. Indep. Shares Corp.*,
311 U.S. 282 (1940) ............................................................................ 12

*Grupo Mexicano De Desarrollo S.A v. All. Bond Fund*,
527 U.S. 308 (1999) ............................................................................ 12

*In re Estate of Marcos*,
25 F.3d 1467 (9th Cir. 1994) .............................................................. 13

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ............................................................ 12

*Panyanouvong v. Aphay*,
2014 WL 2986507 (W.D. Wash. July 1, 2014) ................................ 14

*Pimental v. Dreyfus*,
670 F.3d 1096 (9th Cir. 2012) ............................................................ 12

*Republic of the Philippines v. Marcos*,
862 F.2d 1355 (9th Cir. 1988) ............................................................ 13

*Takiguchi v. MRI International, Inc*
2013 WL 5150444 (D. Nev. Sept. 12, 2013) .................................... 15

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ................................................................................ 11

iii

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

## <u>Rules</u>

Fed. R. Civ. P. 65 .................................................................................... 11

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

Camac Fund, LP ("Camac" or "Intervenor"), by and through its undersigned counsel, respectfully submits the following memorandum of points and authorities in support of its motion to reinstate the May 31, 2024 temporary restraining order ("TRO") previously entered in this action (ECF 189).

## **INTRODUCTION**

Camac is a large shareholder of TuSimple that is investigating an apparent plot by the Company and its Chairman, Defendant Chen, to settle pending litigation against it in a manner that will allow the Company to subsequently transfer its remaining cash and other assets to China, where the Company appears to be covertly pivoting toward other businesses controlled by Mr. Chen with no relation to self-driving vehicles. The Court previously granted Plaintiffs' motion for a TRO restraining the Company from transferring its assets overseas. (ECF 189) However, the parties subsequently asked the Court to lift the TRO without citing (at least publicly) any change in circumstances. (ECF 217 & 218)

Through this motion, Camac seeks the limited relief of reinstating the TRO in advance of the disclosure of the proposed settlement between the parties to allow Camac to continue its investigation and evaluate—on behalf of itself and all current stockholders in the Company—the extent to which the settlement protects the Company's remaining cash from misappropriation.

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

# BACKGROUND[1]

## A. Self-Dealing, Federal Investigations, And Internal Strife Quickly Destroy The Company's Prospects Following Its IPO

TuSimple claims to be developing hardware and software for fully autonomous semi-trucks. (ECF 103 ¶ 6) It entered the public markets in April 2021 through an IPO that raised over $1 billion from U.S. investors. (*Id.* ¶ 7) Beginning in 2022, allegations of self-dealing, unauthorized sharing of technology and corporate resources with a Chinese competitor, multiple investigations and settlements with U.S. agencies, and a subsequent internal coup led by Defendant Chen cratered the Company's stock price, resulting in multiple litigations, including this securities class action, which arises "out of a scheme and fraudulent course of conduct pursuant to which defendants: (i) concealed the Company's related-party transactions with a Chinese semi-trucking rival controlled by TuSimple senior insiders. . . ; (ii) materially overstated TuSimple's safety profile while simultaneously concealing its safety record; and (iii) concealed from investors that certain 'Risk Factors.'" (*Id.* at 1)

In June 2023, the Company disclosed that it had no path to commercialization of its technology in the U.S and was seeking strategic alternatives. (ECF 198-1 at

---

[1] In addition to the relevant background below, Camac incorporates by reference the statement of facts in Plaintiff's TRO brief, upon which the Court granted the original TRO. (ECF 187-1 at 2-9)

¶ 41) The Board engaged investment bankers to determine whether the Company or its proprietary technology could be sold, but the Company was unable to find a buyer and ultimately chose to shut down the U.S. business and shift its focus to the Asia-Pacific ("APAC") region, including China. *Id*. The Board claimed that the Company's prospects in the U.S. were not worthy of further investment and that APAC offered greater prospects for commercialization given its existing relationships with business partners in countries like China and Japan as well as a better regulatory climate related to autonomous driving on public roads. *Id*. As part of this strategic shift, the Company established operations in Australia through an Australian subsidiary, TuSimple Australia Pty Ltd., and began redeploying operations and assets to APAC, including hardware components purchased from third parties that can be used to commercialize its technology in APAC. (ECF 198-1 at ¶¶ 47-48)

**B.** <u>**The Company Goes Dark**</u>

On January 17, 2024, in anticipation of a delisting notice from Nasdaq, the Company announced its plan to voluntarily delist and deregister its stock.[2] The Company stated in the press release that "the benefits of remaining a publicly traded company [purportedly] no longer justify the cost," and that "the Company is

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823593/000119312524008909/d673687d8k.htm

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

undergoing a transformation that the Company believes it can better navigate as a private company that as a publicly traded one." *Id.* On April 26, 2024, the Company confirmed that its registration had been withdrawn.[3] Since then, it has not filed any financial information with the SEC. Its stock price has declined by more than 99% and currently trades at 19 cents. Nevertheless, the Company reported, at least as of September 2023, approximately $240 million in unutilized cash on its balance sheet and $526 million in short-term investments.[4]

**C.      The Court Enters And Then Lifts A TRO Prohibiting The Company From Transferring Assets Outside Of The U.S.**

On May 30, 2024, Plaintiffs in this action moved for a TRO "to preserve the remaining U.S.-based cash assets." (ECF 187) Plaintiffs asserted that "TuSimple has fired most of its American workforce, deregistered its stock from NASDAQ, liquidated most of its physical assets in the United States, and begun transferring its remaining assets to the People's Republic of China," and had breached an agreement with plaintiff by "making cash transfers explicitly prohibited by the [a]greement." (ECF 187-1 at 2) Plaintiffs argued that "any recovery they seek in this action will be dissipated via offshore asset transfers or by other means." *Id.* at 8.

---

[3] https://www.sec.gov/Archives/edgar/data/1823593/000119312524118238/d823263d1512ga.htm

[4] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001823593/000162828023037959/tsp-20230930.htm

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

On May 31, 2024, this Court imposed the TRO ordering the Company "not to transfer funds outside the United States." (ECF 189) However, on July 30, 2024—apparently after achieving some kind of proposed settlement of this action with Defendants[5]—Plaintiffs filed a notice of withdrawal of their TRO motion (ECF 217) and thereafter the parties filed a joint motion requesting the Court vacate the May 31, 2024 TRO prohibiting the Company from transferring funds outside the United States. (ECF 218) On July 31, 2024, the Court granted the motion and rescinded the TRO. (ECF 222)

By rescinding the TRO before the terms of the proposed settlement are made public, the Company appears to have obtained an opportunity to funnel funds to China for impermissible purposes without stockholder oversight or disclosure obligations.

**D. Information Suggests That The Company Has Given Up On Self-Driving Technology And Plans To Reutilize Its Assets Overseas**

Information has begun to surface suggesting that the Company not only discontinued its U.S. operations, but is also no longer pursuing autonomous trucking in China. Upon information and belief, in March 2024, the Company told its tech employees in China that the long-term prospects of autonomous trucking were bleak,

---

[5] In addition, the parties in a parallel case, *Wilhoute v. Hou*, No. 3:23-cv-02333-BEN-MSB (S.D. Cal), also disclosed "that the parties have reached a settlement." (ECF 244)

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REINSTATE TRO

and an exodus of engineers ensued. (Affidavit of Eric Shahinian at ¶ 6) The Company has closed its Shanghai testing facility, fired all of its testing drivers as well as the majority of employees focused on autonomous technology. *Id.* The total number of employees in China has fallen from 700 to less than 200 and is quickly decreasing further. *Id.* Hundreds of employees have taken severance or simply left the Company, which no longer has any actual development or testing capabilities. *Id.*

The few remaining employees are not actively developing self-driving technology at all. Rather, upon information and belief, the Company has surreptitiously begun to redeploy employees and resources into other businesses affiliated with Defendant Chen—TuSimple's controller and Board Chair—including companies focused on gaming and entertainment. (*Id.* ¶¶ 7-8, 13) The Company has created at least two subsidiaries in China, Beijing BearBear Factory Culture Co. Ltd. and Guangzhou BearBear Animation Culture Co. Ltd., which are not focused on autonomous trucking, and Mr. Chen is affiliated with and/or controls a number of other entities which have connections to the Company in China. (*Id.* ¶¶ 13-14) Indeed, the Company has listed job postings seeking positions unrelated to self-driving vehicles, including publishers, streamers, video editors, film directors and screenwriters. (*Id.* ¶¶ 7, 13-14) The Company has not publicly disclosed a pivot to

6

MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
OF MOTION TO REINSTATE TRO

other industries, and a sworn affidavit previously submitted to the Court by the Company's CEO, Defendant Lu, appears to have concealed these facts. (*Id.* ¶ 8, 15)

## ARGUMENT

### I. LEGAL STANDARD

Under Rule 65, courts may issue an injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). Courts weigh the following four factors in determining whether to grant a TRO: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities favors preliminary relief; and (4) the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts in the Ninth Circuit follow a "sliding scale" approach, providing courts discretion to shift the weight given to certain factors, "so that a stronger showing of one element may offset a weaker showing of another," and to issue temporary restraining orders even where the showing typically required for a factor is not met. *See Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012); *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Courts have "broad powers and wide discretion" to fashion appropriate interim relief. *Carillo v. Schneider Logistics, Inc.*, 501 F. App'x 713, 716 (9th Cir. 2012). "The Supreme Court [has] expressly stated that a preliminary injunction barring asset transfer is available where the suit seeks equitable relief." *Johnson v.*

*Couturier*, 572 F.3d 1067, 1083-84 (9th Cir. 2009) (*citing Grupo Mexicano De Desarrollo S.A v. All. Bond Fund*, 527 U.S. 308, 324-25 (1999)).

## II.  THE COURT HAS ALREADY GRANTED A TRO UNDER THE CIRCUMSTANCES

The Court granted the original TRO in May 2024, and enjoined the Company from "transfer[ing] funds outside the United States," based on the four-factor analysis above. (ECF 189) The events and revelations in the subsequent nine weeks have *only heightened* the need to ensure that the Company's assets are not wrongfully converted. Plaintiffs in this action previously argued that a TRO was warranted based on the risk that some or all Defendants would "abscond to China with the Company's assets" and that the public interest and the balance of equities supported them as "victims of securities fraud." (ECF 187-1 at 19) As far as has been disclosed, the circumstances remain the same, and an extension of the TRO is warranted at least until the terms of the settlement are disclosed and stockholders can evaluate the need for additional protection.

## III.  THE TRO SHOULD BE REINSTATED

### A.  Camac Is Likely To Succeed On The Merits

To reinstate the TRO, Camac need only show a "fair chance" it would succeed on the merits in the event that Defendants, through a proposed settlement or otherwise, attempt to misappropriate the Company's assets for other improper uses. *See, e.g., Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

8

The potential transfer of assets overseas implicates, among other things, claims for conversion, fraudulent transfer, breach of fiduciary duties, unjust enrichment, breach of contract, fraudulent misrepresentation and securities fraud, which Camac will assert in the event that its investigation reveals misconduct and the proposed settlement in this action does not address Defendants' future use of the Company's assets. The Court should reinstate the TRO in this action to prevent the misuse of Company assets under this Court's watch until the proposed settlement between the parties is disclosed, and stockholders can fully and fairly evaluate the need for additional protection against misappropriation.

### B. Camac Will Suffer Irreparable Harm Absent the Requested Relief

A party may show irreparable harm where assets are "in danger of dissipation or depletion." *Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 285 (1940); *see also In re Estate of Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994) (courts have the "authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment"); *Panyanouvong v. Aphay,* 2014 WL 2986507, at *6 (W.D. Wash. July 1, 2014) (freezing all assets save for "reasonable living expenses" in Exchange Act case to avoid overseas transfers). Evidence of dissipation need not be direct but can

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REINSTATE TRO

be circumstantial. *Id.* Prior conduct may serve as evidence of a "likelihood that in the absence of an asset freeze and accounting, Plaintiffs will not be able to recover the improperly diverted funds and will thus be irreparably harmed." *Johnson*, 572 F.3d at 1085.

Here, recent events provide ample evidence that the Defendants, left unmonitored, will transfer the Company's remaining assets to China or elsewhere abroad, rendering it difficult or impossible for Camac and other stockholders to recover them. Indeed, Plaintiffs noted, in moving this Court for the original TRO, the significant risk of the Company "dissipating assets in a manner that would thwart the putative class's potential recovery." (ECF 187-1 at 1) The parties have not disclosed any new or changed circumstances suggesting that this risk has decreased and, to the contrary, new information suggests that the Company and Defendant Chen are actively clearing a path for transfer of substantial assets for use in new endeavors in China. (Shahinian Aff. ¶¶ 7-15)

### C. The Balance Of The Hardships And <u>Public Interests Favor Reinstatement Of The TRO</u>

The difficulty of tracing and recovering assets tilts the balance of equities and the public interest substantially in Plaintiffs' favor. *Takiguchi v. MRI Int'l, Inc.*, 2013 WL 5150444, at *5 (D. Nev. Sept. 12, 2013). Moreover, unless Defendants do, in fact, intend to abscond with the assets, the relief Plaintiffs request will not

10

meaningfully prejudice TuSimple, especially in light of recent revelations that the Company has limited if any legitimate operations in China requiring financial support. (Shahinian Affidavit ¶ 6) Moreover, the limited time the Camac seeks to reinstate the TRO—*i.e.*, until the settlement terms are disclosed and stockholders can further evaluate the risk—further limits any disruption or prejudice to the Company. Accordingly, the balance of hardships and the public interest favor the reinstatement of the TRO.

## **CONCLUSION**

Camac respectfully requests that the Court grant its Motion to Reinstate the TRO and enjoin the Company from transferring assets outside of the U.S. until this Court and TuSimple stockholders can further evaluate the terms of the forthcoming settlement and the continued risk of misappropriation of the Company's assets.

Case No. 3:22-CV-01300-BEN-MSB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REINSTATE TRO

Dated: August 5, 2024          By:  */s/ Leonid Kandinov*
_____

MORRIS KANDINOV LLP
Leonid Kandinov (State Bar # 279650)
Aaron T. Morris (*pro hac* forthcoming)
Andrew W. Robertson (*pro hac* forthcoming)
550 West B Street, 4th Floor
San Diego, CA 92101
Tel: (212) 431-7473
leo@moka.law
aaron@moka.law
andrew@moka.law

*Attorneys for Intervenor Camac Fund, LP*

12