UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

_____
                               )
AUSTIN DICKER, Individually and ) Case No. 22-cv-01300-BEN-MSB
on Behalf of All Others         )
Similarly Situated,             )
                                ) San Diego, California
                   Plaintiff,   )
                                ) Department 5A
           v.                   )
                                ) Thursday, August 8, 2024
TUSIMPLE HOLDINGS, INC., et al.,)
                                ) 3:40 p.m.
                   Defendants.  )
_____)
                                )
NORMAN WILHOITE and JUDITH      ) Case No. 23-cv-02333-BEN-MSB
WILHOITE, derivatively on behalf)
of TUSIMPLE HOLDINGS, INC.,     )
                                )
                   Plaintiffs,  )
                                )
           v.                   )        **CERTIFIED**
                                )        **TRANSCRIPT**
XIAODI HOU, MO CHEN, CHENG LU,  )
GUOWEI "CHARLES" CHAO, and      )
HYDRON, INC.,                   )
                                )
                   Defendants.  )
_____)


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ROGER T. BENITEZ
UNITED STATES DISTRICT COURT JUDGE


Reported By:                    CRISTINE R. GERONGCO, RPR, CSR
                                District Court Clerk's Office
                                333 West Broadway, Suite 420
                                San Diego, California 92101

        Proceedings reported by mechanical stenography,
transcript produced by computer.

APPEARANCES:

For the Plaintiffs
Michelle Poirier,
Robert Miller,
Indiana Public Employees
Retirement System:            DARREN J. ROBBINS, ESQ.
                              LUCAS F. OLTS, ESQ.
                              ELLEN GUSIKOFF STEWART, ESQ.
                              JENNIFER N. CARINGAL, ESQ.
                              Robbins Geller Rudman & Dowd LLP
                              655 West Broadway, Suite 1900
                              San Diego, California 92101


For the Plaintiffs
Michelle Poirier and
Robert Miller:                RAMZI ABADOU, ESQ.
                              Kahn Swick & Foti, LLC
                              912 Cole Street, Number 251
                              San Francisco, California 94177

For the Plaintiffs
Norman Wilhoite and
Judith Wilhoite
derivatively on
behalf of
TuSimple Holdings, Inc.:      FRANCIS A. BOTTINI, ESQ.
                              ALBERT CHANG, ESQ.
                              Bottini & Bottini, Inc.
                              7817 Ivanhoe Avenue, Suite 102
                              La Jolla, California 92037

For the Intervenor
Plaintiff
Camac Fund, LP:               LEONID KANDINOV, ESQ.
                              Morris Kandinov LLP
                              550 West B Street, 4th Floor
                              San Diego, California 92101


For the Defendant
TuSimple Holdings, Inc.:      ROBERT KINGSLEY SMITH, ESQ.
                              WilmerHale
                              60 State Street
                              Boston, Massachusetts 02109


              (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)

APPEARANCES:

For the Defendant
Cheng Lu:                        JONATHAN ACKER SHAPIRO, ESQ.
                                 Goodwin Procter LLP
                                 Three Embarcadero Center
                                 28th Floor
                                 San Francisco, California 94111


For the Defendant
Mo Chen:                         JON MYER TALOTTA, ESQ.
                                 Hogan Lovells US LLP
                                 8350 Broad Street
                                 17th Floor
                                 Tysons, Virginia 22102

                                 -and-

                                 JORDAN DANIEL TETI, ESQ.
                                 Hogan Lovells US LLP
                                 1999 Avenue of the Stars
                                 Suite 1400
                                 Los Angeles, California 90067


For the Defendant
Mo Chen:                         KEITH M. COCHRAN, ESQ.
                                 Fitzgerald Knaier LLP
                                 402 West Broadway, Suite 1400
                                 San Diego, California 92101


For the Defendant
Xiaodi Hou:                      JOSEPH CALDWELL SARLES, ESQ.
                                 Quinn Emanuel Urquhart & Sullivan
                                 865 South Figueroa Street
                                 10th Floor
                                 Los Angeles, California 90017


For the Defendant
Patrick Dillon:                  MICHAEL E. KOMOROWSKI, ESQ.
                                 Morrison Foerster LLP
                                 425 Market Street
                                 San Francisco, California 94105


        (APPEARANCES CONTINUED ON THE FOLLOWING PAGE)

APPEARANCES:

For the Defendant
Brad Buss and
Karen C. Francis:          NATALIE BLACKBURN, ESQ.
                           Koning Zollar LLP
                           169 Saxony Road, Suite 115
                           Encinitas, California 92024


For the Defendant
Hydron, Inc.:              LYN R. AGRE, ESQ.
                           Glenn Agre Burgman & Fuentes
                           580 California Street, Suite 1420
                           San Francisco, California 94104


                            -oOo-

SAN DIEGO, CALIFORNIA; THURSDAY, AUGUST 8, 2024; 3:40 P.M.

-oOo-

THE CLERK:  Remain seated and come to order.  This court is once again in session.

THE COURT:  I didn't realize I was this popular.

All right.  Glenn, please call the case.

THE CLERK:  Your Honor, any preference as to which one?

THE COURT:  Well, call all three of them at one time.

THE CLERK:  All right.  3 on calendar, 22-cv-1300 Dicker v. TuSimple Holdings, status conference.

And 4, 23-cv-2333, Wilhoite et al. v. Hou et al., status conference.

THE COURT:  Okay.  So we have quite a few lawyers here, apparently.  So how about if we start identifying ourselves.  Let's see.

I guess we could start with Dicker v. TuSimple.

If you would please identify yourselves, state your name, spell your last name.

Please speak clearly and loudly and slowly so that my court reporter can take down your names.  Okay.

MR. ROBBINS:  Your Honor, would you like me to address the Court from here or from the lectern?

THE COURT:  It doesn't matter to me.  Whatever makes you happy.

MR. ROBBINS:  Darren Robbins on behalf of the Plaintiffs, Your Honor, R-o-b-b-i-n-s; and together with my colleagues, Ramzi Abadou, A-b-a-d-o-u; Luke Olts, O-l-t-s; Ellen Gusikoff Stewart, that's G-u-s-i-k-o-f-f, dash, Stewart, S-t-e-w-a-r-t; and Jen Caringal, C-a-r-i-n-g-a-l.

THE COURT:  Okay.

MR. SMITH:  Robert Smith, Your Honor, of WilmerHale for TuSimple, S-m-i-t-h.

MR. SHAPIRO:  Good afternoon, Your Honor.

My name is Jonathan Shapiro, Goodwin Procter, S-h-a-p-i-r-o.  And I'm here on behalf of Defendant Cheng Lu.

MR. TALOTTA:  Good afternoon, Your Honor.

Jon Talotta from Hogan Lovells on behalf of Mo Chen. It's T-a-l-o-t-t-a.  I'm joined by my colleague Jordan Teti, T-e-t --

THE COURT:  I'm sorry.  Let's do that one more time. Your last name is?

MR. TALOTTA:  Talotta, T- -- like in "Tom" --

THE COURT:  Uh-huh.

MR. TALOTTA:  -- -a-l-o-t-t-a.

THE COURT:  And you're here representing?

MR. TALOTTA:  Mr. Chen.

THE COURT:  Mr. Cheng.

MR. TALOTTA:  Chen, C-h-e-n.

THE COURT:  All right.  As opposed to Cheng Lu?

MR. TALOTTA:  Correct.

I have two people accompanying me; my colleague from my firm, Jordan Teti, T-e-t-i.  And I'm also accompanied by Keith Cochran, C-o-c-h-r-a-n-e [sic], from the law firm of Fitzgerald Knaier, San Diego counsel.

THE COURT:  Okay.

MR. SARLES:  Good afternoon, Your Honor.

Joseph Sarles for Defendant Xiaodi Hou, S-a-r-l-e-s.

MR. KOMOROWSKI:  Michael Komorowski.

THE COURT:  Wait just a second, just a second.

I'm sorry, your last name was Sarles?

MR. SARLES:  S-a-r-l-e-s, from the Quinn Emanuel firm.

THE COURT:  And you are representing?

MR. SARLES:  Defendant Xiaodi Hou.

THE COURT:  Okay.

MR. KOMOROWSKI:  Michael Komorowski, K-o-m-o-r-o-w-s-k-i, on behalf of Defendant Patrick Dillon.

MS. BLACKBURN:  Natalie Blackburn, B-l-a-c-k-b-u-r-n, on behalf of Defendants Buss, B-u-s-s, and Francis.

MR. KANDINOV:  Leo Kandinov of Morris Kandinov LLP for the Intervenor Plaintiff Camac Fund, LP, K-a-n-d-i-n-o-v.

THE COURT:  And the intervenor plaintiff is who?

MR. KANDINOV:  Proposed intervenor plaintiff is Camac Fund, LP, C-a-m-a-c.

THE COURT:  Okay.  So that's the *Dicker* case.

What about the -- let's see.  We have the *Wilhoite* case.

MR. CHANG:  Good afternoon, Your Honor.

I'm Albert Chang with the law firm of Bottini & Bottini in San Diego appearing on behalf of the shareholder derivative plaintiffs Mr. and Mrs. Wilhoite.  With me -- oh, my last name is Chang, C-h-a-n-g.

MR. BOTTINI:  Good afternoon, Your Honor.

Frank Bottini, B-o-t-t-i-n-i, also for Plaintiffs Wilhoite.

THE COURT:  Okay.

MR. SMITH:  Robert Smith, again, Your Honor, for TuSimple.

THE COURT:  Robert Smith for TuSimple.

MR. SMITH:  Yes, TuSimple, yes.

THE COURT:  See how smart I am?  I picked up on that pretty quickly, didn't I?

MR. SMITH:  We can go through appearances again, Your Honor, but I think the lawyers that are representing all the Defendants in the *Dicker* action represent the same Defendants in the *Wilhoite* action.

THE COURT:  Great.  Let's not do that.  Okay.

MR. SMITH:  Except for one, Your Honor.

THE COURT:  Uh-oh.

MS. AGRE:  Good afternoon, Your Honor.  Lyn Agre from

Glenn Agre Burgman & Fuentes on behalf of Hyrdron, A-g-r-e.

THE COURT:  A-g-r-e?

MS. AGRE:  Yes.

THE COURT:  Okay.  Do I have them all?  Okay.

If I don't have you, then please stand up and speak up.

All right.  The reason why I asked for the status conference is this, there were two cases, the *Dicker* case and the *Wilhoite* case.

It's my understanding -- or at least I was told -- that those two cases had been settled.  And, in fact, if I'm not mistaken, the Ninth Circuit Court of Appeals was informed that the case was settled.

I believe that was the *Dicker* case?  Is that the one that went up on appeal?

No, it was the *Wilhoite* case.

MR. CHANG:  *Wilhoite*.

THE COURT:  Okay.  And so the Ninth Circuit, having been told that the case was settled, I guess, dismissed the appeal.

So perhaps, Mr. Robbins or Mr. Chang, or someone, you can -- you're welcome to come up to the lectern, and if you wish, tell me where we are as far as that settlement is concerned.

MR. ROBBINS:  Your Honor, again, Darren Robbins for the Plaintiffs in *Dicker*.  I can only speak for *Dicker*, and I

can inform the Court that the information you have is correct.

We have reached a settlement in the case.

We're in the process of papering that settlement, and our expectation is is that settlement would be presented to the Court next week.

THE COURT:  Okay.

Mr. Chang?

MR. CHANG:  Yes, Your Honor.  Over the past three months, the parties have expended substantial effort to negotiate a settlement of the shareholder derivative lawsuit in front of you, as well as the related action pending before the Court of Chancery of Delaware.

So in early May, the parties appeared in New York before former United States District Judge Layn Phillips for an in-person mediation.  And after that, in June and July, the parties engaged in multiple negotiation sessions before Judge Phillips, and we're pleased to report that those negotiations have been successful.

The parties have reached an agreement in principle to settle the shareholder derivative lawsuit in front of you.

And it is not correct that the Ninth Circuit has dismissed the appeal.

Actually, on TuSimple's motion in the Ninth Circuit, the Ninth Circuit has stayed all the appellate proceedings, we have the oral argument before Ninth Circuit has been vacated,

and we are -- we have a status report due in the Ninth Circuit in October.

THE COURT:  All right.  I misspoke.  I -- it was the oral argument that was set for September 9th that was vacated.

MR. CHANG:  Correct.

THE COURT:  Okay.  Great.

MR. CHANG:  So the parties in the derivative case are right now negotiating a term sheet which would iron out the final terms for the settlement.  While the final terms are still being negotiated, and they are still under counsel -- subject to counsel's confidentiality obligations, we can report to the Court that the settlement involves a substantial monetary recovery to the company, as well as substantial corporate government's reforms that will address the internal controls deficiencies that are raised in this litigation.

Our plan is that we'll execute the term sheet within a week.

And the parties would prepare and finalize the settlement agreement within 30 days.  And we hope to present the settlement to you in a motion for final approve -- I'm sorry -- preliminary approval in September.

And, well, I guess it's worth noting that the settlement that we have in this shareholder derivative lawsuit was negotiated completely separately from the settlement that's

been negotiated in the *Dicker* action.  And the -- our settlement is not dependent or not conditioned upon the approval of the *Dicker* action settlement or any other settlement in the related litigation.

THE COURT:  Okay.  So the *Dicker* action, as I recall, is a PSLRA case?

MR. CHANG:  Correct.

THE COURT:  All right.  And did I issue any kind of a preliminary or temporary restraining order in the *Dicker* case?

MR. CHANG:  I don't believe so.

MR. SMITH:  I can answer that, Your Honor.

No, you didn't.

There was no TRO entered in the *Dicker* case.

There is a TRO that was entered in the *Wilhoite* case, and that is the subject of the appeal to the Ninth Circuit.

THE COURT:  Okay.  So I have an application to intervene.

Let me hear from -- is it "Kandinor" [sic]?

MR. KANDINOV:  Yes, Your Honor.

THE COURT:  All right.  Mr. Kandinov, so you are proposing to intervene, and I assume you're proposing to intervene in the *Wilhoite* case; is that correct?

MR. KANDINOV:  Yes, Your Honor.

THE COURT:  Not the *Dicker* case?

MR. CHANG:  No, Your Honor.  I think Counsel

misspoke.

THE COURT:  Now, I have three people that have jumped up.  Okay.

So, Mr. Chang?

MR. CHANG:  I believe the proposed intervenor is trying to intervene in the *Dicker* case and not the *Wilhoite* case.

THE COURT:  Okay.

MR. SMITH:  I agree with that, Your Honor.

THE COURT:  All right.  Okay.  So as I understood your application, or what I was told you were intending to do was to intervene for purposes of reinstating a temporary restraining order that I allegedly issued to prevent the company from using its funds.  But I am told that in the *Dicker* case, I issued no such order if I understood that correctly.

So I'm not -- so I'm a little bit confused, Counsel.  And I apologize.  I'm not the sharpest knife in the drawer, I realize that, but maybe you can explain this to me.

MR. KANDINOV:  My apologies for the confusion.

THE COURT:  Okay.

MR. KANDINOV:  Regarding the filing, we believe that these two cases were related, the derivative case and securities class action.  They had a similar nucleus of facts.  And even though one dealt with misrepresentations and under

the PSLRA, another one had to deal with trade secrets, related party transactions, and various breaches of fiduciary duty that dealt with a similar set of facts.

Our goal was to move solely for the limited purpose -- to intervene solely for the limited purpose of moving to reinstate the TRO that you had entered into -- May -- and then had lifted about three months later, July 31st approximately, for the sole purpose of being able to review the proposed settlement terms in both of these actions and be able to assess how the company's current shareholders, like the stockholder that we represent, a very large stockholder, of how they're going to be impacted based on recent newly discovered facts.

There have been two open letters that were shareholder letters that were sent to and emailed to company top brass as well as various other parties including our client, a very large stockholder that has discussed some very serious accusations about potential misappropriation of funds, questioning the company's purported business prospects and oppositions even in Asia, not just in the U.S.

So our concern and our client's concern specifically is the fact that these settlements, whatever the proposed settlements are, in connection -- coupled with the deregulation -- deregistration and delisting of the company is going to pave the way for this company to be able to pretty

much abscond with the remaining cash reserves at this -- that are going to be left post-settlement of these cases and pretty much take away any chance current shareholders had at realizing any value on their investment like our stockholder that we represent.

THE COURT:  You have filed your application to intervene; right?

MR. KANDINOV:  Yes, Your Honor.

THE COURT:  And you just filed that --

MR. KANDINOV:  Just a few days ago, Your Honor, just about three business days after learning about the lifting of the TRO.

THE COURT:  Can I ask a question?  Why did you -- or why did your clients not intervene prior to now?

MR. KANDINOV:  Well, the TRO was in place for the last three months.  It was un -- it was just about a week ago where it got lifted and within the last, approximately, I would say 30 days, maybe a couple weeks.  These open letters to -- on behalf of an anonymous concerned shareholder -- are being sent to company top brass and also various other parties, including our Plaintiff who's also on that email as well, receiving that information who we believe -- whoever's writing this, appears to know about the internal operations at this company and has some serious accusations about wrongdoing that would affect current shareholders.

THE COURT:  But certainly your client must have known about both the *Wilhoite* litigation and the *Dicker* litigation a long time ago, right?  I mean, it's been all over the newspapers if I'm not mistaken, at least the *Wilhoite* case was in the newspaper.

MR. KANDINOV:  Totally.  And let me make it very clear that our goal was not at all to a typical motion to intervene in a -- maybe in a securities class action.

Nowadays, you see folks looking to object to the settlements; that is not our intention or not our concern.

That's why maybe we didn't intervene earlier is because we didn't really have any issues with the two pending cases in front of you, Your Honor.

It's just more about the TRO being lifted and how that would impact the current shareholders over the next short period of time.  We're talking about, I'd say, next quarter.

THE COURT:  But the thought that the case might be settled and the TRO be lifted, certainly that had to have been something that your client contemplated or thought about long before this week; right?

MR. KANDINOV:  Not necessarily.  Because we were taken aback at the fact that the TRO was lifted before the settlement terms were proposed to the Court or publicly made available.  So we didn't expect it to be lifted when it was.

THE COURT:  Well, but if the case, in fact, was

settled -- let's just speak hypothetically -- if say that two weeks ago Mr. Robbins or Mr. Chang or both came to me and said, "Hey, the case is settled and we want to dismiss these cases," I could have done that; right?  And then where would your client have been?

MR. KANDINOV:  At that situation, similar to where we would likely be if we -- if you were to grant -- that Your Honor was to grant the motion to intervene and to reinstate that TRO, we would be looking for a very brief period of time to review those settlement terms and then evaluate whether to stand down or potentially file a separate action altogether on behalf of current stockholders who are -- who would be harmed in that situation if the company's remaining net cash is going to be absconded or taken away to offshore.

THE COURT:  All right.  Well, let -- I'm not sure that I'm ready to rule on that motion to intervene at this time.

Let me hear from Mr. Robbins to start with.

What are your thoughts on this?

It sounds to me like this is really throwing a monkey wrench into the settlement that everybody has worked so hard on, but I don't know.

MR. ROBBINS:  Your Honor, that may be the intention, but let me add a little bit of clarity to what has become a

bit cloudy.

The class in *Dicker* is on behalf of purchasers of TuSimple shares from the IPO to the end of 2022.

What we know from public records is Camac, the proposed intervenor, did not begin buying shares in this company until 2024, Your Honor.

After it was revealed that a significant amount of alleged wrongdoing -- my opposing counsel, Mr. Smith, probably would disagree with me -- but what we do know is there's a lot of public revelations during 2022 about agreements between TuSimple and CFIUS, terminations of executives, investigations by federal regulatory authorities, a lawsuit brought by us alleging pervasive misconduct, Mr. Chang's lawsuit on behalf of Wilhoite, all of that existed prior to 2024.

And then what happened is on January 17th, 2024, it was revealed that TuSimple was delisting, and that day when that announcement was made is when Camac started purchasing these shares, Your Honor.  Yes, that is true.

And, in fact, its biggest purchase was two weeks later on January 31st, when there was another adverse revelation and they bought --

THE COURT:  Why would they do that?

MR. ROBBINS:  Well, Your Honor, I don't want to speculate, but what I wonder aloud is when you can buy shares -- not like the class members -- my client, Indiana,

Your Honor, bought shares at $50 per share and more.

Mr. Miller bought shares.

The other plaintiff at more than $30 a share.

Ms. Poirier at 50-plus dollars a share.

The shares that Camac bought were not at 30 or 15 or 12 -- they had fallen all the way to 25 cents a share, and when you can buy shares at 25 cents, and you believe that there are hundreds of millions of dollars of cash assets on the balance sheet, that might induce someone to start to take action to perhaps take advantage of the difference between the trading price and what you think you might be able to obtain through some action.

But what I do know, Your Honor, is that in their own pleading that was filed -- this is Docket 224-1 -- they say, "This action seeks a recovery only on behalf of certain purchasers of the Company's stock during the class period, not current investors."  That's absolutely true.

So they are not members -- Camac is not a member of the class.  There's no -- and you heard Mr. Kandinov say to you that they don't intend to object.  They may have a concern with TuSimple and what it's doing today, but the alleged misconduct in our case ended in 2022, and that's the focus just for people who bought during that period.

And so Rule 24, Your Honor, 24(a)(2) and 24(c), are designed to distinguish between intervenors and interlopers;

right?

Your Honor has dealt with this issue in the past.

There's Article 3 standing that's required.

The Ninth Circuit, as Your Honor cited almost 15 years ago --

THE COURT: Let me guess, was that the real estate --

MR. ROBBINS: The *Searchguy* case, Your Honor, was the one you issued, citing the Ninth Circuit, and particularly citing the Ninth Circuit in a case called *Alisal*, A-l-i-s-a-l. Your Honor cited footnote 3, where it basically says if we don't have someone file a pleading -- 24(c) has a requirement -- file a complaint and intervention so we can understand what your claim is, and we can make an assessment.

Because what it looks like here, Your Honor, is they may have some beef or issue with the company as a current holder. They can take that up in Delaware. Perhaps they can take that up here, but it has nothing to do with the case that we're prosecuting in *Dicker* which is a class action of those who bought during this period and that's it.

The case has been -- a settlement has been reached, and like we said earlier, we will present that settlement to this court, and it's not just fair, reasonable, and adequate -- it's exceptional.

THE COURT: And, again, I never issued a temporary

restraining order in your case; is that correct?

MR. ROBBINS:  You are right, Your Honor.

Let me clarify that.  Because I want to read -- because there's ambiguity.  I meant to deal with that.

What is being referred to here, Mr. Smith said, "No," -- and I'll let the Court interpret this -- Docket 189 in *Dicker* is a stipulation that was reached before Magistrate Judge Berg.

Part of this case in *Dicker* was referred by Your Honor to Magistrate Judge Berg.

And in connection with a TRO that was filed on May 30th, there was a hearing that took place on May 31st.

And while the Court indicated it was disinclined to grant the TRO request, the Court memorialized the following, and it says, "Defendant TuSimple is ordered not to transfer funds outside the United States until the June 14, 2024, hearing."

So what that was, was a stipulation reached -- oral stipulation between the parties and entered by Judge Berg in connection with the hearing that took place on that date.

So that's, I think -- they keep referring to Your Honor, but in fact that took place under the auspices of Magistrate Judge Berg

THE COURT:  That's what I thought.  Okay.

MR. ROBBINS:  Yeah.

THE COURT:  All right.

MR. ROBBINS:  Does that answer --

THE COURT:  Yeah.

MR. ROBBINS:  Okay.

THE COURT:  Mr. Chang?

MR. CHANG:  Thank you, Your Honor.

THE COURT:  What are your thoughts?

MR. CHANG:  I'll just add two sentences.

One, is that Camac is a complete stranger to the shareholder derivative lawsuit filed by Mr. and Mrs. Wilhoite which was filed on behalf of TuSimple to address wrongdoing or alleged wrongdoing, and self-dealing at TuSimple from 2021 to 2023.

And as Your Honor heard earlier, Camac did not become a shareholder until January of this year after the *Wilhoite* lawsuit has been filed and after preliminary injunction or TRO proceedings had commenced.

And so under Rule 23.1, Camac has no contemporaneous ownership in this derivative litigation, and Camac has no derivative standing to assert any claims that have been inserted in this shareholder derivative lawsuit.

And Camac actually -- I think, it's out of confusion that counsel just stated that he was trying to intervene in the *Wilhoite* case.  He did not -- Camac was denied file motion to intervene in the shareholder derivative lawsuit.

And Camac would have nothing to do with the settlement

that we have negotiated that we'd present to the Court in September

THE COURT:  Okay.

MR. CHANG:  Thank you.

THE COURT:  Mr. Smith?

MR. SMITH:  Thank you, Your Honor.

I won't take up too much time at all.  I wholeheartedly agree with Mr. Robbins' characterization of what happened before Judge Berg.  There was no TRO that was entered.

I will disagree with both Mr. Chang and Mr. Robbins' characterization of the company's conduct and any defendant's conduct, but I think you get that.

THE COURT:  Can we just agree that you disagree --

MR. SMITH:  We agree to disagree.

THE COURT:  -- about all that?

MR. SMITH:  Exactly.

THE COURT:  All right.

MR. SMITH:  What I want to get up and address is the question that you asked, Your Honor, which is why Camac would do what they did?

Mr. Robbins was, I think, generous in not wanting to speculate.  We don't need to speculate at all.

Camac put out a letter May 30th, 2024, as a public press release where they said, and called on the company to "immediately return all excess cash, which we believe to be in

excess of $2.5 per share."

So exactly to Mr. Robbins' point, this is a fund that sweeps in and buys distressed assets.  They bought the shares at 30 cents a share with the specific strategy to try and force the company to return cash to shareholders so that they could make a return, that's what they're doing.  They're coming into this action -- or attempting to come into this action to try and preserve whatever their investment is.

THE COURT:  How much was their investment, do you know?

MR. SMITH:  I don't know the exact numbers, Your Honor, but, again, it was 20 cents a share.  I think they bought 5 percent of the company.  So it's probably around 2.5 million, somewhere around there.  And they were thinking that they could get, you know, 5x of that and if they could force the company to return its cash which it hasn't done.

THE COURT:  Why don't you give them the two and a half million back and get the money in a year --

MR. SMITH:  It doesn't -- they didn't buy it from us, Your Honor, the securities they bought from other investors, they would have to go and find those investors to get that money back.

THE COURT:  Okay.

MR. SMITH:  Thank you, Your Honor.

THE COURT:  Well, okay.

Anything else anyone has to add?

I wanted to figure out where this is all going and what was going to happen.

Mr. Robbins?

MR. ROBBINS:  Your Honor, the only thing I would like to add is we would like to be able to file a formal response so that Your Honor can have a more complete record to this motion because there's a number of defects in it --

THE COURT:  Yeah.

MR. ROBBINS:  -- that we just alluded to.

And the law at the Supreme Court, the Ninth Circuit, and Your Honor's own decisions rejected out of hand.  In fact, at page 5 of their motion, they cite a couple of cases, all of which support the denial of their request for intervention here.

THE COURT:  Okay.  Why did you list those in that order?  The Supreme Court --

MR. ROBBINS:  Touché, Your Honor.

THE COURT:  All right.

So here's my thoughts on this:  I will allow you -- any of you who have an interest and who wish to file an opposition to the application to intervene.

I'm not going to reinstate that temporary restraining order -- if there was such a temporary restraining order -- at this time or at any time until I put it in writing.

So if you have an opposition to the application to intervene, please file it.

And if you have a settlement that you have been working on, continue to work on it.

Get me whatever it is you think that I need to have in order to put my seal of approval on the settlement.

I will say that I know that all parties, and I included, have worked very, very hard on this case so far.

It is a little troubling that at this late stage, someone would come in and want to intervene, but, you know, I'll look at the law and the facts, and if it appears that you do have a right to intervene, then I will issue that order.

If not, then I won't.  Okay.

Is there anything else anyone thinks that we ought to address at this time?

If not, this hearing is concluded.  Thank you.

MR. CHANG:  Thank you, Your Honor.

MR. ROBBINS:  Thank you, Your Honor.

(The proceedings were adjourned at 4:13 p.m.)

-oOo-

C E R T I F I C A T E


I, Cristine R. Gerongco, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter; and that the format used complies with the rules and requirements of the United States Judicial Conference.


Dated:  August 12, 2024

/s/Cristine R. Gerongco

_____
Cristine R. Gerongco, CSR 13517
U.S. Official Court Reporter