ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
JENNIFER N. CARINGAL (286197)
HEATHER G. GEIGER (322937)
STEPHEN JOHNSON (347822)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
elleng@rgrdlaw.com
lolts@rgrdlaw.com
jcaringal@rgrdlaw.com
hgeiger@rgrdlaw.com
sjohnson@rgrdlaw.com

KAHN SWICK & FOTI, LLP
RAMZI ABADOU (222567)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN DICKER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TUSIMPLE HOLDINGS, INC., et al., <br><br> Defendants. | Case No. 3:22-cv-01300-BEN-MSB (Consolidated with No. 3:23-cv-00282-BEN-MSB) <br><br> CLASS ACTION <br><br> DECLARATION OF LUCAS F. OLTS IN SUPPORT OF MOTION FOR: (1) FINAL APPROVAL OF PROPOSED SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) <br><br> Date:  December 2, 2024 <br> Time:  10:30 a.m. <br> Judge:  Hon. Roger T. Benitez <br> Ctrm:  5A |

4887-8196-8877.v1

I, LUCAS F. OLTS, declare as follows:

1.     I am an attorney duly licensed to practice in the State of California and before this Court. I am a member of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), Court-appointed lead counsel for lead plaintiff Indiana Public Retirement System ("INPRS" or "Lead Plaintiff") and the Settlement Class,[1] in the above-captioned action (hereinafter, the "Litigation").[2] My knowledge of the matters stated herein is based on my active participation in all material aspects of the prosecution and settlement of this Litigation, as well as my discussions and communications with other members of Plaintiffs' Counsel's prosecution team.[3] Unless otherwise noted, I could and would competently testify that the following facts are true and correct.

2.     I submit this declaration in support of Plaintiffs' motion for approval of: (a) the $189 million cash settlement on behalf of the Settlement Class (the "Settlement"); (b) the proposed Plan of Allocation; (c) Plaintiffs' Counsel's

---

[1]    Pursuant to this Court's September 5, 2024 Order (ECF 235), for the purpose of effectuating the Settlement, the Settlement Class is defined as:

> [A]ll Persons who purchased and/or otherwise acquired TuSimple securities between April 15, 2021 and December 20, 2022, inclusive (the "Class Period"). Excluded from the Settlement Class are: (i) Defendants and members of their immediate families; (ii) current and former officers and directors of TuSimple and members of their immediate families; (iii) any entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant; (iv) TuSimple's subsidiaries and affiliates or other entities owned or controlled by it; (v) the legal representatives, heirs, successors, or assigns of each Defendant; and (vi) any Persons who properly exclude themselves by submitting a valid and timely request for exclusion.

[2]    Capitalized terms not otherwise defined herein have the same meanings as those ascribed to them in the Stipulation of Settlement (ECF 233-3) ("Stipulation").

[3]    "Plaintiffs' Counsel" refers to Robbins Geller and Kahn Swick & Foti, LLC ("KSF").

- 1 -                                        3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1

1  application for an award of attorneys' fees and expenses; and (d) an award to Plaintiffs

2  pursuant to 15 U.S.C. §78u-4(a)(4).[4]

3  **I.    PRELIMINARY STATEMENT**

4       3.    The $189 million proposed Settlement represents the culmination of two

5  years of hard-fought litigation and is one of the most significant settlements in the

6  history of this District.  The result is not merely adequate, it is exceptional, as the

7  recovery here is 7 times the mean recovery for securities class actions settled during

8  the first half of 2024 ($26 million) and 20 times larger than the median recovery for

9  securities class actions settled during the first half of 2024 ($9 million).  *See* Edward

10  Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation:*

11  *2024 H1 Update*, at 15, fig. 13 and 16, fig. 14 (NERA Aug. 6, 2024).

12       4.    Plaintiffs' Counsel zealously, efficiently, and effectively prosecuted the

13  Litigation and faced significant risks in doing so.  As detailed herein, Plaintiffs faced

14  substantial risks associated with Defendants' various motions to dismiss the

15  Consolidated Complaint (which remained pending at the time of the Settlement) as

16  well as Plaintiffs' ability to later somehow obtain discovery located in China, achieve

17  class certification, and then overcome customary summary judgment motions.  Even

18  assuming Plaintiffs successfully litigated the action past every hurdle identified above,

19  and later obtained a favorable jury verdict, collecting on any recovery after the all-but-

20  certain post-judgment appeal remains highly uncertain.  That Plaintiffs' and Plaintiffs'

21  Counsel obtained a recovery of ***this*** magnitude in the face of such risks is remarkable.

22       5.    In agreeing to settle the Litigation, Plaintiffs and Plaintiffs' Counsel were

23  fully informed about the various strengths of their case, as well as the substantial risks

24  they would face should litigation continue.  In opting to resolve this matter, Plaintiffs

25  and Plaintiffs' Counsel reasonably concluded that the settlement they obtained was in

26  the Settlement Class's best interest and provides a significant recovery to the

27  _____

[4]    "Plaintiffs" refers to INPRS and plaintiffs Robert Miller and Michelle Poirier.

28

4887-8196-8877.v1

Settlement Class.  Plaintiffs remained well-informed throughout the Litigation and settlement negotiations and ultimately approved the Settlement.  *See* Declaration of Jeffrey M. Gill, Declaration of Robert Miller, and Declaration of Michelle Poirier, filed herewith.

6. Plaintiffs' Counsel were able to negotiate the proposed Settlement only after:

- successfully moving for INPRS' appointment as Lead Plaintiff and Robbins Geller as Lead Counsel in August 2023;

- conducting extensive factual and legal investigations, culminating in the drafting and filing of the Consolidated Class Action Complaint for Violations of the Federal Securities Laws on October 2, 2023 (ECF 103);

- ensuring that all Defendants, including those located in China, were complying with the document preservation requirements as required under the Private Securities Litigation Reform Act of 1995 ("PSLRA") (*See* ECF 113);

- preparing extensive briefing in response to Defendants' seven separate motions to dismiss the Consolidated Complaint (ECFs 135-139, 141-142, 149, 175) and defendants Chao's and Zhang's motions to quash service of the summons and complaint and to dismiss the Consolidated Complaint (ECFs 147, 168);

- fully briefing a motion to request alternate service of process and to lift the PSLRA discovery stay with respect to defendants Chao and Zhang (ECFs 148, 157, 172);

- executing an agreement with TuSimple requiring it to regularly provide Plaintiffs with confidential financial information and advance notice of certain asset transfers to protect the putative class's potential recovery from dissipation (ECFs 187-2, 187-3), which provided for oversight and enforcement by Magistrate Judge Michael S. Berg (ECF 174) ("Asset Protection Agreement");

- ensuring compliance with the Asset Protection Agreement reached in order to prevent dissipation of recoverable assets;

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-
00282-BEN-MSB)

4887-8196-8877.v1

- receiving and analyzing, with the assistance of an in-house forensic accounting expert, seven separate productions of non-public financial data;

- fully briefing and arguing a motion for temporary restraining order and for limited expedited discovery to prevent TuSimple from transferring assets outside the jurisdiction of the Court, thereby protecting the ability of the Settlement Class to recover this record-breaking sum (ECFs 187, 192, 198, 206, 210);

- negotiating and executing an agreement with TuSimple requiring it to provide Plaintiffs thousands of pages of documents in advance of the PSLRA discovery stay being lifted, including deposition transcripts and sworn statements from a related action (ECFs 203-4, 203-5), and reviewing those documents;

- briefing and arguing an *ex parte* motion when TuSimple violated the Asset Protection Agreement (ECFs 203, 209-210), and negotiated a resolution of that motion (ECFs 218, 222);

- researching and opposing an untimely motion to intervene (ECF 224); and

- engaging in extended mediation negotiations under the auspices of former U.S. District Judge Layn R. Phillips of Phillips ADR Enterprises ("Judge Phillips"), including the exchange of detailed mediation statements (which involved consultations with various experts), that culminated in a mediator's proposal that the Settling Parties accepted.

7.    The proposed Settlement of $189 million in cash is the direct product of Plaintiffs' and Plaintiffs' Counsel's efforts, including those described in this declaration.   The Settlement is also the product of the parties' arm's-length negotiations, including extended mediation efforts over the course of several months, overseen by one of the nation's foremost mediators.   These negotiations were conducted by experienced counsel with an intimate understanding of the case and ultimately resulted in a mediator's proposal that was accepted by both sides.

8.    Plaintiffs' Counsel also seek approval of the proposed Plan of Allocation (the "Plan"), which Plaintiffs' Counsel submit is fair and reasonable.  The Plan was

prepared based on the analysis of Plaintiffs' consulting damages expert. As further described below and in the Notice, the Plan provides formulas for calculating the recognized loss of each Settlement Class Member that submits a Proof of Claim form based on when the claimant purchased and/or sold their TuSimple securities. Authorized Claimants, including Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan, and Plaintiffs will be subject to the same formula for distribution of the Net Settlement Fund.

9.     Plaintiffs' Counsel prosecuted the Litigation on a wholly contingent basis, advancing and incurring substantial litigation expenses, charges, and costs. Plaintiffs' Counsel shouldered substantial risk in doing so and, to date, have not received any compensation for their efforts. Accordingly, in consideration of Plaintiffs' Counsel's extensive efforts on behalf of the Settlement Class, Plaintiffs' Counsel are applying for an award of attorneys' fees in the amount of 25% of the Settlement Amount and an award of $230,279.90 in litigation charges and expenses, and any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.

10.     As set forth in the accompanying Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee Memorandum"), the requested fee is within the range of fees awarded in PSLRA securities class action settlements, is consistent with the Ninth Circuit's presumptively reasonable 25% benchmark rate, and is justified in light of the exceptional result achieved for the Settlement Class and the significant risks undertaken by Plaintiffs' Counsel in this complex litigation. Plaintiffs' Counsel submit that the fee application is fair to the Settlement Class, is endorsed by Plaintiffs, and warrants the Court's approval.

11.     Plaintiffs' Counsel also seek an award in the amount of $230,279.90 (plus interest accrued thereon) for expenses, costs, and charges reasonably and

4887-8196-8877.v1

1  necessarily committed to the prosecution of the Litigation over the last two years.

2  These expenses include: (a) the fees and expenses of experts and consultants whose

3  services were required for the successful prosecution and resolution of this case; (b)

4  photocopying, imaging, shipping, and managing a database of documents for the

5  Litigation; (c) online factual and legal research; and (d) mediation expenses.

6      12.    Additionally, Plaintiffs seek an award in the aggregate amount of

7  $13,240 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of

8  the Settlement Class.  Plaintiffs actively monitored the Litigation and supervised

9  Plaintiffs' Counsel and in doing so spent time discussing litigation strategy, case

10  development, and settlement negotiations with Plaintiffs' Counsel.  After discussions

11  with Plaintiffs' Counsel, Plaintiffs approved the Settlement.

12  **II.    FACTUAL BACKGROUND OF LITIGATION**

13      13.    The Consolidated Complaint alleges violations of §§11, 12(a)(2), and 15

14  of the Securities Act of 1933 (the "Securities Act"); violations of §10(b) of the

15  Securities Exchange Act of 1934 (the "Exchange Act"); Securities and Exchange

16  Commission ("SEC") Rule 10b-5 promulgated thereunder; and §§20(a) and 20A of

17  the Exchange Act against defendants TuSimple, Guowei "Charles" Chao, Xiaodi Hou,

18  Mo Chen, Bonnie Yi Zhang, Cheng Lu, Patrick Dillon, Brad Buss, Karen C. Francis,

19  Morgan Stanley & Co. LLC, Citigroup Global Markets, Inc., J.P. Morgan Securities

20  LLC, BofA Securities, Inc., Cowen and Company, LLC, Credit Suisse Securities

21  (USA) LLC, Nomura Securities International, Inc., RBC Capital Markets, LLC,

22  Needham & Company, LLC, Oppenheimer & Co., Inc., Piper Sandler & Co., Robert

23  W. Baird & Co., and Valuable Capital Limited (together, "Defendants").

24      14.    The Consolidated Complaint alleges that Defendants engaged in a

25  scheme to raise money from U.S. investors while concealing that Defendants were

26  covertly transferring TuSimple's proprietary driverless technology to a Chinese

27  company controlled by TuSimple senior insiders CEO Xiaodi Hou, Board Chair

28

- 6 -

4887-8196-8877.v1

1   Guowei Chao, and Executive Chairman Mo Chen.  Plaintiffs allege Defendants did so

2   while simultaneously misrepresenting that TuSimple's automated semi-trucks were

3   safe in order to use U.S. motorists as test subjects for the development of the

4   Company's artificial intelligence ("AI").  Defendants' alleged misrepresentations

5   were ultimately revealed through a series of *Wall Street Journal* investigative reports

6   and the Company's own admissions, leaving shares of TuSimple's common stock

7   nearly worthless by the end of the Class Period.

8        15.    Specifically, the Consolidated Complaint alleges that TuSimple

9   completed its IPO on April 15, 2021. ¶7.[5]  The IPO was conducted against a backdrop

10  of heightened regulatory scrutiny of Chinese companies operating in U.S. markets,

11  which led Defendants to incorporate TuSimple in the United States rather than China.

12  ¶¶9-10, 14.  On March 29, 2021, two weeks before the IPO, Chen launched a rival

13  autonomous trucking company based in China – Hydron.  ¶8.  Chen founded Hydron

14  with Hou's knowledge and with financial backing from Chao, who also held a

15  significant interest in TuSimple at the time of the IPO.  ¶¶101, 155.  The Company has

16  since been forced to acknowledge that TuSimple's intellectual property had been

17  secretly transferred to Hydron to replicate TuSimple's technology.  The Consolidated

18  Complaint alleges that this violated not only the federal securities laws at issue here,

19  but various U.S. national security laws.  ¶¶16, 102, 109, 251.

20       16.    Within a year of the IPO, on February 18, 2022, after an investigation by

21  the Committee on Foreign Investment in the United States ("CFIUS"), TuSimple was

22  forced to enter into a National Security Agreement ("NSA") which required TuSimple

23  to maintain certain safeguards meant to protect its intellectual property, including: (i)

24  forcing Chao and Zhang off of TuSimple's board; (ii) requiring the appointment of a

25

26  [5]  All "¶_" or "¶¶_" references are to the Consolidated Class Action Complaint for
    Violations of the Federal Securities Laws (ECF 103) (the "Consolidated Complaint");
27  internal citations are omitted and emphasis is added throughout unless otherwise
    stated.

28
                                        - 7 -

4887-8196-8877.v1

"security officer" and a "security director" on TuSimple's Board that would chair a "Government Security Committee"; and (iii) isolating TuSimple's data and technology from the Company's Chinese subsidiary. ¶¶12, 103-106. During the Class Period, TuSimple violated nearly every term of the NSA. ¶¶108-116.

17.    In July 2022, TuSimple's Board launched an internal investigation into the Company's ties to Hydron. ¶15. Following extensive public reporting of the various criminal investigations into Defendants' violations of the NSA, on October 31, 2022, TuSimple announced it had terminated its founder, Hou. ¶112. However, Hou and Chen responded by using their majority voting power to remove the very committee that removed Hou as CEO – and fired the entire Audit Committee, including its national security director, in blatant violation of the NSA. ¶¶113-121. In response, TuSimple's auditors at KPMG immediately resigned and, as widely reported, members of CFIUS recommended criminal espionage charges against Chen and Hou. ¶121. More investigations have followed, with the Company admitting on September 7, 2023, that the SEC had issued subpoenas to Company insiders concerning its ties to Hydron. ¶152.

18.    Additionally, the Consolidated Complaint alleged that Defendants made statements that misrepresented the safety of TuSimple technology, its status and development, and the focus on safety that the Company maintained. Specifically, after a semi-truck using TuSimple's autonomous driving technology crashed on April 6, 2022, and a TuSimple employee leaked a video of the April crash on July 25, 2022, TuSimple falsely blamed "human error" for the crash. ¶¶31-33, 229. Additionally, the Consolidated Complaint alleged that statements made prior to and after the April crash falsely and misleadingly stated that: (i) safety was TuSimple's number one priority (¶¶198, 200, 202); and (ii) TuSimple's trucks were "feature complete" (¶¶205-206, 208-209, 216, 218), "fail safe" (¶209), and had "no unconquered technical challenges on the table" (¶211). In reality, Company employees responsible for

- 8 -

1  ensuring the safety of TuSimple technology were allegedly dismissed, silenced, and in
2  some cases fired, as the TuSimple Defendants internally flouted the very concern for
3  safety they outwardly touted.  ¶¶126, 129, 239, 241-245, 261.

4       19.    The truth about Defendants' materially false statements and omissions
5  was gradually revealed in a series of corrective disclosures.  On March 3, 2022, the
6  Company unexpectedly announced the replacement of defendant Lu as President and
7  CEO and the removal of Chen as Chairman of the Board.  ¶275.  The market reacted
8  swiftly, with the price of TuSimple stock falling 32% in the two days that followed.
9  ¶¶276-279.  Then, on August 1, 2022, the *Wall Street Journal* published an article
10 exposing previously undisclosed concerns about the safety of TuSimple's vehicles,
11 contradicting Defendants' claims of safety being the Company's number one priority
12 as well as Defendants' misleading excuses regarding the cause of the April crash,
13 including reports from independent analysts, interviews with former TuSimple
14 employees, and internal Company documents.  ¶¶280-281.  In response, TuSimple
15 shares declined 9.7% in a single day.  ¶¶283-285.

16      20.    Then, on October 30, 2022, the *Wall Street Journal* published another
17 investigative report, this time revealing that the Federal Bureau of Investigation
18 ("FBI"), SEC, and CFIUS were each investigating the Company and its executives to
19 determine whether they improperly shared Company technology and intellectual
20 property with Hydron.  ¶286.  The very next day, the Company admitted that its
21 "employees spent paid hours working on matters for Hydron" and that TuSimple had
22 "shared confidential information with Hydron and its partners" in related-party
23 transactions that were "not presented to, or approved by, the Audit Committee" in
24 direct violation of the Company's Code of Conduct.  ¶287.  The same October 31,
25 2022 press release on SEC Form 8-K announced that TuSimple had fired defendant
26 Hou "and removed Dr. Hou from his position as Chairman of the Board, in each case,
27 effective [yesterday]."  ¶288.  More than a half-dozen analyst reports were issued in

28

4887-8196-8877.v1

the days that followed, downgrading the Company's stock and lowering price targets, and TuSimple stock dropped over 40% in a single trading day.  ¶289.

21.    On December 5, 2022, and in direct response to these negative developments, TuSimple announced Navistar's termination of its partnership with TuSimple to develop self-driving trucks. ¶292.  Again, analysts downgraded the Company's stock and its price declined significantly, this time by over 19%.  ¶¶292-294.  On December 20, 2022, news leaked that TuSimple intended to lay off a significant portion of its workforce, which the Company confirmed the next day as part of "a broad restructuring plan." ¶296.  TuSimple's stock price again declined significantly, down to $1.42 per share.  ¶¶297-298.

## III.    PROCEDURAL HISTORY OF THE CASE

### A.    The Initiation of the Action and INPRS's Appointment as Lead Plaintiff

22.    Throughout this Litigation, Plaintiffs and Plaintiffs' Counsel zealously, efficiently, and effectively prosecuted this matter.

23.    On August 31, 2022, the first complaint in the Litigation was filed. ECF 1.  On October 31, 2022, additional plaintiffs Robert Miller and Michelle Poirier moved for lead plaintiff.  On November 10, 2022, a related complaint was filed in the United States District Court for the Southern District of New York.  *See Woldanski v. TuSimple Holdings, Inc., et al.*, Case No. 3:23-cv-00282, ECF 1 (S.D.N.Y.) ("*Woldanski*").  On January 9, 2023, INPRS moved for lead plaintiff in the *Woldanski* action in the event the *Woldanski* court declined to transfer the action to this District. On April 21, 2023, *Woldanski* was transferred to this District. *Id.*, ECF 75.  On July 20, 2023, the Court consolidated the two related cases and set a briefing schedule for the appointment of a lead plaintiff.  ECF 96.  On August 2, 2023, INPRS informed the Court that none of the competing lead plaintiff movants challenged INPRS's status as the presumptive lead plaintiff.  ECF 99.  On August 3, 2023, the Court appointed INPRS as Lead Plaintiff and Robbins Geller as Lead Counsel.  ECF 100.

4887-8196-8877.v1

24.     On August 11, 2023, Lead Plaintiff and Defendants filed a Joint Motion establishing a schedule for filing the consolidated complaint and any responses thereto.  ECF 101.  The Court adopted the proposed schedule on August 16, 2023. ECF 102.

**B.     Plaintiffs' Investigation, Filing of the Consolidated Complaint, and Briefing Defendants' Motions to Dismiss**

25.     Plaintiffs continued their investigation into the putative class's claims, which consisted of, *inter alia*: (i) identifying, locating, and interviewing former TuSimple employees and other witnesses likely to have information pertinent to the claims alleged; (ii) researching the relationships between Defendants and third-party companies, including Hydron; (iii) reviewing pleadings from a lawsuit brought by a former TuSimple employee; and (iv) thoroughly reviewing and analyzing TuSimple's public disclosures, including: (a) transcripts of TuSimple's quarterly conference calls held to discuss the Company's financial results and other presentations made by top management at investor conferences (b) TuSimple's periodic SEC filings, including Forms 10-K, and Forms 10-Q; (c) TuSimple's offering documents; (d) SEC documents reflecting the Defendants' and other Company insiders' trades; and (e) an examination of industry and Company stock price reaction to Defendants' alleged misstatements and corrective disclosures, including detailed analyst reports discussing TuSimple and its public disclosures.  On October 2, 2023, based upon the results of their investigation, Plaintiffs filed the Consolidated Complaint.  ECF 103.

26.     On December 8, 2023, Defendants filed seven separate motions to dismiss the Consolidated Complaint.  ECFs 135-139, 141-142.  On January 3, 2024, defendants Chao and Zhang filed a motion to quash service and to dismiss the Consolidated Complaint.  ECF 147.  On January 4, 2024, Plaintiffs filed a motion to request alternate service of process for defendants Chao and Zhang and to partially lift the PSLRA discovery stay.  ECF 148.  On January 29, 2024, Plaintiffs filed their omnibus opposition brief to the seven motions to dismiss.  ECF 149.  On February 26,

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

2024, Defendants filed their reply briefs in support of their respective motions to dismiss. ECFs 155-156, 158-162. Also on February 26, 2024, Plaintiffs filed a notice of supplemental authority in support of Plaintiffs' motion to request alternate service. ECF 157. On March 12, 2024, the Court took the seven motions to dismiss under submission and vacated the March 18, 2024 hearing. ECF 167.

27.    On March 18, 2024, Plaintiffs opposed defendants Chao and Zhang's motion to quash service and motion to dismiss the Consolidated Complaint. ECF 168. The same day, defendants Chao and Zhang opposed Plaintiffs' motion to request alternate service of process for defendants Chao and Zhang and to partially lift the PSLRA discovery stay. ECFs 169-170. On March 25, 2024, Plaintiffs filed their reply in support of their motion for alternative service of process and to partially lift the PSLRA discovery stay. ECF 172. Also on March 25, 2024, defendants Chao and Zhang filed their reply in support of their motion to quash service and motion to dismiss. ECF 171. The Court took both motions under submission on March 26, 2024. ECF 173. Plaintiffs filed a notice of supplemental authority in further opposition to Defendants' motions to dismiss on March 27, 2024. ECF 175.

## C.    The March 2024 Agreement and the Motion for a Temporary Restraining Order

28.    In February 2024, Plaintiffs began negotiating an Asset Protection Agreement with TuSimple in order to protect the putative class's potential recovery from dissipation. Such assurances were necessary because TuSimple had just announced that it had fired most of its American workforce, deregistered its stock from NASDAQ, liquidated most of its physical assets in the United States, and had commenced transferring its remaining assets to the People's Republic of China. TuSimple publicly announced that the Company's plan was to "mov[e] its business to China." ECF 149-3 at 21; *see also id.* at 7 (announcing TuSimple's "aim of winding down the Company's U.S. operations, which may include sales of U.S. assets . . . in order to facilitate the Company's strategic shift to the Asia-Pacific region").

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1

1    Consistent with that plan, public reports revealed that defendant Lu wanted computer

2    processing chips that contained the Company's self-driving technology "sent to

3    China."  ECF 151-2 at 2, 4.  Luckily, that shipment was seized by United States

4    officials.  *Id.*  In *Wilhoite, et al. v. Hou, et al.*, No. 3:23-cv-02333 (S.D. Cal.)

5    ("*Wilhoite*"), this Court had issued a temporary restraining order enjoining TuSimple

6    from transferring any proceeds from any sale, transfer, or disclosure of TuSimple

7    intellectual property assets.

8        29.    On February 8, 2024, TuSimple filed a Form 15 with the SEC, which

9    ended trading of TuSimple common stock on NASDAQ and "the Company's

10   obligation to file periodic reports such as 10-K's, 10-Q's and 8-Ks with the SEC."[6]

11   Without those required public disclosures, Plaintiffs and the putative class had no

12   information about the amount or location of the Company's assets, the state of its

13   operations, or its business plans, and thus had no knowledge as to whether Defendants

14   would transfer some or all of its assets to China and/or be able to pay the recovery

15   sought in the Litigation.

16       30.    Following extensive negotiations, on March 26, 2024, Plaintiffs and

17   TuSimple entered into the Asset Protection Agreement whereby TuSimple was

18   required to provide Plaintiffs with time-sensitive confidential financial information

19   about the Company and advance notice of any asset transfer that exceeded certain

20   specifically defined thresholds.  *See* ECF 187-2.  Plaintiffs only reached this

21   agreement after TuSimple disclosed a significant amount of non-public financial

22   information, as well as TuSimple's internal control policies governing transfers of

23   assets.  Plaintiffs' Counsel, along with an in-house forensic accounting expert,

24

25   ───────────────
     [6]   *See* TuSimple's SEC Form 15, Certification and Notice of Termination of
26   Registration Under Section 12(g) of the Securities Exchange Act of 1934 or
     Suspension of Duty to File Reports Under Sections 13 and 15(d) of the Securities
27   Exchange Act of 1934 (Feb. 8, 2024), https://www.sec.gov/Archives/edgar/
     data/1823593/000119312524027409/d625582d1512g.htm.
28

4887-8196-8877.v1

analyzed each of the documents produced to ensure that any agreement Plaintiffs reached would be effective in protecting the putative class's potential recovery.

31. Also on March 26, 2024, Plaintiffs and Defendants filed a joint motion requesting discovery and related matters to be referred to Magistrate Judge Michael S. Berg. ECF 174. The Court granted the motion on April 3, 2024. ECF 178. Subsequently, Plaintiffs and Defendants jointly moved for a protective order on April 12, 2024, which was granted – with modifications – on April 15, 2024. ECFs 179, 181. Defendants and Plaintiffs appeared for a telephonic conference with Magistrate Judge Berg on April 22, 2024 (ECF 182), and provided Judge Berg with a copy of the Asset Protection Agreement the following day. *See* ECF 187-2 at ¶3.

32. On May 14, 2024, Plaintiffs were advised that TuSimple had not provided notice with respect to a payment as required by the Asset Transfer Limitation and Disclosure Agreement. *See* ECF 187-2 at ¶14. Plaintiffs met and conferred with TuSimple to discuss TuSimple's breach of the Asset Protection Agreement, including on May 20 and May 30, 2024, but did not receive satisfactory assurances that TuSimple would not unilaterally breach the Asset Transfer Limitation and Disclosure Agreement again. *See id.* at ¶16.

33. On May 30, 2024, Plaintiffs moved for a temporary restraining order and for limited expedited discovery. ECF 187. The next day, Magistrate Judge Berg ordered that TuSimple not transfer any funds outside the United States until Plaintiffs' motion for a temporary restraining order was fully briefed and heard, and set deadlines for TuSimple's response and Plaintiffs' reply. *See* ECF 189. Plaintiffs' motion for a temporary restraining order was fully briefed by June 12, 2024. ECFs 198, 206. On June 14, 2024, Plaintiffs and TuSimple participated in a conference before Magistrate Judge Berg and Plaintiffs' motion for a temporary restraining order was thereafter taken under submission. *See* ECF 210. While the motion was pending, Judge Berg's order preventing the transfer of TuSimple's assets remained in place. *Id.*

34.     On July 8, 2024, the Settling Parties accepted Judge Phillips' proposal to resolve the Litigation in exchange for a cash payment of $189 million for the benefit of the Settlement Class, subject to the execution of a Stipulation of Settlement and approval by the Court.  After reaching an agreement in principle, on July 30, 2024, Plaintiffs withdrew their motion for a temporary restraining order and the Settling Parties jointly moved to vacate the May 31, 2024 Order. *See* ECFs 217, 218.  On July 31, 2024, Magistrate Judge Berg granted the motion to vacate the May 31, 2024 Order.  ECF 222.  In response, a third party – Carmac Fund, LP ("Carmac") – filed a motion to intervene for purposes of moving to reinstate the (as yet unissued) temporary restraining order on August 5, 2024.  ECF 224.  The Settling Parties and third party Carmac appeared before this Court on August 8, 2024, wherein Plaintiffs' Counsel argued in opposition to Carmac's motion to intervene.  ECF 229.  On August 12, 2024, Carmac withdrew its motion to intervene.  ECF 228.

## IV.     THE STRENGTHS AND WEAKNESSES OF THE CASE AND THE RISKS FACED BY PLAINTIFFS IN THE LITIGATION

35.     As outlined above, after significant investigation and thorough motion practice, including numerous motions to dismiss and the motion for a temporary restraining order, Plaintiffs' Counsel provided Plaintiffs with a thorough understanding of the strengths and weaknesses of their claims in the Litigation and the prospects of recovering a judgment should the claims be successful through trial. Based on the information and documents obtained through the investigation, publicly available documents, documents reviewed during mediation, and consultations with experts, Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Litigation have merit.  However, they also recognize that Plaintiffs and the Settlement Class Members faced considerable risks and defenses in continuing the action.

36.     Although Plaintiffs' Counsel developed a compelling Consolidated Complaint, the Settlement Class faced both factual and legal challenges at the motion to dismiss stage and potentially on appeal.  Moreover, even if the Consolidated

Complaint survived the challenges presented at the motion to dismiss stage, Plaintiffs and the Settlement Class Members still faced significant hurdles at class certification, summary judgment, and ultimately at trial. Based on all these factors, as well as the extensive experience of Plaintiffs' Counsel in the litigation of securities class actions, the Settlement, which provides a very substantial recovery to Settlement Class Members, is far more beneficial than any of the realistic alternatives offered by continued litigation (including a possible complete dismissal of the Consolidated Complaint) and is, therefore, fair, reasonable, and adequate.

37. Plaintiffs faced serious risks in defeating Defendants' numerous motions to dismiss. Indeed, Defendants vehemently argued in their various motions that the Consolidated Complaint: (i) failed to demonstrate scienter for each of the defendants with respect to their Exchange Act claims; and (ii) failed to adequately plead that the alleged statements were false or misleading. They also argued that the Securities Act claims "sound[ed] in fraud." *See generally*, ECFs 135-139, 141-142, 149. Specifically, TuSimple claimed that its October 31, 2022 corrective disclosure was vague as to when employees of TuSimple worked for Hydron and therefore Plaintiffs failed to allege that the Company failed to disclose that fact when filing for the IPO. ECF 138-1 at 7. Relatedly, TuSimple claimed that the relationship with Hydron was inconsequential. *Id.* at 19-21. As to the safety of TuSimple's trucks, Defendants claimed that the safety statements were either true, non-actionable opinions, puffery, vague, or immaterial. *Id.* at 12-14, 27-29; ECF 135 at 9-10. Defendants also deny that the omission of the April crash in investor updates was actionable. ECF 138-1 at 32-35. Defendants fervently denied knowledge – or even negligent ignorance – of the Hydron relationship and the safety statements. *See* ECF 149 at 17, 39-51.

38. Defendants Chao and Zhang also raised several arguments that, if accepted, would exempt them from service of process and this Court's jurisdiction. *See* ECF 147-1. Specifically, defendants Chao and Zhang argued that the service of

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-
00282-BEN-MSB)

4887-8196-8877.v1

1  the Consolidated Complaint upon their agent did not satisfy the Hague Convention or

2  California law. *Id.* at 6-9. Defendants Chao and Zhang also argued that the Court did

3  not have personal jurisdiction over them and therefore the Consolidated Complaint

4  must be dismissed. *Id.* at 9-16.

5      39.   While Plaintiffs' Counsel believe they presented strong arguments in

6  favor of the sufficiency of the Consolidated Complaint (and service of the

7  Consolidated Complaint on defendants Chao and Zhang), Plaintiffs' Counsel cannot

8  deny the meaningful hurdles Plaintiffs faced in defeating Defendants' challenges.

9  Therefore, Plaintiffs' success at the motion to dismiss stage was hardly a certainty.

10      40.   Even if the Consolidated Complaint survived Defendants' motions to

11  dismiss in part or in whole, Plaintiffs faced significant challenges in discovery. For

12  example, TuSimple's principal operations are now located in China. *See* ECF 149-3

13  at 21-23. Thus, a significant and growing portion of the evidence relevant to the

14  Litigation is and will be located abroad and subject to laws that introduce uncertainty

15  as to what discovery the putative class may obtain. Indeed, TuSimple has already

16  argued that, subject to approval from the relevant Chinese authorities, Chinese law

17  prevents provision of information collected in China, as well as any efforts to "collect

18  evidence in China" by any "institution or individual," including a deponent answering

19  deposition questions that "relate [to] information provided to him from China." *See*

20  *Wilhoite*, ECFs 153-1, 153-2 at 1. Similarly, because TuSimple no longer has any

21  U.S.-based employees, locating relevant witnesses and compelling their testimony

22  would be an arduous, if not impossible, undertaking. The risk that Plaintiffs would

23  not obtain critical evidence in this Litigation was a relevant factor impacting

24  Plaintiffs' assessment of the risks in the Litigation. Moreover, Plaintiffs faced

25  additional legal hurdles at class certification and summary judgment which were

26  considered when deciding whether to settle the Litigation for $189 million.

27

28

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1

41.     Eventually, through extensive, arm's-length negotiations overseen by Judge Phillips, the parties compromised their differences and reached the agreement embodied in the Stipulation.  In view of the $189 million Settlement recovery, the sharply contested factual and legal issues (as described above), and the uncertainties and costs and delays inherent in continuing the Litigation, Plaintiffs' Counsel believe that the recovery amount provided by the Settlement constitutes an excellent result and is in the best interests of the Settlement Class.

## V.    NATURE AND ADEQUACY OF THE SETTLEMENT

42.     The Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of Judge Phillips, a highly respected mediator with extensive experience in complex securities litigation.  In the estimation of Plaintiffs' Counsel, the compromise embodied in the Stipulation with Defendants represents a successful resolution of a complex class action.

### A.    History of Settlement Negotiations

43.     During the second quarter of 2024, Plaintiffs and Defendants commenced a mediation process with Judge Phillips.  The May 2, 2024 mediation session was preceded by the submission of detailed mediation statements (which involved consultations with various experts) by the Settling Parties.  In advance of the mediation, and as a condition to mediation, TuSimple provided Plaintiffs with: (i) all documents produced the associated derivative action (*Wilhoite*); (ii) unredacted copies of TuSimple filings in the *Wilhoite* action, including sworn declarations submitted by TuSimple's CEO; and (iii) transcripts of depositions taken in the *Wilhoite* action. Despite good-faith negotiations on behalf of the Settling Parties, the action remained unresolved after the May 2, 2024 mediation.  However, the parties continued their settlement efforts with the assistance of Judge Phillips while simultaneously actively litigating the action.  *Id.*

4887-8196-8877.v1

44.     On July 8, 2024, the Settling Parties accepted Judge Phillips' proposal to resolve the Litigation in exchange for a cash payment of $189 million for the benefit of the Settlement Class, subject to the execution of a Stipulation of Settlement and approval by the Court.  TuSimple paid $174 million of the Settlement Amount by wire transfer on July 30, 2024, and the remaining $15 million was funded by August 1, 2024.  Those sums have been earning, and continue to earn, substantial interest on behalf of the Settlement Class.  As of the date of this declaration, the Settlement Amount has earned approximately $2.2 million in interest for the benefit of the Settlement Class.

**B.      Preliminary Approval Order**

45.     After the Settling Parties reached an agreement-in-principle to settle, Plaintiffs' Counsel worked diligently to prepare preliminary approval papers and negotiate the complex 47-page Stipulation with counsel for Defendants.  The terms of the Stipulation are the result of vigorous and protracted arm's-length negotiations.

46.     On August 26, 2024, Plaintiffs filed their unopposed motion for preliminary approval of the Settlement, a supporting memorandum, and the Stipulation.  ECF 233.  The preliminary approval motion also sought certification of the Settlement Class, approval of notice to the Settlement Class, and the scheduling of a Settlement Hearing.  *Id*.  Additionally, the Settling Parties jointly moved to shorten the time for the preliminary approval hearing.  ECF 232.

47.     On September 5, 2024, the Court issued the Order Preliminarily Approving Settlement and Providing for Notice (ECF 235), which:

(a)      preliminarily approved the Settlement;

(b)      certified the Litigation as a class action for settlement purposes and preliminarily certified INPRS, Robert Miller, and Michelle Poirier as Class

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1

1    Representatives and Robbins Geller and KSF as Class Counsel.[7]  With respect to the

2    Settlement Class, the Court preliminarily found that, for settlement purposes, the

3    prerequisites for a class action under Federal Rules of Civil Procedure Rules 23(a) and

4    (b)(3) have been satisfied;

5            (c)    scheduled the Settlement Hearing for December 2, 2024, at 10:30

6    a.m., "to determine:  (i) whether the proposed Settlement of the Litigation on the

7    terms and conditions provided for in the Stipulation is fair, reasonable, and adequate

8    to the Settlement Class and should be approved by the Court; (ii) whether a Judgment,

9    as provided in ¶1.12 of the Stipulation, should be entered; (iii) whether the proposed

10   Plan of Allocation is fair, reasonable, and adequate and should be approved; (iv) the

11   fees and expenses that should be approved for Plaintiffs' Counsel and the amount of

12   15 U.S.C. §78u-4(a)(4) awards to Plaintiffs; and (v) any such other matters as the

13   Court may deem appropriate" (ECF 235 at ¶6);

14           (d)    appointed Verita Global as the Claims Administrator to oversee the

15   notice procedure and process claims; and

16           (e)    approved the form and content of the Postcard Notice, Notice,

17   Summary Notice, and the Proof of Claim.  The Court also found that the procedure for

18   mailing and distributing the Postcard Notice, and for publishing the Summary Notice,

19   was adequate under applicable law.

20           48.    Upon final approval of the Stipulation and Settlement by the Court and

21   entry of a judgment that becomes a final judgment, the Net Settlement Fund will be

22

23   [7]   The Court defined the Settlement Class as "all Persons who purchased and/or
     otherwise acquired TuSimple securities between April 15, 2021 and December 20,
24   2022, inclusive (the "Class Period"). Excluded from the Settlement Class are: (i)
     Defendants and members of their immediate families; (ii) current and former officers
25   and directors of TuSimple and members of their immediate families; (iii) any entity in
     which any Defendant has a controlling interest or which is related to or affiliated with
26   any Defendant; (iv) TuSimple's subsidiaries and affiliates or other entities owned or
     controlled by it; (v) the legal representatives, heirs, successors, or assigns of each
27   Defendant; and (vi) any Persons who properly exclude themselves by submitting a
     valid and timely request for exclusion." ECF 235 at ¶2.

28
4887-8196-8877.v1

distributed according to the Plan of Allocation (described below) to Settlement Class
Members who submit valid, timely Proofs of Claim.  Further terms of the Settlement
are set forth in the Stipulation.  A summary of the Settlement was set forth in the
Notice.

### C. The Plan of Allocation

49.     The Net Settlement Fund will be distributed to Settlement Class
Members who, in accordance with the terms of the Stipulation, are entitled to a
distribution and who submit a valid and timely Proof of Claim.  Settlement Class
Members' claims will be calculated under the Plan of Allocation set forth in the
Notice.   The Plan of Allocation, which was prepared in consultation with an
experienced forensic economics and damages expert, Matt Cain, Ph.D., fairly
allocates the Net Settlement Fund among eligible Settlement Class Members.

50.     In response to over 14,350 Postcard Notices, there have been no
objections to date of the proposed Plan of Allocation.

### D. The Settlement Is in the Best Interests of the Settlement Class and Warrants Approval

51.     Plaintiffs believe they could have prevailed on the merits of the case.
Defendants were just as adamant that the claims would fail.  There were a number of
genuine litigation risks, including ones that could have prevented Plaintiffs getting
their claims to trial or weakened the ones that went to trial.  For example, the Court
could have ruled unfavorably on a number of issues argued in the motions to dismiss,
including dismissing certain or all of the allegedly false statements, finding the
Consolidated Complaint did not sufficiently allege scienter (for some or all of the
Defendants) or loss causation, or rejected scheme liability all together.  Indeed, the
Court may have ended the lawsuit all together.  If the Court granted some or all the
motions to dismiss, in part or *in toto*, Plaintiffs would have faced additional hurdles,
including: (a) certifying the class; (b) obtaining discoverable information, documents,
and testimony from overseas, including China; (c) summary judgment and *Daubert*

- 21 -

1   motions; (d) pre-trial motions; and (e) prevailing at trial and the post-trial and

2   appellate proceedings.

3       52.    As explained above, even if Plaintiffs prevailed at trial, there was a

4   significant risk that any recovery would be smaller than the Settlement obtained and

5   certainly any such recovery would have been delayed by post-trial proceedings and

6   appeals. As the Company has announced it was shutting down its U.S. operations and

7   moving to China, there was enormous risk that TuSimple's assets remaining in the

8   United States would be dissipated and its assets in China unreachable. As time

9   passed, this risk was compounding: TuSimple was burning through its assets at an

10  alarming rate. Indeed, based on TuSimple's publicly available financials, between the

11  IPO and 3Q23, when TuSimple was delisted, TuSimple burned through cash at an

12  average rate of ***$79 million per quarter***. TuSimple's financials confirm that its assets

13  were a shrinking pool the Company was moving to China. *See* ECF 149-3 at 21

14  (announcing TuSimple was "moving its business to China"); *see also id.* at 7

15  (announcing TuSimple "aim of winding down the Company's U.S. operations, which

16  may include sales of U.S. assets . . . in order to facilitate the Company's strategic shift

17  to the Asia-Pacific region"). Thus, there was a significant risk that, had a settlement

18  not been reached, TuSimple would not be able to pay a judgment at all, let alone as

19  large as the Settlement procured by Plaintiffs and Plaintiffs' Counsel here.

20      53.    Having considered the foregoing, and evaluating Defendants' defenses at

21  the motion to dismiss stage and during mediation, it is the informed judgment of

22  Plaintiffs' Counsel, based upon all the proceedings to date and their extensive

23  experience in litigating shareholder class actions, that the proposed Settlement of this

24  matter for $189 million provides fair, reasonable, and adequate consideration and is in

25  the best interests of the Settlement Class.

26

27

28

4887-8196-8877.v1

## VI.  PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

54.     Based on the time expended on behalf of the Settlement Class, the outstanding result achieved in the face of considerable litigation risk, and the fully contingent nature of the representation, I also respectfully submit that Plaintiffs' Counsel's request for an award of attorneys' fees equal to 25% of the Settlement Fund is fair and reasonable, and should be approved.

55.     The proposed Settlement Amount, $189 million, represents approximately 19% to 31% of the estimated damages that Plaintiffs could reasonably expect to be recovered at trial.  If the jury were to reject some of Plaintiffs' allegations of fraud or find that one or more of the alleged corrective disclosures were not related to Plaintiffs' allegations for reasons described above, the recoverable damages would have been significantly less, and there was a very real possibility that such findings would be fatal to the entirety of Plaintiffs' claims.

56.     As further detailed in the accompanying Fee Memorandum, the Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "[I]n a common fund case, the district court can determine the amount of attorneys' fees to be drawn from the fund by employing a 'percentage' method." *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (citation omitted).  The Ninth Circuit has established 25% of the common fund as a benchmark for attorneys' fees. *Id*.  Based on the extensive efforts on behalf of the Settlement Class, as described above, Plaintiffs' Counsel are applying for a benchmark 25% fee award.

### A.     The Requested Fee Is Reasonable

57.     Several factors confirm that the fee requested is fair, reasonable, and adequate.  First is the risk faced by Plaintiffs' Counsel in pursuing this Litigation. Plaintiffs' Counsel undertook representation of the Settlement Class on a wholly

4887-8196-8877.v1

1   contingent basis, knowing that the Litigation could last for years, and would require

2   substantial lawyer and paraprofessional time and significant expenses, with no

3   guarantee of compensation.  Plaintiffs' Counsel's assumption of this contingency-fee

4   risk, and our unwavering tenacity in the face of numerous litigation challenges and

5   risks, as detailed herein and in the accompanying Fee Memorandum, supports the

6   reasonableness of the requested fee.

7       58.    Plaintiffs' Counsel committed over 8,100 hours of attorney, forensic

8   accountant, and paraprofessional time and incurred $230,279.90 in costs, charges, and

9   expenses in the prosecution of the Litigation.  *See* Declaration of Lucas F. Olts Filed

10  on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for

11  Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."); Declaration of

12  Ramzi Abadou Filed on Behalf of Kahn Swick & Foti, LLC in Support of Application

13  for Award of Attorneys' Fees and Expenses ("KSF Decl."); Declaration of Joe

14  Kendall Filed on Behalf of Kendall Law Group, PLLC in Support of Application for

15  Award of Attorneys' Fees and Expenses ("Kendall Decl."), submitted herewith.

16  Plaintiffs' Counsel fully assumed the risk of an unsuccessful result.  Plaintiffs'

17  Counsel have received no compensation for their time or expenses during the course

18  of the Litigation.  Any fees or expenses awarded to Plaintiffs' Counsel have always

19  been at risk and are completely contingent on the result achieved.  Because of the

20  contingent nature of the fees and expenses, the only certainties from the outset were

21  that there would be no fee without a successful result, and that such a result would be

22  realized only after a lengthy and difficult effort.

23      59.    Plaintiffs' Counsel took on this contingency risk in the face of

24  determined opposition.  Defendants employed a coteries of some of the nation's most

25  capable and best resourced defense firms, including: (1) Wilmer Cutler Pickering Hale

26  and Dorr LLP; (2) Goodwin Procter LLP; (3) Morrison & Foerster LLP; (4) Quinn

27  Emanuel Urquhart & Sullivan, LLP; (5) Latham & Watkins LLP; and (6) Cooley

28

4887-8196-8877.v1

LLP. As set forth above, this case was fraught with significant risk factors. Were this Settlement not achieved, and even if Plaintiffs prevailed at the motion to dismiss, class certification, summary judgment, and trial, Plaintiffs potentially faced years of costly and risky appellate litigation. It is also possible that a jury could have found no liability, or no damages, or limited damages. Under these circumstances and after overcoming this contingency and other risks, Plaintiffs' Counsel are entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Settlement Class. A benchmark fee of 25%, plus expenses, is fair and reasonable here.

**B.     The Requested Litigation Expenses Are Fair and Reasonable**

60.     As detailed in the Fee Memorandum and accompanying declarations, Plaintiffs' Counsel seek a total of $230,279.90 in costs, charges, and expenses in connection with the prosecution of this Litigation. *See* Robbins Geller Decl., Ex. B; KSF Decl., Ex. B; Kendall Decl., Ex. B. These costs, charges, and expenses were reasonably and necessarily incurred by Plaintiffs' Counsel in connection with commencing and prosecuting the claims against Defendants.

61.     From its inception, Plaintiffs' Counsel were aware that we might not recover any of our expenses in this matter and, at the very least, would not recover anything until the Litigation was successfully resolved. Plaintiffs' Counsel also understood that, even if the case was ultimately successful, an award of costs, charges, and expenses would not compensate us for the lost use of funds advanced while this Litigation was ongoing. Therefore, Plaintiffs' Counsel were motivated to, and did, take steps to minimize costs, charges, and expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the case.

62.     All of the costs, charges, and expenses for which recovery is sought were reasonably necessary to the prosecution and resolution of the Litigation, and are all of a type that counsel typically incur in securities litigation of this type (and that, in our

experience, courts award in class action cases).  The largest single-expense items for which payment is sought are summarized below:

(a)     ***Expert Fees:*** Plaintiffs' Counsel retained an experienced forensic economics and damages expert, Professor Matthew Cain, Ph.D., to analyze and advise on issues of causation and damages, who worked with Plaintiffs' Counsel to assist in: (i) developing the claims asserted; (ii) assessing the strengths and weaknesses of the Plaintiffs' claims and potential causation and damages arguments; and (iii) estimating damages for settlement negotiation purposes.  Plaintiffs' Counsel also retained Dr. Cain to assist with developing the Plan of Allocation.  These expert fees totaled $78,872.52.

(b)     ***Mediation Fees:*** Plaintiffs' Counsel were responsible for one-half of the mediator's fees, which included: (i) Judge Phillips' review of the Settling Parties' mediation submissions; (ii) an in-person mediation session; and (iii) subsequent telephonic and written communications following the mediation. Plaintiffs' Counsel's portion of the mediation fees totaled $107,436.00.

(c)     ***Computerized Legal Research:*** Plaintiffs' Counsel utilized digital research services (such as Westlaw) in connection with their legal and factual research, which was used both in the course of developing the facts underlying the claims asserted and in researching relevant law relevant to the motions brought in the Litigation during the last two years.  These charges totaled $11,808.02.

63.     The remaining expenses relate primarily to filing fees ($2,011.90), transcript fees ($297.80), travel ($24,416.66), photocopies ($1,471.74), and document hosting ($1,670.30).

64.     The Postcard Notice and Notice advise potential Settlement Class Members that Plaintiffs' Counsel would seek an award of expenses not to exceed $300,000, plus interest, which is significantly more than what Plaintiffs' Counsel are now actually seeking.

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1

## VII. PLAINTIFFS' REQUEST FOR AN AWARD FOR THEIR WORK ON BEHALF OF THE SETTLEMENT CLASS

65.     The Notice also informed Settlement Class Members that Plaintiffs would apply for up to $24,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Settlement Class.

66.     As set forth in their respective declarations, each individual plaintiff (INPRS, Robert Miller, and Michelle Poirier) spent time reviewing pleadings, reading other litigation and mediation materials, and communicating with their counsel in order to ensure the progression of the Litigation.  Plaintiffs are sophisticated investors that have actively overseen the prosecution of the Litigation and they understand and have diligently fulfilled their fiduciary duty to act in the best interest of the Settlement Class.

67.     Plaintiffs request an award in the aggregate amount of $13,240 for the time and effort spent on this matter.  For the reasons set forth in the accompanying Fee Memorandum, I respectfully submit that the requested awards are modest, and fully merited based on Plaintiffs' work here for the benefit of the Settlement Class.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 28, 2024, at San Diego, California.

s/ Lucas F. Olts
LUCAS F. OLTS

3:22-cv-01300-BEN-MSB
(Consolidated with No. 3:23-cv-00282-BEN-MSB)

4887-8196-8877.v1